**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| Plaintiff, | § |
| v. | §  Civil No. 1:21-cv-796 |
| THE STATE OF TEXAS, | § |
| Defendant. | § |

# EXHIBIT 15

## Declaration of Anne Marie Costello

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> THE STATE OF TEXAS, <br><br> Defendant. | § § § § § § § § § § § | Case No.: 1:21-cv-796 |

**DECLARATION OF ANNE MARIE COSTELLO**

I, Anne Marie Costello of the Center for Medicaid and CHIP Services (CMCS) at the Centers for Medicare & Medicaid Services (CMS), declare that the following statements are true and correct to the best of my knowledge and belief, and that they are based on my personal knowledge as well as information provided to me in the ordinary course of my duties.

Declarant's Background

1. I am employed by the Department of Health and Human Services (HHS) in CMCS at CMS. I am the Deputy Director for CMCS. I have held this position since January, 2020. Before that, I served as the Director of the Children and Adults Health Programs Group within CMCS. I have been employed at CMS since 2010.

2. CMCS is a component of CMS. It is charged with administering the Medicaid program and serves as CMS's focal point for assistance with formulation, coordination, integration, and implementation of all national program policies and operations relating to Medicaid, the Children's Health Insurance Program (CHIP), and the Basic Health Program (BHP). CMCS works in partnership with states, assists state agencies in successfully carrying

out their responsibilities for effective program administration and protecting beneficiaries, and, as necessary, supports states in correcting problems and improving the quality of their operations. CMCS also identifies and proposes modifications to program measures; regulations; laws; and policies to reflect changes or trends in the health care industry, program objectives, and beneficiaries' needs.

3.  Due to the nature of my official duties, I am familiar with Medicaid state plans and the coverage of services under such plans.

## Medicaid Program

4.  Medicaid is a joint state and federal program that generally provides for making medical assistance available to eligible individuals under Title XIX of the Social Security Act. "Medical assistance" is defined in section 1905(a) of the Social Security Act (the Act) as payment for all or part of the cost of specified care and services, the care and services themselves, or both. *See* 42 U.S.C. 1396d.

5.  States are not required to participate in the Medicaid program. If a state decides to participate in Medicaid, then it agrees to provide services to Medicaid beneficiaries that meet federal requirements. In exchange, CMS provides matching funds, known as Federal Financial Participation ("FFP"), to the states. States initially pay providers for furnishing covered services to Medicaid beneficiaries, and then claim their expenditures for federal matching. Federal matching funds are paid at statutorily-specified matching rates, which generally vary by state.

6.  The state of Texas participates in Medicaid. For federal fiscal year 2021, the federal medical assistance percentage – the federal matching rate for most medical assistance expenditures – is 68.01 percent for Texas (including a temporary 6.2 percentage point increase under section 6008 of the Families First Coronavirus Response Act, which is available during the

COVID-19 public health emergency as long as Texas meets statutorily specified conditions). Texas has claimed FFP for one abortion during the period between January 1, and April 30, 2021.

7. The Medicaid statute sets forth a series of mandatory services that states must provide, and optional services that states may provide to eligible beneficiaries. Section 1902(a)(10)(A) of the Act specifies that inpatient and outpatient hospital services (as defined in sections 1905(a)(1) and (a)(2)) and physician services (1905(a)(5)(A)) must be covered for all individuals eligible under a state plan. In addition, states must cover a unique benefit called "early and periodic screening diagnostic, and treatment services" (EPSDT) for beneficiaries under age 21 pursuant to sections 1905(a)(4)(B) and 1905(r) of the Act. The EPSDT benefit includes "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in section 1905(a) to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." See section 1905(r)(5) of the Act. Optionally, states may also cover clinic services, as specified in section 1905(a)(9) of the Act. Under its State Plan, Texas covers mandatory services, including physician, in- and outpatient hospital, and EPSDT services, as well as optional clinic services.

8. As specified in regulations codified at 42 C.F.R. § 440.230(a), the state plan must specify the amount, duration, and scope of each service covered under the plan. The state may place appropriate limits on a service based on, for example, medical necessity or utilization control criteria, but each service must be sufficient in amount, duration, and scope "to reasonably achieve its purpose." *Id*. § 440.230(b), (d). For anyone covered in a categorically needy group, whether optional or mandatory, or for medically needy beneficiaries whom the state may

3

optionally cover, the state "may not arbitrarily deny or reduce the amount, duration, or scope of a required service under §§ 440.210 or 440.220 to an otherwise eligible beneficiary solely because of the diagnosis, type of illness, or condition." *Id*. § 440.230(c).

Abortion Services Under Medicaid

9. Abortion services are not a discrete category of care and services within the definition of medical assistance; however, abortion may fall under one or more categories of mandatory services, including physician services, in- or out-patient hospital services, or services medically necessary for a beneficiary under age 21 under the EPSDT benefit, or under the optional category of clinic services. Abortions that are necessary to save the life of a pregnant person, or resulting from rape or incest, fall within the scope of services comprising "medical assistance" that may be medically necessary for a particular person in a particular circumstance.

10. Since 1976, Congress has restricted the use of federal Medicaid funds for abortions, limiting their use to certain circumstances. The Hyde Amendment, Division H, Title V, Sections 506 and 507 of the Consolidated Appropriations Act, 2021, provides that in general, none of the funds appropriated under HHS's appropriations act "shall be expended for any abortion." Consolidated Appropriations Act, 2021, Division H, Title V, §§ 506, 507, Pub. L. 116-260, 134 Stat 1182, 1622 (Dec. 27, 2020); 42 U.S.C. § 1397ee(c)(7). This limitation however, does not apply if the pregnancy is the result of an act of rape or incest, or if a pregnant person suffers from a physical disorder, physical injury, or physical illness that a physician certifies would place the pregnant person in danger of death unless an abortion is performed. This means that federal Medicaid matching funds are available to pay for any abortion in these Hyde-excepted circumstances as provided in regulations codified at 42 C.F.R. part 441, subpart E.

11. The rape and incest exceptions to the Hyde Amendment's abortion funding restriction were present from the first version of the Hyde Amendment in 1976 through 1981, when these exceptions were eliminated. The exceptions were added again in 1993 and on December 28, 1993, CMS (then called the Health Care Financing Administration or HCFA) issued a State Medicaid Director (SMD) Letter discussing recent changes to the Hyde Amendment. (Attachment A). That letter stated:

> As with all other mandatory medical services for which Federal funding is available, States are required to cover abortions that are medically necessary. By definition, abortions that are necessary to save the life of the mother are medically necessary. In addition, Congress this year added abortions for pregnancies resulting from rape and incest to the category of medically necessary abortions for which funding is provided. Based on the language of this year's Hyde Amendment and on the history of Congressional debate about the circumstances of victims of rape and incest, we believe that this change in the text of the Hyde Amendment signifies Congressional intent that abortions of pregnancies resulting from rape or incest are medically necessary in light of both medical and psychological health factors. Therefore, abortions resulting from rape or incest should be considered to fall within the scope of services that are medically necessary.

12. The substance of the December 28, 1993 letter was reiterated in a subsequent 1998 SMD Letter that continues to be in effect. (Attachment B). That letter states:

> As with the language in effect since October 1, 1993, the revised Hyde Amendment provides for funding for abortions if the pregnancy is the result of an act of rape or incest. As discussed in my December 28, 1993 letter, all abortions covered by the Hyde Amendment, including those abortions related to rape or incest, are medically necessary services and are required to be provided by states participating in the Medicaid program.

13. CMS continues to interpret the Medicaid statute and regulations and the Hyde Amendment to cover abortions in cases of rape or incest, in addition to endangerment to the life of the pregnant person, as stated in the 1993 and 1998 SMD Letters. States may not impose unreasonable limits on these services or restrict them so that they do not allow them to reasonably achieve their purpose.

Impact of S.B. 8

14. I understand Texas Senate Bill 8 as drafted to provide no exceptions for situations in which persons have experienced rape or incest.  The law therefore purports to prevent pregnant persons in Texas from obtaining a service authorized under both mandatory and optional benefit categories that Texas covers under Medicaid.  This is at odds with federal law. Texas Senate Bill 8 places unreasonable limits on Medicaid coverage for abortions in the case of rape or incest and restricts that coverage so that it does not allow such benefits to reasonably achieve their purpose. It therefore violates Title XIX of the Social Security Act and associated federal regulations.

Pursuant to 28 U.S.C. § 1746, and under penalty of perjury, I declare the foregoing is true and correct to the best of my knowledge.

_9-14-21_
Date

ANNE MARIE COSTELLO
Deputy Director
Center for Medicaid and CHIP Services
Centers for Medicare & Medicaid Services