**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| | § |
| Plaintiff, | § |
| v. | § |
| | § Civil No.  1:21-cv-796 |
| THE STATE OF TEXAS, | § |
| | § |
| | § |
| Defendant. | § |

# <u>EXHIBIT 2</u>

## Declaration of Lisa Newman

**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**



| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | §    Civil No.  1:21-cv-796 |
| THE STATE OF TEXAS, | § |
| | § |
| Defendant. | § |

## <u>DECLARATION OF LISA NEWMAN</u>

Pursuant to 28 U.S.C. § 1746, I, Lisa Newman, hereby declare:

1.      I am an attorney in the U.S. Department of Justice, Civil Division, Federal Programs

Branch.  I am assigned to represent the United States in the above-captioned case.  The statements

made herein are based on my personal knowledge, and on information made available to me in the

course of my duties and responsibilities as Government counsel in this case.

2.       I submit this declaration in support of the United States' concurrently filed

Emergency Motion for a Temporary Restraining Order or Preliminary Injunction.

3.      Filed herewith as United States' Exhibits A-D are true and correct copies of the

following documents that I downloaded from the indicated websites:

| Exhibit No. | Exhibit Name |
|---|---|
| A | Jenna Greene, *CORRECTED COLUMN: Crafty lawyering on Texas abortion bill withstood SCOTUS challenge*, Reuters (Sept. 5, 2021, 2:40 PM EDT), *available at* https://reuters.com/legal/government/crafty-lawyering-texas-abortion-bill-withstood-scotus-challenge-greene-2021-09-05/ (last visited Sept. 14, 2021) |
| B | Jacob Gershman, *Behind Texas Abortion Law, an Attorney's Unusual Enforcement Idea*, The Wall Street Journal (Sept. 4, 2021, 9:38 AM), *available at* |

| | |
|---|---|
| | https://www.wsj.com/articles/behind-texas-abortion-law-an-attorneys-unusual-enforcement-idea-11630762683  (last visited Sept. 13, 2021) |
| C | Michael S. Schmidt, Behind the Texas Abortion Law, a Persevering Conservative Lawyer, N.Y. Times (Sept. 12, 2021 7:46 AM EST), *available at* https://www.nytimes.com/2021/09/12/us/politics/texas-abortion-lawyer-jonathan-mitchell.html (last visited Sept. 14, 2021) |
| D | Emma Green, What Texas Abortion Foes Want Next, The Atlantic (Sept. 2, 2021), *available at* https://www.theatlantic.com/politics/archive/2021/09/texas-abortion-ban-supreme-court/619953/ (last visited Sept. 13, 2021) |

I swear under penalty of perjury that the foregoing is true and correct.  Executed on

September 14, 2021.

*/s/ Lisa Newman*
Lisa Newman

*Counsel for the United States*

**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| | § |
| Plaintiff, | § |
| v. | § |
| | § |
| THE STATE OF TEXAS, | § |
| | § |
| | § |
| Defendant. | § |

Civil No.  1:21-cv-796

# <u>EXHIBIT A</u>

**Jenna Greene, *CORRECTED COLUMN: Crafty lawyering on Texas abortion bill withstood SCOTUS challenge*, Reuters (Sept. 5, 2021, 2:40 PM EDT)**

**News**Room

9/5/21 Reuters News 02:40:41

Reuters News
Copyright (c) 2021 Thomson Reuters

September 5, 2021

CORRECTED-COLUMN-<mark>Crafty lawyering on Texas abortion bill withstood SCOTUS challenge</mark>: Greene

Jenna Greene

Sept 4 (Reuters)

(This story corrects who can be sued under the Texas abortion law. It is those who perform or assist in abortions, not women who seek abortions.)

By Jenna Greene

Sept 4 (Reuters) - Ever since the U.S. Supreme Court decided Roe v. Wade in 1973, abortion opponents have been trying to scale back or undo it. Texas state senator Bryan Hughes, a former personal injury lawyer and author of the "Heartbeat Act," led a team in succeeding, at least for now, where so many others have failed.

As a social policy, the law, which imposes a near-total ban on abortions in Texas but leaves enforcement up to individual citizens, is deeply controversial. House speaker Nancy Pelosi on Thursday said it "delivers catastrophe to women in Texas."

Still, some supporters stress that Hughes and the co-architects of the law, which included former Texas Solicitor General Jonathan Mitchell, deserve credit for what amounts to creative lawyering in drafting the measure, known as SB 8. These lawyers figured out how to apply qui tam statutes, which allow private citizens to pursue a lawsuit on behalf of the government, to receive an award in the abortion law context.

Hughes, 52, in an interview said the new law "is a very elegant use of the judicial system."

The impetus for creating the unique state-wide legislation came after district attorneys around the country, including some in Texas, publicly stated they would not enforce laws that criminalized early abortions, said Hughes, a Republican from Mineola, Texas.

His conclusion? "We had to find another way."

As a lawyer and legislator, he was familiar with qui tam statutes such as the Texas Medicaid Fraud Prevention Act, which allows private citizens to bring a fraud case and collect a bounty.

"The concept was there," Hughes said.

SB 8's enforcement mechanism also was modeled after an anti-abortion ordinance enacted by the town of Waskom, Texas, in 2019, Hughes said. The ordinance also delegates enforcement to private citizens bringing lawsuits.

Mitchell, a former law clerk to the late U.S. Supreme Court Justice Antonin Scalia, provided legal advice to anti-abortion advocates in drafting the ordinance, which was copied by about 30 other cities across the state.

He declined to comment.

"We continued to refine it," Hughes said of the Waskom law. "Lots of lawyers and law professors helped us out," including Mitchell, whom he describes as a longtime friend and a "very sharp guy."

To John Seago, legislative director of anti-abortion advocacy group Texas Right to Life, the novelty of SB 8 "was that it expands who has standing and takes out the other (criminal) penalties and prohibits state action."

Under the statute, Texas officials have no authority to enforce the new law, which bars abortion after the sixth week of pregnancy. Private citizens alone are empowered to sue women and anyone who assists them for violating the ban.

That private citizen component of the law was key in thwarting the abortion-provider plaintiffs, on procedural grounds, from winning an injunction from the U.S. Supreme Court. The defendants whom the abortion providers had named in the injunction action included a state court judge and a private citizen who allegedly threatened to sue women for seeking abortions.

But as the high court majority noted https://www.supremecourt.gov/opinions/20pdf/21a24_8759.pdf, it's not clear that any of them "can or will seek to enforce the Texas law against the applicants in a manner that might permit our intervention." The private citizen, Mark Lee Dickson, said in an affidavit that he has no present intention to try to enforce the law, and no cases are before the judge.

So who could the court seek to stop?

According to both Hughes and Seago, no one has attempted to sue anyone for performing or assisting in a post-heartbeat abortion since the law went into effect on Sept. 1. Until someone does, SB 8 seems likely to stay on the books, shielded from judicial review.

A Texas judge on Friday temporarily barred https://www.reuters.com/world/us/planned-parenthood-wins-restraining-order-against-texas-anti-abortion-group-2021-09-04 Texas Right to Life from suing Planned Parenthood to enforce the new law.

Still, SB 8 won't get a free pass forever. The five-justice majority wrote that their decision "in no way limits other procedurally proper challenges to the Texas law, including in Texas state courts."

It just might take awhile.

In crafting the legislation, Hughes, who was elected to the state senate in 2016 and served in the Texas House of Representatives for 14 years prior, said he drew on his legal background.

"Usually in politics, being a lawyer is a negative, but it does come in handy sometimes," he said.

From 2003 to 2008, Hughes was a litigator at The Lanier Law Firm, which has scored billions of dollars in verdicts for plaintiffs in cases involving hip implants, diabetes medication and talcum powder.

Founder Mark Lanier in an email described Hughes as "a gifted lawyer strongly motivated by what he thinks is right."

Opinions expressed here are those of the author. Reuters News, under the Trust Principles, is committed to integrity, independence and freedom from bias.

(Reporting by Jenna Greene; Editing by Leigh Jones) ((jenna.greene@thomsonreuters.com))


---- Index References ----

Company: SCOTUS INC; THE TEXAS RIGHT TO LIFE COMMITTEE, INC.; STATE GAS LIMITED; The Lanier Law Firm P C; US House of Representatives

News Subject: (Abortion (1AB77); Health & Family (1HE30); Health & Wellness (1HE60); Judicial Cases & Rulings (1JU36); Legal (1LE33); Social Issues (1SO05); Judicial Cases & Rulings (1JU36); Top World News (1WO62); U.S. House of Representatives (1US72); Lobby & Pressure Groups (1LO18); Intellectual Freedoms & Civil Liberties (1IN08); Corporate Events (1CR05); Legal (1LE33); Legislation (1LE97); Regulatory Affairs (1RE51); Gender Relations (1GE36); Government (1GO80); Corporate Governance (1XO27); U.S. Supreme Court (1US13); Non-Governmental Organizations (1NO36); Social Issues (1SO05); U.S. Legislation (1US12))

Industry: (Bioethics (1BI56); Contraception (1CO66); Healthcare (1HE06); Healthcare Practice Specialties (1HE49); Women's Health (1WO30); Women's Health (1WO30); Healthcare (1HE06))

Region: (Americas (1AM92); North America (1NO39); Texas (1TE14); U.S. Southwest Region (1SO89); USA (1US73); Texas (1TE14); Americas (1AM92); USA (1US73))

Language: EN

Other Indexing: (U.S. Supreme Court; House; Republican; Texas House of Representatives; SCOTUS; Texas Right to Life; state; The Lanier Law Firm) (Jenna Greene; Bryan Hughes; Bryan Hughes; Nancy Pelosi; Jonathan Mitchell; John L. Mitchell; Antonin Scalia; John Seago; Mark Lee Dickson; Mark Lanier; Leigh Jones)

Keywords: Abortion; Abortion in Louisiana; Abortion in Texas; Abortion in the United States; American society; Anti-abortion movement in the United States; Heartbeat bill; Planned Parenthood; Roe v. Wade; Texas Heartbeat Act; Texas House Bill 2; Texas statutesa1312cat:k

Word Count: 874

---

**End of Document**                                     © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | Civil No.  1:21-cv-796 |
| THE STATE OF TEXAS, | § | |
| | § | |
| Defendant. | § | |
| | § | |

# <u>EXHIBIT B</u>

**Jacob Gershman, *Behind Texas Abortion Law, an Attorney's Unusual Enforcement Idea*, The Wall Street Journal (Sept. 4, 2021, 9:38 AM)**

## Behind Texas Abortion Law, an Attorney's Unusual Enforcement Idea; Jonathan F. Mitchell taught law and clerked for Supreme Court Justice Antonin Scalia before devising a provision that has confounded abortion-rights advocates and animated their opponents

The Wall Street Journal Online

September 4, 2021

Copyright 2021 Factiva ®, from Dow Jones
All Rights Reserved



Copyright 2021 Dow Jones & Company, Inc. All Rights Reserved.

## THE WALL STREET JOURNAL.

**Section:** US; U.S. News

**Length:** 1064 words

**Byline:** By Jacob Gershman

## Body

Behind a Texas law that has confounded legal scholars and given abortion opponents hope is a publicity-shy, 45-year-old West Coast litigator known for his command of abstruse legal theory.

The Texas Heartbeat Act has survived a brush with the Supreme Court and made Texas the most restrictive in the nation for abortion access, thanks largely to its unusual enforcement scheme. The law puts ordinary Texans-not any government official-in charge of enforcing a prohibition on performing or aiding abortions after six weeks of pregnancy, making it more difficult to challenge in court.

The principal architect of the private-enforcement provision is Jonathan F. Mitchell, a constitutional litigator, former Justice Antonin Scalia clerk and law professor who in his spare time works pro bono advising the Republican legislators in Texas, according to people familiar with the legislation's development. He is active with the Federalist Society, the conservative legal group.

Mr. Mitchell helped draft the bill at the suggestion of state Sen. Bryan Hughes, an East Texas Republican, who said he sponsored it as a way for Texas to enact a so-called heartbeat bill that many other states passed into law.

But the senator said he also wanted to avoid the fate of those other bills, which were all struck down by judges who said the laws placed an undue burden on women seeking an abortion before the fetus was viable. District attorneys in Texas' more liberal cities were already saying they wouldn't enforce abortion bans in the event of a Supreme Court ruling overturning Roe v. Wade. So Mr. Hughes wanted a bill that could remain effective even without prosecutions.

"We knew we had to have another way," said Mr. Hughes, chairman of the chamber's influential Senate State Affairs policy-making committee. "We were going to find a way to pass a heartbeat bill that was going to be upheld."

Behind Texas Abortion Law, an Attorney's Unusual Enforcement Idea;  Jonathan F. Mitchell taught law and clerked for Supreme Court Justice Antonin Scalia before ....

Some legal scholars, including conservatives, are dubious that the Texas law can survive a more sustained legal review and expect courts-either at the federal or state level-to halt it with some kind of general injunction. But they say Mr. Mitchell still has defied the odds by seeing the law go into effect.

"He would have been a pretty successful legal academic," said Ilya Somin, a George Mason University law professor and former colleague of Mr. Mitchell's. "He's a creative legal thinker."

Mr. Mitchell has taught law at several law schools, including George Mason University and Stanford Law School, before entering state government in 2010 as the Texas' solicitor general under Gov. Rick Perry. He left the job when Mr. Perry's tenure ended. In 2017, President Donald Trump said he would tap Mr. Mitchell to lead the Administrative Conference of the United States, an obscure federal agency that advises on administrative law and regulatory procedures. But his confirmation never came up for a vote.

In 2018, Mr. Mitchell drafted "The Writ-of-Erasure Fallacy," a Virginia Law Review article that articulated the legal theories that would eventually find their way into the Texas abortion law. The article was a deep dive into the subject of judicial review and raised the idea that when a court rules a statute unconstitutional, the law isn't erased from the books and could be modified to allow for "private enforcement."

He described how laws could be constructed to "enable private litigants to enforce a statute even after a federal district court has enjoined the executive from enforcing it," without going in-depth about the applicability to abortion laws.

After opening a solo law practice, Mr. Mitchell extended the idea to abortion in 2019 when he advised an antiabortion East Texas pastor in drafting an ordinance adopted by a number of smaller Texas cities, including the city of Lubbock, that allowed Texas citizens to obtain an injunction against anyone performing or helping to carry out an abortion. Efforts by abortion-rights advocates to stop enforcement of the Lubbock ordinance failed in federal court, where a judge ruled that the plaintiff, Planned Parenthood, couldn't sue the government over the law.

The Texas Heartbeat Act, or SB 8, as the Texas law is known, is a legal labyrinth of statutory construction that has confounded some of the legal profession's most seasoned minds. Abortion-rights activists have denounced the law as diabolical, while some legal scholars have marveled at its creative clauses.

In a typical challenge to an antiabortion law, abortion-rights advocates can sue government officials tasked with enforcing the statute and wage their fights in courts and regions of their choosing. SB 8, which many Republican lawyers in the statehouse helped shape into its final form, turns the table on the geographic advantage. Claimants can sue on their home turf, even if the abortion-provider defendant is located elsewhere, and avoid courts in more Democratic areas. With no government official to sue, plaintiffs lack standing to move pre-emptively against the laws.

The law brims with financial enticements for claimants and their lawyers. The law sets a floor for damages at $10,000 per unlawful abortion but sets no limit on how much money claimants can recover. If they prevail, they can also demand the losing party pay their legal bills. If they lose in court and their case is dismissed, they owe the defendant nothing.

The law permits multiple lawsuits to be filed by different individuals over a single abortion. Once a claimant collects damages, though, the others suing may not collect more money from the same defendant for the same violation.

The Republican-led state Senate and House passed the measure in May with votes almost entirely split along party lines. Between the two chambers, only two Democrats voted for the bill. No Republicans voted against the ban. Texas Gov. Greg Abbott, a Republican, signed the bill on May 19, and it went into effect Wednesday.

In an unsigned 5-4 order, the Supreme Court declined to block the law from taking effect. The conservative majority wrote that there were "serious questions regarding the constitutionality of the Texas law" but said the court might

Behind Texas Abortion Law, an Attorney's Unusual Enforcement Idea;  Jonathan F. Mitchell taught law and clerked for Supreme Court Justice Antonin Scalia before ....

lack the jurisdiction to act because of procedural technicalities. The three liberal justices and Chief Justice John Roberts filed dissents.

Write to Jacob Gershman at jacob.gershman@wsj.com

Behind Texas Abortion Law, an Attorney's Unusual Enforcement Idea

# Notes

PUBLISHER: Dow Jones & Company, Inc.

**Load-Date:** September 7, 2021

End of Document

**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>v.<br><br>THE STATE OF TEXAS,<br><br>                    Defendant. | §<br>§<br>§<br>§<br>§<br>§    Civil No.  1:21-cv-796<br>§<br>§<br>§<br>§ |

# <u>EXHIBIT C</u>

**Michael S. Schmidt, *Behind the Texas Abortion Law, a Persevering Conservative Lawyer*, N.Y. Times (Sept. 12, 2021 7:46 AM EST)**

# Behind the Texas Abortion Law, a Persevering Conservative Lawyer

The New York Times

September 12, 2021 Sunday 07:46 EST

Copyright 2021 The New York Times Company All Rights Reserved

**Section:** US; politics

**Length:** 2296 words

**Byline:** Michael S. Schmidt
**Highlight:** Jonathan Mitchell has never had a high profile in the anti-abortion movement, but he developed and promoted the legal approach that has flummoxed the courts and enraged abortion rights supporters.

## Body

Jonathan Mitchell has never had a high profile in the anti-abortion movement, but he developed and promoted the legal approach that has flummoxed the courts and enraged abortion rights supporters.

Jonathan F. Mitchell grew increasingly dismayed as he read the Supreme Court's decision in June 2016 striking down major portions of a Texas anti-abortion bill he had helped write.

Not only had the court gutted the legislation, which Mr. Mitchell had quietly worked on a few years earlier as the Texas state government's top appeals court lawyer, but it also had called out his attempt to structure the law in a way that would prevent judicial action to block it, essentially saying: nice try.

"We reject Texas' invitation to pave the way for legislatures to immunize their statutes" from a general review of their constitutionality, Justice Stephen G. Breyer wrote in the majority's opinion.

For Mr. Mitchell, a onetime clerk to Justice Antonin Scalia, the decision was a stinging rebuke, and he vowed that if he ever had the chance to help develop another anti-abortion law, he would ensure it survived at the Supreme Court.

Last month, he got his chance. With its ideological balance recast by President Donald J. Trump, the court refrained from blocking a new law in Texas that all but bans abortion — a potential turning point in the long-running fight over the procedure. And it was the deeply religious Mr. Mitchell, a relative unknown outside of Texas in the anti-abortion movement and the conservative legal establishment, who was the conceptual force behind the legislation.

The court's decision did not address the law's constitutionality, and the legislation will no doubt face more substantive challenges. But already, the audacious legislative structure that Mr. Mitchell had conceived of — built around deputizing ordinary citizens to enforce it rather than the state — has flummoxed lower courts and sent the Biden administration and other supporters of abortion rights scrambling for some way to stop it.

"Jonathan could have given up, but instead it galvanized him and directly led to the more radical concepts we see" in the new Texas law, said Adam Mortara, a conservative legal activist who is one of Mr. Mitchell's closest friends.

Mr. Mitchell represents a new iteration of the anti-abortion campaign. Instead of focusing on stacking the courts with anti-abortion judges, trying to change public opinion or pass largely symbolic bills in state legislatures, Mr. Mitchell has spent the last seven years honing a largely below-the-radar strategy of writing laws deliberately devised to make it much more difficult for the judicial system — particularly the Supreme Court — to thwart them, according to interviews.

Melanie Michaelson

Behind the Texas Abortion Law, a Persevering Conservative Lawyer

How he pulled it off is a story that brings to life the persistence of the anti-abortion movement and its willingness to embrace unconventional approaches based more on process than moral principle.

Never an especially prominent, popular or financially successful figure in the conservative legal world — he was best-known for litigation seeking to limit the power of unions — Mr. Mitchell, 45, is only now emerging as a pivotal player in one of the most high-profile examples yet of the erosion of the right to abortion.

As his role has started to become more widely known, he has drawn intense criticism from abortion rights supporters not just for restricting access to the procedure but also for what they see as gaming the judicial system through a legislative gimmick they say will not withstand scrutiny.

"It grinds my gears when people say what's been done here is genius, novel or particularly clever — it was only successful because it had a receptive audience in the Supreme Court and Fifth Circuit," said Khiara M. Bridges, a professor of law at the University of California at Berkeley, referring to the conservative-leaning federal appeals court that also weighed in on the Texas law.

"If you want to overturn Roe v. Wade, you create a law that is inconsistent with the Supreme Court's precedent and someone will challenge it and you work it through the federal courts," she said. "You don't create a law that is designed to evade judicial review."

This article is based on interviews with anti-abortion activists who worked with Mr. Mitchell, reproductive rights advocates, friends and legal experts, and a review of Mr. Mitchell's writings.

Mr. Mitchell briefly addressed his work in a statement.

"The political branches have been too willing to cede control of constitutional interpretation to the federal judiciary," he said. "But there are ways to counter the judiciary's constitutional pronouncements, and Texas has shown that the states need not adopt a posture of learned helplessness in response to questionable or unconstitutional court rulings."

From Local Story to National

Mark Lee Dickson, an anti-abortion activist, was sitting in a Chick-fil-A in eastern Texas in the late spring of 2019. Rumors were circulating that an abortion clinic in the nearby city of Shreveport, Louisiana, might relocate over the state line to the border town of Waskom, Texas.

The mayor of Waskom had asked Mr. Dickson to draft an ordinance that would outlaw abortion clinics in the town of 2,000 people.

But, Mr. Dickson recalled, he was concerned about giving the ordinance to the mayor, fearing that if the town enacted it, groups like the American Civil Liberties Union would quickly sue, saddling it with legal bills that would bankrupt it.

Mr. Dickson texted Bryan Hughes, a Republican Texas state senator who represented the area.

Mr. Hughes replied that he had the perfect lawyer for him: Jonathan Mitchell, who had left his role as Texas solicitor general in 2015 and was running a one-man law firm.

Mr. Hughes described Mr. Mitchell's bona fides.

"He was a law clerk for Scalia and had been quoted by Alito and Thomas and was the former solicitor general of Texas — I automatically had respect for him because being in those positions, he was definitely the right person to talk to," Mr. Dickson said.

Sitting in his 2008 white Ford F-150 pickup truck in the parking lot of the Chick-fil-A, Mr. Dickson had a conference call with Mr. Mitchell and Mr. Hughes, and Mr. Mitchell said that he had a solution.

Behind the Texas Abortion Law, a Persevering Conservative Lawyer

Drawing from an idea that he had first floated in a 2018 law review article, Mr. Mitchell said that there was a provision that could be added to the ordinance outlawing abortion in Waskom while stripping the town government of authority for enforcing the ban. Instead enforcement power would be given to ordinary citizens, who could bring lawsuits themselves to uphold the ban.

Mr. Mitchell's explanation convinced Mr. Dickson that the provision would protect the town from being bankrupted. The two men worked together to have the provision added to the ordinance and in June 2019, the City Council, in a 5-to-0 vote, passed it.

All five votes for the ordinance were cast by men. At the time, the ordinance received little attention, even though it appeared to be the first time that a city in the United States had passed a law that outlawed abortion since the Roe v. Wade decision 46 years earlier.

In the end, it proved largely symbolic, since no abortion provider tried to move to Waskom.

But the passage of the ordinance galvanized Mr. Dickson and Mr. Mitchell. Throughout 2020, Mr. Dickson crisscrossed Texas, meeting with local officials — many who represented cities and towns that were unlikely to ever become home to an abortion clinic — to press them to enact similar ordinances.

With Mr. Mitchell helping with the legal wording needed in the ordinance, Mr. Dickson persuaded over 30 cities to adopt the law. Mr. Mitchell was so confident in the provision that he assured the towns he would represent them at no cost to taxpayers if they were sued.

Anti-abortion activists and legal experts closely watching the issue across the state — and the country — started taking notice.

"We would not have the Texas abortion law without Waskom" said Mary Ziegler, a law professor at Florida State University and legal historian.

"It was a super local story," she said, "and something people ignored, but ended up changing the national conversation."

A Winding Career Path

The oldest of seven brothers, Mr. Mitchell was raised in a religious Christian home in Pennsylvania. He attended Wheaton College, a small school in Illinois that "prepares students to make an impact for Christ," according to its website. Friends refrain from calling him on Sundays, as they know he spends at least several hours at church.

Despite his Supreme Court clerkship and having held jobs with the state of Texas and the Justice Department and in academia, he had struggled to find a consistent paying job in the years after he was replaced as solicitor general in Texas.

Concluding that writing provocative and novel legal analysis would attract the attention of the top law schools, Mr. Mitchell wrote a law review article based on his experience in Texas, where he saw up close how the vulnerabilities in laws produced by the State Legislature were being used to challenge them in court.

That article, "The Writ-of-Erasure Fallacy," published in 2018, would set out the approach that he would go on to use in the municipal ordinances across Texas and then in the 2021 state law: helping states protect themselves from judicial review by delegating enforcement authority to private citizens.

But his writings failed to win him a tenure track teaching offer, and efforts to land a job in Washington after Mr. Trump was elected president in 2016 also fizzled.

After losing out on jobs in the Justice Department and the Office of Management and Budget, he was nominated by Mr. Trump to lead the Administrative Conference of the United States, an obscure federal agency that tries to make the government more efficient.

Behind the Texas Abortion Law, a Persevering Conservative Lawyer

But Senator Sheldon Whitehouse of Rhode Island, a top Democrat on the Judiciary Committee, demanded that Mr. Mitchell answer questions about whether he had taken money from donors to pursue cases that would help the far right, including his anti-union work, according to a copy of a letter Mr. Whitehouse sent him.

In response, Mr. Mitchell said that he had not received such funds. But the answers failed to satisfy Mr. Whitehouse, who essentially killed his nomination.

Colleagues say that one reason Mr. Mitchell struggled to find employment is that he shows no interest in the subtleties of politics. He is often so focused on the weedy legal issues of the day, they said, that he failed to pay attention to the world around him. During his tenure as a clerk on the Supreme Court, he ate lunch nearly every day at the same Mexican restaurant, but after a year of going there, he still did not know its name.

By the summer of 2018, Mr. Mitchell decided to open a one-person law firm. With Mr. Trump driving the Supreme Court rightward with his nominees, Mr. Mitchell calculated that the court would be more sympathetic to cases in areas like religious freedom, abortion, and affirmative action that big law firms would not take on because they were politically divisive.

To keep his one-man shop going, Mr. Mitchell reached an agreement with Juris Capital, a company that finances small law firms in exchange for a share of damages they win in litigation. Juris agreed to give him $18,000 a month to finance his firm's operations.

A Second Chance

Back at the Texas State Legislature in late 2020, Mr. Hughes was helping plot Republican plans for their legislative agenda. Mr. Hughes mentioned to Mr. Mitchell that he planned to introduce a so-called heartbeat bill, which would make it illegal to have an abortion after early fetal cardiac activity is detected roughly six weeks into pregnancy.

Mr. Mitchell told him that was a terrible idea. A pattern had emerged in which similar laws passed by state legislatures were thwarted by federal judges.

Mr. Hughes asked whether there was any way they could come up with a bill that would survive challenges in the court. Mr. Mitchell immediately cited the growing success of the municipal-level effort that had started in Waskom to alter the way anti-abortion laws would be enforced.

"It's going to require outside-the-box thinking and you to persuade your colleagues of a different approach — it can be done; give me the pen and I'll give you the language," Mr. Mitchell told Mr. Hughes.

Mr. Mitchell wrote into the heartbeat bill the same provision that he had written about in the journal article and that served as the core of ordinances in dozens of cities across Texas.

Republican state senators remained skeptical. How could a law be enforced that the state itself was being prohibited from enforcing? Why was it not a criminal law — would that not make it toothless?

Mr. Hughes arranged a conference call between Mr. Mitchell and a dozen staff members and senators. Mr. Hughes listened as Mr. Mitchell walked his colleagues through his idea.

"No lawyer can guarantee it will work — I can't guarantee it's going to work, but it will have a fighting chance, and will have a better chance than a regular heartbeat law," Mr. Mitchell said.

By the end of the call, nearly everyone was on board.

In May, when Gov. Greg Abbott signed the law, he did not thank or even mention Mr. Mitchell. Mr. Mitchell did not attend the ceremony.

Matthew Cullen contributed research.

Matthew Cullen contributed research.

Melanie Michaelson

Behind the Texas Abortion Law, a Persevering Conservative Lawyer

PHOTOS: Protesting for abortion rights last week at the Supreme Court. Texas' law is a potential turning point in the fight over the procedure.; In a largely procedural ruling last month, the Supreme Court declined to block the Texas law. (PHOTOGRAPHS BY KENNY HOLSTON FOR THE NEW YORK TIMES); Jonathan F. Mitchell is a one-time Supreme Court clerk and former Texas solicitor general. (PHOTOGRAPH VIA JONATHAN F. MITCHELL) (A18)

**Load-Date:** September 12, 2021

End of Document

**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § | Civil No.  1:21-cv-796 |
| THE STATE OF TEXAS, | § § | |
| Defendant. | § § | |

# EXHIBIT D

**Emma Green,** *What Texas Abortion Foes Want Next,*
**The Atlantic (Sept. 2, 2021)**

# What Texas Abortion Foes Want Next

Atlantic Online

September 2, 2021 Thursday

Copyright 2021 Atlantic Monthly Group, Inc. All Rights Reserved

**Length:** 1796 words

**Byline:** Emma Green

## Body

Sometimes, the Supreme Court does the most when it does nothing. Last night, the justices denied an emergency petition by abortion providers in Texas seeking to block S.B. 8, a law banning pregnancy terminations after roughly six weeks' gestation. A 5"4 majority of the justices argued that they had no power to stop the law from going into effect, since none of the citizens who are now empowered under the law to sue abortion clinics for providing the procedure has yet attempted to do so. Legal challenges likely lie ahead. But abortion opponents see this as a victory, however temporary. For now, at least, abortion clinics in Texas are largely suspending their work and abiding by the ban.

John Seago, the legislative director of Texas Right to Life, shepherded and supported the passage of this law. "This is a phenomenal victory and the most significant accomplishment for the Texas pro-life movement since Roe," he told me. Just five years ago, his group and its allies faced a major legal defeat in Whole Woman's Health v. Hellerstedt, in which the Supreme Court overturned legislation restricting abortion procedures in Texas. Today, Seago and his allies feel much more optimistic that they can end legal abortion, and not just with S.B. 8. This fall, the justices are slated to consider Mississippi's 15-week abortion ban and potentially reevaluate the constitutional right to abortion laid out in the landmark 1973 case Roe v. Wade.

If Seago and his allies get their way, abortion would be completely illegal in the United States. But would they be ready, if that were to become reality? I spoke with Seago yesterday afternoon. Our conversation has been condensed and lightly edited for clarity.

[Read: Science is giving the pro-life movement a boost]

Emma Green: I'm curious why your legal approach here was not a full-frontal attack on Roe, but rather to create a private right of action for citizens so they can sue abortion providers. What was the motivation behind that approach?

John Seag There are two main motivations. The first one is lawless district attorneys that the pro-life movement has dealt with for years. In October, district attorneys from around the country publicly signed a letter saying they will not enforce pro-life laws. They said that even if Roe v. Wade is overturned, they are not going to use resources holding the abortion industry to account. That shows that the best way to get a pro-life policy into effect is not by imposing criminal penalties, but civil liability.

The second is that the pro-life movement is extremely frustrated with activist judges at the district level who are not doing their job to adjudicate conflicts between parties, but who in fact go out of their way to score ideological points-blocking pro-life laws because they think they violate the Constitution or pose undue burdens.

Green: How much of your strategy is about optics? Instead of passing legislation that would send doctors or women seeking abortions to jail, these questions get played out in civil court.

Seag There's a question of morality: Is it ethical to penalize women seeking abortions in Texas? We have categorically argued that women need to be treated differently than abortionists. Even with civil liability, we say that women cannot be the defendants. That's not the goal.

Green: All things being equal, do you think that doctors who provide abortions should be put in jail?

Melanie Michaelson

What Texas Abortion Foes Want Next

Seag Yes. Absolutely. There is an unethical procedure at the heart of this debate. Elective abortion is the epitome of an injustice. It is a larger, stronger group using violent force to take the life of a smaller, weaker party. You don't have to have a religious background or be motivated by faith to realize that's not the kind of society we want to live in. I'll look forward to the day when our laws reflect that we have moral obligations to the most vulnerable populations around us.

[Read: The anti-abortion-rights movement prepares to build a post-Roe world]

Green: This law bans abortion after roughly six weeks' gestation, pegged to being able to detect a heartbeat on an ultrasound. That's really early into a pregnancy. This is essentially a total ban on abortion. So why start with the heartbeat? Why not just totally ban abortion?

Seag You have to think about the compelling state interest. How can we articulate that as the state of Texas? The heartbeat is a morally significant biological moment where we can detect whether someone is alive or not. If you see someone [passed out] on the side of your jogging trail, you go and check for the signs of life-a heartbeat. That was very appealing to a lot of pro-life Texans. That was appealing to a lot of elected officials.

You're right that it is more ethically consistent to ban all abortions and say, "At the moment of sperm-egg fusion, you have an independent, individual human being who is unlike anyone else-no longer an organ, but an organism." However, whenever we look at legislation, you have to have a majority. You have to have the votes. The heartbeat ban was a really popular piece of legislation. It was easy to explain to even some individuals who identified as pro-choice.

Green: I'm curious about the state of play in Texas. Just five years ago, Hellerstedt was a major defeat for pro-lifers in Texas. Do you feel more optimistic now than you did then that it will be possible to permanently ban abortion in Texas?

Seag Absolutely. Yes. There's been a ton of momentum for the pro-life movement since then. Hellerstedt was an extremely disappointing decision from a legal standpoint. Abortion jurisprudence is built on some fundamental legal and scientific and moral errors. What we want to do as an organization is pass aggressive legislation that highlights those errors. Things like the ridiculous viability standard-the idea that, ethically, it's okay to take a life if it can't survive on its own, but once it can survive on its own, all of a sudden it is unethical to take that life. That violates common ethical reasoning.

We want to pass legislation to show the Supreme Court that they need to tear down and rebuild the legal foundation they have relied upon when it comes to abortion legislation. We're invested in that, but that's really a different project than the heartbeat act.

Green: I'm going to ask the question that all of your opponents have on their mind. All of the women in abusive relationships, or who are straining to take care of the kids they have, or who can't afford to buy food, or whose babies are diagnosed with severe disabilities or genetic abnormalities-this law in Texas is potentially going to change the course of their lives. Aren't you worried about hurting them?

Seag Yes, we are. At the same time, as we passed S.B. 8, we invested $100 million in the Alternatives to Abortion program, and we increased funding to the Healthy Texas Women program. We're concerned about not just saying no to abortion but supporting women who are facing unexpected pregnancies or other difficult circumstances. That needs to be the pro-life vision for the state of Texas. Part of our core agenda every session is increasing funding to these programs that support women and their families.

We are the organization that drags Republicans, sometimes kicking and screaming, into investing more money into social services for pregnant women. However, we face a major injustice: more than 50,000 elective abortions and the intentional killing of innocent human life. That's not good for mothers.

[Read: A pastor's case for the morality of abortion]

Green: I want to push you on that, because, as an environment for pregnant women, Texas is pretty harsh. For example: It's one of roughly a dozen states across the country that didn't expand Medicaid under the Affordable Care Act. So poor women have less access to insurance coverage and health care. Critics would say that you shouldn't prioritize a heartbeat bill; you should prioritize improving Medicaid access so that poor women can see a way to potentially keep a pregnancy. Are you going to advocate that Texas expands Medicaid access?

Seag Medicaid expansion is one issue. But we have to be mindful of our political atmosphere and what is possible. We will continue to advocate for policies that are good for pregnant women and open up access to social and medical services. There's much more we can do as far as serving pregnant women. We're open to those things, but we have to realize that we don't drive the legislature. Just because we're a pro-life organization doesn't mean we get everything we ask for.

Melanie Michaelson

What Texas Abortion Foes Want Next

Green: That's really interesting, because obviously the pro-life movement is strongly associated with the Republican Party across the country. Do you ever feel frustrated with the Republican Party-that sometimes it says it's pro-life, but it doesn't necessarily put its money and its policy where its mouth is, in terms of doing everything it can to make sure that pregnant women are able to thrive?

Seag Absolutely. The Republican Party does not have 100 percent of my support. There are areas where I think their policies and priorities are hurtful to human flourishing, and actually unethical.

The problem is that when I compare the parties, I see that while the Democratic Party may be better on disability rights and access to health care, ultimately they are turning a blind eye to significant, glaring injustices. At the end of the day, I'm working with the Republican Party because they are the only party at this moment that is willing to boldly stand up against the gross injustice of elective abortion.

Green: For the past 48 years, the pro-life movement has been fighting Roe and trying to put an end to legal abortion in the United States. In some ways, it seems like that goal is closer now than ever. That potentially means the world we're going to be living in will be very different-including hundreds of thousands more babies and children running around. Is the pro-life movement financially and politically ready to support that world? If you got what you wanted, would you be ready?

Seag To be honest, it would require a higher level of commitment and investment that we have not seen. However, the infrastructure is already there. The commitment is already there. Think of the pregnancy-center movement: small nonprofits around the state that are seeking to support women in making sure they have a safe home and access to food or can apply for a job or put a rsum together. Pregnancy-center directors are seeing an influx of women come through their doors. These people who are sitting down with pregnant women and trying to help them-that's really where the heart of the pro-life movement is. That is the kind of self-sacrifice and compassion that it's going to take to live in an abortion-free state.

**Load-Date:** September 9, 2021

---

**End of Document**

Melanie Michaelson