**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § | |
| v. | § § | Civil No. 1:21-cv-796 |
| THE STATE OF TEXAS, | § § | |
| Defendant. | § | |

# EXHIBIT 11

## Declaration of James S. De La Cruz

THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, </br></br> Plaintiff, </br></br> v. </br></br> THE STATE OF TEXAS, </br></br> Defendant. | Case No. 1:21-cv-796 |

**DECLARATION OF JAMES S. DE LA CRUZ**

I, James S. De La Cruz, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that my testimony below is true and correct:

1. I am employed in the position of Senior Federal Field Specialist (FFS) Supervisor within the Office of Refugee Resettlement (ORR), a component of the Administration for Children and Families (ACF) within the U.S. Department of Health and Human Services (HHS).

2. I have held the position of Senior Federal Field Specialist Supervisor since 2013. In this capacity, my job duties include supervision of the FFS Team. The FFS staff I supervise routinely make release and transfer decisions. Staff have a wide array of professional backgrounds, including Master Level Social Workers, previous Child Care Administrators, and some have licenses in their field to include Licensed Clinical Social Workers and PhD level psychologists. Best Interest Recommendations made by these individuals are based on best child welfare practices. From 2013 to 2018, I also oversaw the ORR Intakes Team.

1

3. Prior to assuming my current position, I held the position of FFS. In that capacity, I worked with care providers to ensure appropriate and safe care for children, responded to requests to assist care providers, provided training and technical assistance to colleagues and care providers, and liaised with community stakeholders. I also routinely made release and transfer decisions.

4. I have a Bachelor's Degree in Public Justice, which is a multidisciplinary degree that includes education in social work, psychology and the United States justice system. I also have a Master's Degree in Public Administration, focusing on public institutions and systems. I have a Master's in Social Work as well. Both my career and formal education focus on systems and institutions that provide for care and services for children and families.

5. From approximately 1984 to 2004 I worked with a private, non-profit agency that worked with "at risk youth." Children I worked with were referred by the Texas Department of Protective Services, various juvenile probation departments, runaway and drop-in children, parolees from the Texas Youth Commission, and Immigration and Naturalization Services. By 2004, I served as agency administrator, overseeing several programs for children aged 5 to 17 years. I also developed and opened a Transitional Living Program that provided transitional services to children turning 18 and services for young adults up to 21 years of age.

6. My testimony in this declaration is based upon my personal knowledge, information acquired by me in the course of performing my official duties (such as my knowledge of ORR policies and procedures, including the ORR Guide[1]) and my review of HHS records, systems, and information maintained by ORR in the regular course of my employment. I am familiar with the allegations in this matter, and submit this declaration in order to describe the

---

[1] https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied

immediate and irreparable harm ORR will suffer as a result of Texas's Senate Bill 8, 87th Leg., Reg. Sess. (Tex. 2021) (S.B. 8).

7. ORR is the agency charged by Congress with the care and custody of UC. The UC population includes tender-age children, pregnant and parenting teens, and youth who have been trafficked. UC are defined by statute as individuals without lawful immigration status under the age of 18 without a parent or legal guardian in the United States who is available to provide care and physical custody; they are in the legal custody of the United States. *See* 6 U.S.C. § 279(b)(1), (g)(2); *see also* 8 U.S.C. § 1232(b)(1) ("[T]he care and custody of all unaccompanied alien children, including responsibility for their detention, where appropriate, shall be the responsibility of the Secretary of Health and Human Services.").

8. Within ORR, the UC Program is responsible for the administration of a network of facilities throughout the country that care for UC arriving in the United States prior to those children being placed with sponsors in the United States, typically a parent or related adult. ORR is not responsible for immigration enforcement and is not a federal law enforcement agency—ORR is a federal child welfare agency.

9. ORR does not directly operate any child-care facilities itself, but rather provides grants to child-care providers throughout the United States, who care for UC on ORR's behalf pursuant to cooperative agreements with ORR. As of September 2021, ORR oversees at least 240 grantee facilities under at least 50 separate grants. Within Texas, there are at least 67 care-provider facilities operating under various grants. In addition to these grantee care-provider facilities, ORR also operates two Emergency Intake Sites (EIS) in Texas, which are emergency facilities that were set-up to decompress overcrowded U.S. Customs and Border Protection (CBP) facilities. EIS facilities minimize the time UC must spend in CBP custody and provide basic care

to UC while they await release to a sponsor or transfer to a licensed ORR shelter.

### ORR's Provision of Health Care for Unaccompanied Children

10. ORR facilitates and funds access to health care for all UC in its custody. ORR has developed its health care services policies with the goals of ensuring the children's physical and mental well-being and the safety of care providers, medical personnel, and communities. *See* ORR Policy Guide: Alien Children Entering the United States Unaccompanied, Health Care Services, 3.4, available at https://www.acf.hhs.gov/orr/policy-guidance/children-entering-united-states-unaccompanied-section-3#3.4. ORR provides access to medical care in accordance with standards of care set by, *inter alia*, applicable state welfare laws and regulations, the 1997 Flores Settlement Agreement (*Flores v. Reno*, Case CV-85-4544-RJK(px) (C.D. Cal.)), and the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. No. 110-457 § 235, 122 Stat. 5044, 5074-5082 (Dec. 23, 2008) (codified at 8 U.S.C. § 1232).

11. ORR's internal guidelines state that ORR must provide "[a]ppropriate routine medical and dental care, family planning services, including pregnancy tests and comprehensive information about and access to medical reproductive health services and emergency contraception" to unaccompanied minors, per the terms of the Flores Settlement Agreement. ORR Policy Guide: Alien Children Entering the United States Unaccompanied, Care Provider Required Services, 3.3, available at https://www.acf.hhs.gov/orr/resource/children-entering-the-united-statesunaccompanied-section-3#3.3. The same guidelines also state that "[c]are providers must comply with all applicable State child welfare laws and regulations and . . . must deliver services in a manner that is sensitive to the age, culture, native language, and needs of each unaccompanied alien child." *Id.*

12. An ORR Policy Memorandum on Medical Services Requiring Heightened ORR Involvement provides instructions on requests for abortion, significant surgical and medical procedures, and procedures that may threaten the life of a child. ORR Policy Memorandum: Medical Services Requiring Heightened ORR Involvement, available at https://www.acf.hhs.gov/sites/default/files/documents/orr/garza_policy_memorandum.pdf. The policy also addresses confidentiality and notification procedures for minors who are pregnant, considering an abortion, or have had an abortion. ORR care providers are required to comply with state law governing access to abortion and abortion services. *Id.*

13. ORR's policy memorandum on Medical Services Requiring Heightened ORR Involvement is the direct result of a settlement reached in *Garza v. Hargan*, Case 1:17-cv-02122-TSC (D.D.C), implementing a preliminary injunction entered by the court. The *Garza* court enjoined ORR from preventing a UC's transportation to an abortion facility or otherwise interfering with or obstructing a UC's access to an abortion, including by further forcing her to disclose her abortion decision against her will or disclosing her decision, forcing her to obtain pre- and/or post-abortion counseling from an anti-abortion entity, and/or retaliating against her for her abortion decision. *Id.* at Dkt. 29. Therefore, much of the contents of ORR's policy memorandum are Court-ordered and obligate ORR to adhere to the policies outlined therein.

14. Consistent with its obligations to provide care for the UC in its custody, ORR must provide access to abortion services when requested and permitted by law, including in cases of rape or incest, following judicial bypass procedures or parental consent and subject to appropriations restrictions on paying for certain abortions. ORR Policy Memorandum: Medical Services Requiring Heightened ORR Involvement, available at https://www.acf.hhs.gov/sites/default/files/documents/orr/garza_policy_memorandum.pdf

15. UC in ORR custody in Texas have previously requested abortions that would violate S.B. 8. ORR anticipates that requests for abortions in Texas that would violate S.B. 8 will continue to be made.

### S.B. 8 will Interfere with ORR's Operations and Increase ORR's Costs

16. I understand that in nearly all cases S.B. 8 bans abortions performed by a physician licensed by the State of Texas if fetal cardiac activity has been detected. Specifically, S.B. 8 provides that "a physician may not knowingly perform or induce an abortion . . . if the physician detect[s] a fetal heartbeat . . . or fail[s] to perform a test to detect a fetal heartbeat." Tex. Health & Safety Code § 171.204(a). S.B. 8 defines "fetal heartbeat" as "cardiac activity or the steady and repetitive rhythmic contraction of the fetal heart within the gestation sac." *Id.* § 171.201(1).

17. I understand that S.B. 8 contains no exceptions for pregnancies that result from rape, sexual abuse, or incest, or for pregnancies involving serious fetal anomalies, including those incompatible with life after birth. The law provides an exception only for a "medical emergency . . . that prevents compliance" with the law. *Id.* § 171.205(a).

18. I understand that the prohibitions in S.B. 8 purport to apply to anyone who performs or induces a prohibited abortion, anyone who "knowingly" "aids or abets" the performance or inducement of a prohibited abortion, and anyone who "intends" to perform or aid a prohibited abortion. *Id.* § 171.208(a)(1)–(3). Under the statute, aiding and abetting includes "paying or reimbursing the costs of an abortion through insurance or otherwise." *Id.* § 171.208(a)(2).

19. S.B. 8's prohibition on "knowingly" "aid[ing] or abet[ting]" the performance or inducement of a prohibited abortion, and imposition of liability on anyone who "intends" to

perform or aid a prohibited abortion, will interfere with ORR's operations and likely increase the costs of ORR's transport of unaccompanied children in their care who request abortion-related services constitutionally protected by federal law but prohibited by S.B. 8. *See* 6 U.S.C. § 279(a), (b).

20. By prohibiting nearly all abortions in Texas after six weeks of pregnancy, without exceptions for rape, sexual abuse, or incest, S.B. 8 conflicts with ORR's statutory, judicially mandated, and constitutional responsibilities. Where ORR is obligated to provide access to the abortion services that S.B. 8 outlaws, S.B. 8 purports to require ORR to refrain from providing access to those services within Texas and therefore must relocate women who wish to access those services out of Texas. Thus, S.B. 8 purports to regulate ORR's administration of a federal program and will increase costs to the extent that ORR must incur increased transportation and other costs to move UCs out of Texas in order to provide access to abortion services to which UCs are constitutionally entitled but that are prohibited by S.B. 8.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 14, 2021.

_____
James S. De La Cruz
Senior Federal Field Specialist Supervisor
Division of Children's Services
Office of Refugee Resettlement
Administration for Children and Families
Department of Health and Human Services