THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § § § Plaintiff, § § v. § § THE STATE OF TEXAS, § § Defendant. § § | Civil No. 1:21-cv-796 |

# EXHIBIT 14

# Declaration in Support of the United States' Emergency Motion for a Temporary Restraining Order or Preliminary Injunction ("Bodenheimer Decl.")

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> *Plaintiff,* <br><br> v. <br><br> THE STATE OF TEXAS, <br><br> *Defendant.* | Case No. 1:21-CV-796 |

**DECLARATION IN SUPPORT OF THE UNITED STATES' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION**

I, Laurie Bodenheimer, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am the Associate Director, Healthcare and Insurance, of the United States Office of Personnel Management ("OPM"). I have served in this role at OPM since May 2019. From May 2019 until February 2021, I served as Acting Director of Healthcare and Insurance; in February 2021, I was appointed as permanent Associate Director. In this capacity, I am part of the Federal Employees Health Benefits (FEHB) Program team that negotiates with carriers to establish health benefits plan options in which Federal employees and eligible annuitants may enroll.

2. The statements contained in this Declaration are based on my personal knowledge and information made available to me in my official capacity. I have reviewed the Complaint in this matter and understand that this Declaration is being submitted in support of the United States' emergency motion for a temporary restraining order or temporary injunction in the above-captioned matter.

3. Each year, OPM negotiates with carriers over what the FEHB plans will cover and

the rates that the carriers will charge for enrollment in those plans. Upon reaching an agreement, OPM and the carrier enter into a contract executed by each party. Eligible federal employees and annuitants may then elect to enroll in the carrier's plan.

4. Carriers with which OPM contracts include, for example, the Blue Cross and Blue Shield Association, the Government Employees Health Association, Inc., and the NALC Health Benefit Plan. Many carriers offer nationwide plans. Other carriers offer local plans, including local Texas plans that cover federal employees and annuitants within their geographic service areas in Texas.

5. The FEHB plans that are currently in place for 2021 were negotiated in the summer of 2020, and all contain coverage for abortions under certain circumstances. In accordance with federal law, these plans exclude services, drugs, or supplies related to abortions, but this exclusion does not apply "when the life of the mother would be endangered if the fetus were carried to term, or when the pregnancy is the result of an act of rape or incest." *See*, *e.g.*, Blue Cross and Blue Shield Service Benefit Plan Section 6. General Exclusions at 134 (e-page 137), https://www.fepblue.org/our-plans/-/media/PDFs/Brochures/Standard-and-Basic-Option-brochure_2021.pdf.

6. Approximately 122,505 women in Texas were enrolled in health plans in the FEHB Program during 2020. Of these female enrollees, approximately 62,806 were active federal employees and approximately 59,699 were annuitants. These numbers include only enrollees; OPM does not have data identifying the number of female family members covered under an employee's or annuitant's enrollment, including spouses, adult children up to age 26, or dependent children. Thus, the total number of females in Texas insured through the FEHB Program exceeds 122,505, likely by a substantial amount.

7.  If a woman insured under a FEHB plan receives a covered abortion in Texas, the carrier of her health plan funds the abortion to the extent that any network, deductible, or other cost sharing requirements are satisfied. The mechanism of funding may vary by the carrier, plan type, and circumstances of the procedure. Carriers might transmit payment for the procedure to the provider, pay providers through capitated agreements over time, or — in certain circumstances — reimburse the patient for the cost of the procedure. Some health maintenance organizations (HMOs) may employ providers and pay their salaries rather than paying for individual services.

8.  S.B. 8 prohibits abortions that are covered under FEHB plans for federal employees, annuitants and their covered family members and appears to impose liability for the paying or reimbursing of the costs of an abortion through insurance or otherwise. Carriers will be placed in the untenable position of either complying with their contract with OPM or violating S.B. 8, thereby raising the possibility that carriers will refuse to pay for or provide covered abortions as required under their FEHB contracts.

9.  As such, S.B. 8 likely will materially interfere with OPM's administrative authority to conduct the FEHB Program to the extent that S.B. 8 may cause carriers to become unwilling to provide coverage for abortion services, or to the extent that providers are unwilling to perform abortion services, which OPM and the carrier have already negotiated for and approved as covered under FEHB contracts.

10. Pursuant to 5 U.S.C. 8902(j), each FEHB contract requires the carrier to agree to pay for or provide a health service in an individual case if OPM finds that the covered individual is entitled thereto under the terms of the contract. If a FEHB carrier denied a claim because of S.B. 8 for an abortion that is covered under the terms of the FEHB health benefits plan, such a denial could result in costly and time-consuming litigation for OPM.

11. The covered individual who sought the abortion would be entitled to invoke OPM's disputed claims process in accordance with 5 C.F.R. 890.105, by seeking reconsideration of the carrier's denial of the claim. If the carrier continued to deny the claim, the covered individual could appeal to OPM for administrative review of the coverage decision. If OPM were to find the health service covered, OPM would then issue a final administrative decision finding the covered individual entitled to coverage for the abortion under the terms of the FEHB plan, and OPM would direct the carrier to pay for or provide the service.

12. A carrier's failure to comply with an OPM directive would be cause for a contract dispute between OPM and the carrier. If OPM were not able to compel coverage by the carrier, OPM could be exposed to litigation by the covered individual for failure to appropriately enforce its contract with the carrier.

13. In the case of an HMO, if a provider employed by or under contract with the carrier chose not to provide an abortion that is covered under the terms of a health benefits plan negotiated with OPM, OPM could determine pursuant to 5 C.F.R. 890.103(d) that such a refusal constituted an impaired relationship between the patient and the plan's provider that jeopardized adequate medical care. In that case, OPM could terminate the covered individual's enrollment in that HMO and permit enrollment in another FEHB plan. However, S.B. 8 creates the real potential that no providers may be available to provide this service under any FEHB plan in the individual's geographic area or even in the entire state.

14. S.B. 8 may also impact OPM's negotiations with carriers regarding health benefits to be provided in future years. Carriers may refuse to continue to cover abortion services that they determine conflict with S.B. 8. Consequently, S.B. 8 may materially interfere with OPM's statutory duty and discretion to approve plans containing terms that OPM finds to be necessary and desirable in FEHB plan contracts. Because nationwide plans must cover uniform benefits for all covered

individuals nationwide, a carrier for a nationwide plan may refuse to cover abortions prohibited by S.B. 8 not only for insureds in Texas, but in all states, in order to ensure uniformity in coverage nationwide and comply with S. B. 8. If this were to occur, OPM would be thwarted in its ability to ensure the availability of FEHB plans that contain necessary and desirable terms.

15. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 14, 2021

LAURIE BODENHEIMER
Digitally signed by LAURIE BODENHEIMER
Date: 2021.09.14 13:28:13 -04'00'

Laurie Bodenheimer
Associate Director, Healthcare and Insurance
U.S. Office of Personnel Management