UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |
|---|---|
| **United States of America**<br><br>          Plaintiff,<br><br>v.<br><br>**The State of Texas,**<br><br>          Defendant. | Case No. 1:21-cv-00796-RP |

## MOTION TO INTERVENE

Erick Graham, Jeff Tuley, and Mistie Sharp respectfully move to intervene as of right under Rule 24(a)(2). Each of these proposed intervenors also moves for permissive intervention under Rule 24(b)(1)(B). The United States is attempting to deprive Mr. Graham, Mr. Tuley, and Ms. Sharp (as well as countless others) of their state-law right to bring private civil-enforcement suits against individuals and entities that violate the Texas Heartbeat Act. And it is seeking to prevent them from bringing *any* civil-enforcement lawsuits under Senate Bill 8, even when they sue over conduct that is clearly unprotected by the Constitution. The categorical, across-the-board injunction that the United States is seeking defies the severability requirements in Senate Bill 8, which instruct this Court to sever and preserve every constitutional provision and every constitutional application of the statute. *See* Senate Bill 8, 87th Leg. §§ 3, 5, 10. Mr. Graham, Mr. Tuley, and Ms. Sharp seek intervention to preserve their state-law rights and to ensure that Senate Bill 8's severability requirements are observed and enforced. They also seek intervention to dispute the United States' contention that they (and other private individuals who might sue under Senate Bill 8) are part of "the State of Texas" and can be subject to injunctive relief directed at the State.

## FACTS

Mr. Graham, Mr. Tuley, and Ms. Sharp[1] are Texas residents who are interested in bringing civil-enforcement lawsuits against individuals or entities that violate the Texas Heartbeat Act. *See* Declaration of Erick Graham ¶¶ 8–10 (attached as Exhibit 1); Declaration of Jeff Tuley ¶¶ 8–10 (attached as Exhibit 2); Declaration of Mistie Sharp ¶¶ 8–10 (attached as Exhibit 3). None of these proposed intervenors have any intention of suing over conduct that is arguably protected by the Supreme Court's interpretations of the Constitution. Instead, the proposed intervenors intend to sue only individuals and entities whose conduct is clearly unprotected by the Constitution, and who cannot plausibly assert an "undue burden" defense under section 171.209 of the Texas Health and Safety Code.

Mr. Graham, for example, intends to sue only employers and insurance companies that provide or arrange for coverage of abortions that violate Senate Bill 8. *See* Graham Decl. at ¶ 9. Mr. Graham also intends to sue the city of Austin if it uses taxpayer money to subsidize the provision of post-heartbeat abortions performed in Austin, as it was doing before the Heartbeat Act took effect. *See id.* at ¶ 9; *see also Zimmerman v. City of Austin*, 620 S.W.3d 473, 482 (Tex. App.—El Paso 2021, pet. filed). Mr. Graham has focused on these entities because the Supreme Court has made clear that there is no constitutional right to taxpayer subsidies or private insurance coverage of abortion, so there is no possible argument that any of Mr. Graham's intended lawsuits would violate the Constitution or anyone's constitutional rights. *See Harris v. McRae*, 448 U.S. 297, 325 (1980); Graham Decl. at ¶ 10. In addition, the entities that Mr. Graham intends to sue lack third-party standing to assert the constitutional rights of abortion patients under the tests for third-party standing established by the Supreme Court. *See, e.g., Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004).

---

1. For simplicity and ease of exposition, we will refer to Mr. Graham, Mr. Tuley, and Ms. Sharp as "the movants" or "the proposed intervenors" throughout this brief.

Mr. Tuley intends to sue only individuals or entities that perform or assist abortions that are clearly unprotected under existing Supreme Court doctrine, which include: (a) non-physician abortions; (b) self-administered abortions; and (c) post-viability abortions that are not necessary to preserve the life or health on the mother. *See* Tuley Decl. at ¶ 9.[2] Mr. Tuley has decided to target these individuals and entities because the Supreme Court has made clear that there is no constitutional right to abortion in any of these scenarios, so there is no conceivable argument that any of those intended lawsuits would violate the Constitution or anyone's constitutional rights. *See id.* at ¶ 10; *Roe v. Wade*, 410 U.S. 113, 164–65 (1973); *Connecticut v. Menillo*, 423 U.S. 9, 9–10 (1975); *Mazurek v. Armstrong*, 520 U.S. 968, 971 (1997). These types of abortions were already prohibited before the Texas Heartbeat Act became effective, but the Heartbeat Act provides a private-enforcement mechanism that was previously unavailable. Preserving this enforcement mechanism is important to Mr. Tuley because several district attorneys in Texas refuse to enforce these laws.

Ms. Sharp intends to sue only abortion funds who pay for post-heartbeat abortions performed in Texas. *See* Sharp Decl. at ¶ 9. Ms. Sharp has decided to target these entities because there is no constitutional right to pay for another person's abortion, and there is no constitutional right to receive financial assistance from others when seeking an abortion. *See id.* at ¶ 10; *Harris v. McRae*, 448 U.S. 297, 325 (1980). In addition, the abortion funds that Ms. Sharp intends to sue lack third-party standing to assert the constitutional rights of abortion patients under the tests for third-party standing established by the Supreme Court. *See, e.g.*, *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). Although the Supreme Court has allowed abortion *providers* to

---

2.   Mr. Tuley has no intention of suing any pregnant woman who aborts or attempts to abort her unborn child. *See* Tuley Decl. at ¶ 7; Tex. Health & Safety Code § 171.206(b)(1) (forbidding such lawsuits).

assert the third-party rights of abortion patients in constitutional litigation,[3] it has never allowed abortion funds to assert the constitutional rights of abortion patients.

## I.   THE MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT UNDER RULE 24(a)(2)

Rule 24(a)(2) requires a court to allow intervention to anyone who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). And the Fifth Circuit has held that a court should allow intervention under Rule 24(a)(2) if: (1) the application is "timely"; (2) the proposed intervenors have "an interest relating to the property or transaction that is the subject of the action"; (3) the "disposition of the action" will "impair or impede [their] ability to protect [their] interest"; and (4) the interests of the proposed intervenors are "inadequately represented by the existing parties to the suit." *Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994). Each of these requirements is satisfied.

### A.   The Motion To Intervene Is Timely

The motion to intervene is timely. *See NAACP v. New York*, 413 U.S. 345, 365 (1973) (the court must be satisfied as to timeliness based on the circumstances of each case). The Fifth Circuit uses four factors to determine timeliness:

> (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene;

> (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case;

---

3.   *See, e.g., Singleton v. Wulff*, 428 U.S. 106, 113–18 (1976) (plurality opinion); *June Medical Services LLC v. Russo*, 140 S. Ct. 2103, 2118–20 (2020) (plurality opinion); *id.* at 2139 (Roberts, C.J., concurring).

(3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and

(4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Espy*, 18 F.3d at 1205. The timeliness "analysis is contextual"; thus, "courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" *Id.* (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)).

The United States did not file its lawsuit until September 9, 2021, and it did not move for a preliminary injunction until September 14, 2021. This motion was filed within days of the United States' announced intention to seek an injunction against private individuals. The motion for preliminary injunction is not scheduled to be heard until October 1, 2021, so no party will be prejudiced by the timing of this intervention. And the proposed intervenors will be prejudiced if intervention is denied, as they will not be able to participate in the hearing or present their own evidence and arguments to protect their rights. At such an early stage of the case, the motion to intervene is timely.

## B.   The Movants Have Interests Relating To The Subject Of The Action

Each of the movants has an obvious "interest" in this action: Their desire to preserve their state-law right to sue individuals and entities that perform or assist abortions in violation of the Texas Heartbeat Act. *See* Graham Decl. at ¶ 6; Tuley Decl. at ¶ 6; Sharp Decl. at ¶ 6; *see also New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984) (en banc) (requiring a "direct, substantial, legally protectable interest in the proceedings"); *id.* ("What is required is that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant."). This right is conferred not only by state law, but also by the First Amendment right to petition the courts and the *Noerr–Pennington* doctrine. *See* U.S.

Const. amend I; *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) (extending the *Noerr–Pennington* doctrine to efforts to sue in court). The United States is seeking to permanently deprive the movants of that right by asking this Court to enjoin every person in the world from suing to enforce Senate Bill 8 in any situation—even when they sue over conduct that is clearly unprotected by the Constitution—and by asking this Court to enjoin the Texas judiciary from "maintaining *any* civil proceeding pursuant to S.B. 8." Proposed Order, ECF No. 6-2 at 2 (emphasis added). And the United States is demanding this grossly overbroad remedy despite the severability requirements that appear throughout Senate Bill 8,[4] and despite the fact that the lawsuits that the movants intend to file are indisputably constitutional and will not result in a violation of anyone's constitutional rights.

The movants also have an "interest" in opposing the United States' contention that they are somehow part of the State of Texas. The State of Texas is the only named defendant in this lawsuit, yet the United States is insisting that the movants (and others) can be enjoined on the theory that the state of Texas comprises every private individual who might sue under Senate Bill 8. *See* Proposed Order, ECF No. 6-2 at 1–2 (asking this Court to enjoin "the State of Texas . . . including private individuals who initiate enforcement proceedings under S.B. 8"). The movants seek intervention to argue that they (and other private individuals who would file lawsuits under S.B. 8) are not part of the State of Texas and cannot be bound by an injunction entered against the State as an entity. *See Hansberry v. Lee*, 311 U.S. 32, 40 (1940) ("[O]ne is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."); *Hollingsworth v. Perry*, 570 U.S. 693, 709–11 (2013) (holding that private individuals cannot be deemed agents of the state when purporting to appeal on the state's behalf,

---

4.   *See* Senate Bill 8, 87th Leg. §§ 3, 5, 10.

even when the state's supreme court had "determined that they are 'authorized under California law to appear and assert the state's interest' in the validity of Proposition 8." (citation omitted)).

> ### C.   Disposition Of This Action Without The Movants' Involvement As Intervenor-Defendants Will Impair Their Ability To Protect Their Interests

The United States is asking this Court to enjoin the movants from filing any lawsuits under Senate Bill 8, even though the movants have never been made a party to this lawsuit by service of process. If the Court grants this requested relief, the movants could be subject to contempt proceedings if they exercise their right to petition the courts under state law and the First Amendment. Excluding the movants from this proceeding and resolving the case without their involvement would not only "impair" their "ability to protect their interests," it would also violate the Due Process Clause if the Court grants the relief sought by the United States. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112 (1969) ("It was error to enter the injunction against Hazeltine . . . in a proceeding to which Hazeltine was [not] a party."); *Martin v. Wilks*, 490 U.S. 755, 762 (1989) ("A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.").

> ### D.   The Movants' Interests Are Inadequately Represented By The Parties

The only remaining question is whether the movants' interests are inadequately represented by the parties. The burden to show inadequate representation "is not a substantial one"; in fact, it is "minimal." *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014); *see also Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule [24(a)] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.").

There is certainly reason to believe that the Texas Attorney General's representation of the movants' interests "may be" inadequate. *Id.* The Texas Attorney General's office does not and cannot represent private entities such as the movants—precisely because these private individuals are *not* part of the State of Texas—and it has no particular reason or incentive to press arguments that would shield non-state actors such as the movants from injunctive relief if the entire "State of Texas" were to be enjoined. The Texas Attorney General's office represents the interests of state officers and state entities, not private individuals, and it is forbidden by law to represent private individuals in court. *See* https://www.texasattorneygeneral.gov/about-office/duties-responsibilities ("[T]he Attorney General is prohibited from offering legal advice or representing private individuals"). And it is not even clear that the Texas Attorney General would have standing to assert the rights of private individuals under the First Amendment or the *Noerr–Pennington* doctrine, given that these are third-party rights and there is a heavy presumption against third-party standing in federal court. *See, e.g., Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("A party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). So it is at least plausible to "doubt" that the Attorney General's office will effectively represent the movants' interest in excluding themselves from the definition of the "State of Texas"—and that is all that is needed to support intervention under Rule 24(a)(2). *See Trbovich*, 404 U.S. at 538 ("[W]e think it clear that in this case there is sufficient doubt about the adequacy of representation to warrant intervention."); *id.* at 538 n.10 ("The requirement of the Rule [24(a)] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."); *Rotstain v. Mendez*, 986 F.3d 931, 939 (5th Cir. 2021) ("A movant's burden to show that its interests are not

adequately protected is 'minimal' and 'satisfied if the applicant shows that representation of his interest "may be" inadequate.'" (quoting *Trbovich*, 404 U.S. at 538 n.10)).

The movants' severability contentions also "may be" inadequately represented absent intervention. The movants do expect that the Texas Attorney General's Office will point out the severability requirements that appear throughout Senate Bill 8, which require reviewing courts to sever and preserve all provisions and applications of the statute that can be enforced without violating the Constitution. But the movants (unlike the Attorney General's office) will be able to provide this Court with concrete evidence of intended lawsuits under Senate Bill 8 that fully comply with existing constitutional doctrines—and that must be preserved in any injunctive remedy that this Court might issue. The Attorney General's office cannot produce evidence of intended lawsuits that it might bring because the State is categorically forbidden to enforce Senate Bill 8. *See* Tex. Health & Safety Code § 171.207.

Intervention will also reduce the likelihood that the movants' severability contentions will be ignored. The United States is trying to induce this Court to overlook the severability requirements of Senate Bill 8 by refusing to acknowledge them in its brief, and by insisting that this Court enjoin the state of Texas from enforcing *any* provision of the statute, including provisions that the United States does not even allege to be unconstitutional. *See* Mot. for TRO or Prelim. Inj., ECF No. 6-1; Proposed Order, ECF No. 6-2. The United States is also asking the Court to enjoin the entire world from bringing *any* private civil-enforcement actions under Senate Bill 8, even when a litigant sues over conduct that is clearly unprotected by the Constitution. *See id.* Allowing the movants to intervene will crystallize the severability issues and make it impossible for the United States (and any court that might consider this case) to ignore the severability requirements in S.B. 8.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION UNDER RULE 24(b)(1)(B)

The movants also satisfy the requirements for permissive intervention. *See* Fed. R. Civ. P. 24(b)(1)(B) ("On timely motion, the court may permit anyone to intervene who . . . (B) has a claim or defense that share with the main action a common question of law or fact."). To obtain permissive intervention under Rule 24, a movant must demonstrate that: (1) the motion to intervene is timely; (2) its claim or defense has a question of law or fact in common with the existing action; and (3) intervention will not delay or prejudice adjudication of the existing parties' rights. *Id.*; *see United States v. LULAC*, 793 F.2d 636, 644 (5th Cir. 1986) ("Although the court erred in granting intervention as of right, it might have granted permissive intervention under Rule 24(b) because the intervenors raise common questions of law and fact.").

The movants have already established that their motion is timely. *See* Part I.A. *supra*. And intervention will not cause delay or prejudice, as the movants intend to file their brief opposing the preliminary-injunction motion by 9:00 A.M. on September 29, the same day on which the state of Texas's brief is due. Finally, the movants' defenses share common questions of law and fact with the main action. One of the movants' defenses is that the United States cannot deprive them of their right to sue under Senate Bill 8 because they intend to bring civil-enforcement actions only against individuals or entities who have no conceivable constitutional defense for their actions. This defense shares a common question of law with the main action: Are the severability requirements in Senate Bill 8 enforceable, or can they be ignored as the United States is proposing? The movants are also seeking to defend themselves on the ground that they cannot be considered part of "the State of Texas." This too involves a common question of law regarding the scope of permissible injunctive relief that can be entered against the state of Texas as an entity. The Court should therefore grant intervention under Rule 24(b)(1)(B) at minimum and allow the movants to contest the

patently overbroad remedy that the United States is seeking. *See Texas v. United States*, 805 F.3d 653, 656–57 (5th Cir. 2015) (holding that "Rule 24 is to be liberally construed" and that "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained." (citations and internal quotation marks omitted)).

## CONCLUSION

The motion to intervene should be granted.

Respectfully submitted.

Heather Gebelin Hacker
Texas Bar No. 24103325
Andrew B. Stephens
Texas Bar No. 24079396
Hacker Stephens LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022 (phone)
heather@hackerstephens.com
andrew@hackerstephens.com

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Gene P. Hamilton*
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

\* *pro hac vice* application
   forthcoming

*Counsel for Movants Erick Graham,
Jeff Tuley, and Mistie Sharp*

Dated: September 22, 2021

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with Lisa N. Newman, counsel for the plaintiff, and Will Thompson, counsel for the defendant. The State of Texas is unopposed to our intervention. Ms. Newman asked to review our motion before taking a position, so the United States has not taken a position on the motion at this time.

  /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Movants Erick Graham,*
*Jeff Tuley, and Mistie Sharp*

# CERTIFICATE OF SERVICE

I certify that on September 22, 2021, I served this document through CM/ECF upon all counsel of record in this case.

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Movants Erick Graham,*
*Jeff Tuley, and Mistie Sharp*