UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **United States of America,** | |
| Plaintiff, | |
| | Case No. 1:21-cv-00796-RP |
| v. | |
| **The State of Texas,** | |
| Defendant. | |

## INTERVENORS' RESPONSE TO THE UNITED STATES' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Table of contents ................................................................................................. i

Table of authorities ............................................................................................ ii

    I.   The United States has failed to make a "clear showing" of likely success on merits ......................................................................................... 1

        A.  The United States has failed to make a "clear showing" of a cause of action ................................................................................. 2

        B.  The United States has failed to make a "clear showing" that it is entitled to an injunction that prevents Texas from enforcing any provision of SB 8 in any situation ............................................ 9

        C.  The United States has failed to make a "clear showing" that this Court can enjoin private individuals that might sue under SB 8 ............ 13

        D.  The United States has failed to make a "clear showing" that a federal court can enjoin a state's judiciary from considering lawsuits that have yet to be filed ................................................................. 14

        E.  The United States has failed to make a "clear showing" that any federal law preempts SB 8 ............................................................ 16

        F.  The United States has failed to make a "clear showing" that the law has the sweeping effects it alleges. ........................................... 18

    II.  The United States has failed to make a clear showing that a preliminary injunction will prevent irreparable harm .............................. 18

    III.  The United States has failed to make a "clear showing" that the balance of equities weighs in its favor ...................................................... 20

    IV.  The United States has failed to make a "clear showing" that the public interest favors a preliminary injunction that prevents Texas from enforcing SB 8 in any situation ............................................................. 20

Conclusion ......................................................................................................... 21

Certificate of service ......................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Alabama State Federation of Labor, Local Union No. 103 v. McAdory*, 325 U.S. 450 (1945) ................................................................ 10, 12

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ...................................... 6, 8

*Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015) ..................... 3, 8

*Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017) ...................................... 1

*Berman v. Parker*, 348 U.S. 26 (1954) ................................................ 20

*Califano v. Yamasaki*, 442 U. S. 682 (1979) ......................................... 12

*Camreta v. Greene*, 563 U.S. 692 (2011) ............................................. 19

*City of Houston v. Bates*, 406 S.W.3d 539 (Tex. 2013) ............................... 12

*Connecticut v. Menillo*, 423 U.S. 9 (1975) ....................................... 10, 12

*Davis v. Passman*, 442 U.S. 228 (1979) ............................................... 2

*Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015) ....................................................................... 7

*Dobbs v. Jackson Women's Health Organization*, No. 19-1392 ...................... 20

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ........................................... 19

*Ex parte Young*, 209 U.S. 123 (1908) ................................................ 15

*Hansberry v. Lee*, 311 U.S. 32 (1940) ................................................ 13

*Harris v. McRae*, 448 U.S. 297 (1980) ............................................... 10

*Hernandez v. Mesa*, 140 S. Ct. 735 (2020) .......................................... 5, 6

*In re Gee*, 941 F.3d 153 (5th Cir. 2019) ............................................ 13

*Kansas v. Garcia*, 140 S. Ct. 791 (2020) ............................................ 16

*Lake Shore Asset Management Ltd. v. Commodity Futures Trading Commission*, 511 F.3d 762 (7th Cir. 2007) ......................................... 14

*Leavitt v. Jane L.*, 518 U.S. 137 (1996) ............................................ 12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ................................................................................ 3

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) ......................................... 10

*Middlesex County Ethics Commission v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ....................................................................... 15

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ................................ 7

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc) ........................ 19

*Osborn v. Bank of United States*, 22 U.S. 738 (1824) ............................................. 13

*Planned Parenthood of Greater Texas Surgical Health Services v. Abbott*, 748 F.3d 583 (5th Cir. 2014).................................................................. 10, 12

*Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992) ................ 11

*Pulliam v. Allen*, 466 U.S. 522 (1984)....................................................................... 15

*Roe v. Wade*, 410 U.S. 113 (1973) ..................................................................... 10, 11

*Roho, Inc. v. Marquis*, 902 F.2d 356 (5th Cir. 1990) ......................................... 1, 18

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996)........................................... 5

*Steffel v. Thompson*, 415 U.S. 452 (1974) ............................................................... 15

*Texas Medical Providers Performing Abortion Services v. Lakey*, 667 F.3d 570 (5th Cir. 2012)................................................................................... 1

*United States v. City of Jackson*, 318 F.2d 1 (5th Cir. 1963)..................................... 7

*United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1980) .................... 3, 5

*United States v. Salerno*, 481 U.S. 739 (1987)......................................................... 17

*Voting for America, Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013)................. 1, 12, 20

*Whole Woman's Health v. Jackson*, --- F.4th ----, 2021 WL 4128951 (5th Cir. Sept. 10, 2021) ........................................................................... 15

*Will v. Michigan Dep't of Police*, 491 U.S. 58 (1989) ............................................... 2

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ............................... 4

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969).............. 13, 14

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) .................................................................. 6

*Zimmerman v. City of Austin*, 620 S.W.3d 473 (Tex. App.—El Paso 2021)............................................................................................................ 11

**Statutes and Constitutional Provisions**

10 U.S.C. § 1093 .................................................................................................. 16

42 U.S.C. § 1983 .............................................................................................. 2, 3, 6

42 U.S.C. § 2000b(a) .......................................................................................... 4, 5, 7

42 U.S.C. § 2000c-6(a) ....................................................................................... 4, 5, 7

Consolidated Appropriations Act, 2021, Pub. L. 116-260, 134 Stat. 1182 §§ 613–14 (Dec. 27, 2020)................................................................. 17

Tex. Health & Safety Code § 171.207 ................................................................ 13

Tex. Health & Safety Code § 171.208(d) ........................................................... 20

Tex. Health & Safety Code § 171.208(e)(3)–(4) ................................................ 19

Tex. Health & Safety Code § 171.212 ...................................................... 10, 12, 17

Tex. Health & Safety Code § 171.212(a)..................................................... 10, 17

U.S. Const. amend. XIV, § 5................................................................................. 3

**Other Authorities**

David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41 ...................... 2

Richard A. Posner, *The Regulation of the Market in Adoptions*, 67 B.U.
    L. Rev. 59 (1987) ............................................................................................ 19

A preliminary injunction is an "extraordinary remedy," and it may not be granted unless the movant has "clearly carried the burden of persuasion on all four requirements." *Texas Medical Providers v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012). That means the United States must make: (1) a "clear showing" that it will likely succeed on the merits; (2) a "clear showing" that the United States will suffer irreparable harm absent a preliminary injunction; (3) a "clear showing" that the United States' injury outweighs any harm that will result if a preliminary injunction is granted; and (4) a "clear showing" that a preliminary injunction will serve the public interest. *See Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990).

The United States refuses to acknowledge the "clear showing" requirement, and it does not even assert that it has "clearly carried" its burden of persuasion on any of the four prongs of the preliminary-injunction test. But the law of the Fifth Circuit requires a "clear showing" from the movant on *each* of these four requirements. *See Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) ("This court has repeatedly cautioned that 'a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements.'" (citation and some internal quotation marks omitted)). The United States comes nowhere close to making a "clear showing" on any component of the preliminary-injunction test.

## I.   THE UNITED STATES HAS FAILED TO MAKE A "CLEAR SHOWING" OF LIKELY SUCCESS ON MERITS

The United States must make a "clear showing" that it will prevail on the merits of its claims. That requires it to make: (1) a "clear showing" that it has a cause of action;[1] and (2) a "clear showing" that it is entitled to the injunction that it seeks. The United States falls woefully short on each of these fronts.

---

1.   *See Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) ("Because a preliminary injunction 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief,' the plaintiffs must make a 'clear showing' that they have standing to maintain the preliminary injunction." (citation omitted)).

### A.    The United States Has Failed To Make A "Clear Showing" Of A Cause Of Action

The United States cannot bring this lawsuit unless it identifies a cause of action that authorizes it to sue Texas over SB 8. *See Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979) ("*cause of action* is a question of whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court"); David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41, 42 ("No one can sue . . . unless authorized by law to do so"). And there is no cause of action that allows the United States to sue a state over an allegedly unconstitutional (or allegedly preempted) abortion statute.

### 1.    There Is No "Clear Showing" Of A Cause Of Action That Authorizes The United States To Sue Texas For Enacting Or Enforcing An Allegedly Unconstitutional Abortion Statute

The United States spends most of its brief railing about how unconstitutional it thinks SB 8 is. *See* Pl.'s Br., ECF No. 8 at 1–16.[2] But none of that matters in the absence of a law that allows the United States to sue Texas over these supposed constitutional violations. Congress has, for example, enacted a statute that authorizes individuals to sue state officials (but not state governments)[3] that violate their constitutional rights. *See* 42 U.S.C. § 1983. But Congress has never authorized the federal government to sue a state whenever it violates the constitutional rights of its citizens. So the Fourteenth Amendment claims should be dismissed for the absence of a cause of action, as there is simply no law that allows the United States to sue a state for violating the supposed constitutional right to abortion.

The United States does not even attempt to identify a statute that authorizes it to sue Texas over SB 8. Instead, it asks this Court to invent a cause of action under the Take Care Clause, which would allow the federal government to sue a state that violates the executive branch's interpretation of the Constitution. *See* Pl.'s Br., ECF No. 8 at 25. The United States

---

2.  Many of the United States' factual assertions about SB 8 are false, which the intervenors intend to demonstrate at the preliminary-injunction hearing.

3.  *Will v. Michigan Dep't of Police*, 491 U.S. 58 (1989) (a state is not a "person" under 42 U.S.C. § 1983).

does not go so far as to claim that the Take Care Clause authorizes the executive to sue any state that enacts or enforces a law that the executive believes to be unconstitutional. *See id*. at 24–25. Instead, the United States asks this Court to create a cause of action that would allow federal lawsuits only in the "unique circumstances presented here"—where a state enacts an arguably unconstitutional law that cannot be challenged in a pre-enforcement lawsuit under 42 U.S.C. § 1983. *See id*. at 25–26.

The United States' argument is untenable for many reasons. First, the Fourteenth Amendment, like the Supremacy Clause, "is silent regarding who may enforce [it] in court, and in what circumstances they may do so." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 325 (2015). Instead, the Fourteenth Amendment empowers Congress to "enforce" its requirements "by appropriate legislation." U.S. Const. amend. XIV, § 5. That means it is up to Congress to decide whether and to what extent lawsuits should be authorized against individuals and entities that violate the Fourteenth Amendment—and neither the executive nor federal judiciary can create causes of action to enforce the Fourteenth Amendment when Congress has declined to do so. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014) ("[A] court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied"). The notion that the Take Care Clause allows the executive branch to unilaterally sue entities that violate the Fourteenth Amendment is incompatible with the Amendment's decision to vest the enforcement authority in Congress. *See United States v. City of Philadelphia*, 644 F.2d 187, 200 (3d Cir. 1980) (refusing to recognize an implied right of action for the federal government to sue over Fourteenth Amendment violations because "[s]ection 5 of the fourteenth amendment confers on Congress, not on the Executive or the Judiciary, the 'power to enforce, by appropriate legislation, the provisions of this article.'"). Likewise, the Take Care Clause does not grant *power* to the President to sue anyone who violates a federal law; it imposes a *duty* on him to "take Care that the Laws be faithfully executed." That means the President must execute the laws according to the enforcement procedures established in those laws; it does

not give the executive a power to create new mechanisms for enforcing federal legal obligations. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587–88 (1952).

Second, Congress has on occasion created causes of action that authorize the executive to sue state entities that violate the Fourteenth Amendment. *See, e.g.*, 42 U.S.C. § 2000b(a) (authorizing the attorney general to sue state entities that enforce racially segregated public facilities); 42 U.S.C. § 2000c-6(a) (authorizing the attorney general to sue state entities that maintain racially segregated schools). But Congress has conferred this power sparingly—and when it has conferred this power it carefully limits the circumstances in which a federal enforcement lawsuit may be brought. Consider 42 U.S.C. § 2000b(a), which authorizes the United States to sue state entities that enforce racially segregated public facilities:

> Whenever the Attorney General receives a complaint in writing signed by an individual to the effect that he is being deprived of or threatened with the loss of his right to the equal protection of the laws, on account of his race, color, religion, or national origin, by being denied equal utilization of any public facility which is owned, operated, or managed by or on behalf of any State or subdivision thereof, other than a public school or public college as defined in section 2000c of this title, and the Attorney General believes the complaint is meritorious and certifies that the signer or signers of such complaint are unable, in his judgment, to initiate and maintain appropriate legal proceedings for relief and that the institution of an action will materially further the orderly progress of desegregation in public facilities, the Attorney General is authorized to institute for or in the name of the United States a civil action in any appropriate district court of the United States against such parties and for such relief as may be appropriate, and such court shall have and shall exercise jurisdiction of proceedings instituted pursuant to this section.

42 U.S.C. § 2000b(a). Notice all the preconditions that must be satisfied before the Attorney General can sue under section 2000b(a): (1) The Attorney General must "receive a complaint in writing" from the individual who is suffering a violation of his Fourteenth Amendment rights; (2) The complaint must describe a specific type of Fourteenth Amendment violation, namely a deprivation or threatened deprivation of one's right of equal access to a "public facility" on account of "race, color, religion, or national origin"; (3) The Attorney General must conclude that the complaint is "meritorious"; (4) The Attorney General must "certify"

that the complainant is "unable" to sue for relief on his own; and (5) The Attorney General must "certify" that a lawsuit brought by the United States "will materially further the orderly progress of desegregation in public facilities." *Id*. Unless all five of these criteria are satisfied, the Attorney General cannot sue to enforce the Fourteenth Amendment under 42 U.S.C. § 2000b(a). 42 U.S.C. § 2000c-6(a) establishes similar preconditions for lawsuits brought by the United States to desegregate public schools. *See* 42 U.S.C. § 2000c-6(a).

These congressional enactments foreclose any possibility of an implied cause of action to sue a state over an alleged Fourteenth Amendment violation. Congress has specifically addressed the circumstances in which the Attorney General may sue in response to violations of the Fourteenth Amendment—and it has carefully limited the scope of these causes of action in a manner that precludes the Attorney General from suing a state over other alleged Fourteenth Amendment violations. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 74 (1996) ("Where Congress has created a remedial scheme for the enforcement of a particular federal right, we have, in suits against federal officers, refused to supplement that scheme with one created by the judiciary."); *Hernandez v. Mesa*, 140 S. Ct. 735, 747 (2020) (refusing to infer a cause of action for aliens abroad to sue for alleged violations of their constitutional rights given that they were expressly excluded section 1983's cause of action, because "it would be anomalous to impute a judicially implied cause of action beyond the bounds Congress has delineated for a comparable express cause of action." (cleaned up)). The United States does not acknowledge 42 U.S.C. § 2000b(a) or 42 U.S.C. § 2000c-6(a) in its brief, and it presents no argument for how this Court could recognize a cause of action to sue a state for violating the Fourteenth Amendment in the teeth of these statutory enactments.

Third, the notion of an implied cause of action to enforce the Fourteenth Amendment was emphatically rejected in *United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1980). *See id*. at 201 ("[T]he fourteenth amendment does not implicitly authorize the United States to sue to enjoin violations of its substantive prohibitions."). The United States does not contend that *City of Philadelphia* was wrongly decided. Instead, the United States

urges this Court to carve a one-off exception to *City of Philadelphia*'s holding, which would authorize federal lawsuits to enforce the Fourteenth Amendment only when a state has "designed its laws" to prevent individuals from bringing pre-enforcement lawsuits under 42 U.S.C. § 1983. *See* Pl.'s Br., ECF No. 8 at 26. This argument is doubly flawed.

To begin, this Court has no authority to patch up alleged holes in 42 U.S.C. § 1983 by allowing the United States to sue Texas over its alleged Fourteenth Amendment violation. If a state enacts a law that is not subject to pre-enforcement review under 42 U.S.C. § 1983, then the solution is to ask Congress to amend section 1983 or create a new cause of action that would allow the United States (or some other plaintiff) to obtain pre-enforcement relief against SB 8. It is not to ask the judiciary to invent a new cause of action that "fixes" these perceived shortcomings with 42 U.S.C. § 1983. The Supreme Court no longer allows federal courts to invent causes of action that Congress has not provided. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017) ("If the statute does not itself so provide, a private cause of action will not be created through judicial mandate."); *Alexander v. Sandoval*, 532 U.S. 275, 286–287 (2001) ("Without [statutory intent], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."); *id*. at 287 ("Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." (citation and internal quotation marks omitted)). And cases in which courts have "inferred" causes of action are now regarded as relics of a bygone era. *See Hernandez*, 140 S. Ct. at 741 ("*Bivens*, *Davis*, and *Carlson* were the products of an era when the Court routinely inferred 'causes of action' that were 'not explicit' in the text of the provision that was allegedly violated."). The United States does not acknowledge any of this authority, and it makes no attempt to explain how this Court can create recognize an "implied" right of action when the Supreme Court has been saying for decades that federal courts must stop inferring new causes of action from statutes or constitutional provisions.

In addition, it is entirely commonplace for laws to "escape" pre-enforcement review under 42 U.S.C. § 1983. A state's defamation laws, for example, are enforced entirely through private civil lawsuits, and there is no way for a publisher to sue the state or its officers under 42 U.S.C. § 1983 if it believes that the defamation laws violate the First Amendment. The New York Times was unable bring a pre-enforcement challenge to Alabama's defamation laws, and it had to wait to be sued before raising its First Amendment claims in a defensive posture. *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). Many other state laws are enforced solely through private civil lawsuits, and these statutes are likewise immune from pre-enforcement challenge. *See, e.g., Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015). The United States' theory would allow the executive to sue a state whenever it enacts a law or establishes a common-law rule that is enforced through private litigation, an astonishing result. Does the United States actually believe that the federal government could have sued Alabama (or any other state) over its defamation laws?

Finally, the United States cites no authority that allows the federal government to sue a state over an alleged violation of the Fourteenth Amendment. The closest it comes is *United States v. City of Jackson*, 318 F.2d 1 (5th Cir. 1963), but that case allowed the United States to sue a city only because its policy violated the Commerce Clause in addition to the Fourteenth Amendment. *See id*. at 14. And *Jackson* specifically held that it was the Commerce Clause—and not the Fourteenth Amendment—that provided the cause of action for the United States to sue in that case:

> When the action of a State violative of the Fourteenth Amendment conflicts with the Commerce Clause and casts more than a shadow on the Supremacy Clause, the United States has a duty to protect the "interests of all." . . . The issue here is framed by the Commerce Clause. *Under that clause* there is authority for the United States to sue without specific congressional authorization.

*See id*. at 14 (emphasis added). And even if *Jackson* had held that a mere violation of the Fourteenth Amendment could authorize a federal lawsuit, that holding would not be sustainable after the enactment of 42 U.S.C. § 2000b(a) and 42 U.S.C. § 2000c-6(a), which

carefully spell out the limited circumstances in which the United States may sue to enforce the requirements of the Fourteenth Amendment.

This is more than enough to show that the United States has failed to make a "clear showing" of a cause of action that would allow it to sue Texas over its alleged violations of the Fourteenth Amendment. The novelty of the United States' proposed cause of action is reason alone to reject it at the preliminary-injunction stage.

### 2. There Is No "Clear Showing" Of A Cause Of Action That Authorizes The United States To Sue Texas For Enacting Or Enforcing An Allegedly Preempted Abortion Statute

The United States also complains that that SB 8 is partially preempted by federal law. *See* Pl.'s Br., ECF No. 8 at 16–22. But these arguments cannot be entertained unless a cause of action authorizes the United States to sue Texas over this supposedly preempted statute. And the United States cannot derive such a cause of action from any statute or constitutional provision.

The Supreme Court has already rejected the notion that the Supremacy Clause can provide an implied right of action to sue over allegedly preempted laws. *See Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326–27 (2015). And none of the statutes or regulations that allegedly preempt SB 8 purport to establish a cause of action that would allow the United States to sue a state that enacts or enforces a conflicting law. *See Alexander*, 532 U.S. at 287 (prohibiting federal courts from "[r]aising up causes of action where a statute has not created them"). So the United States has nothing from which it can derive as a cause of action, as neither the relevant statutes nor the relevant constitutional provision purports to authorize lawsuits against states that enact or enforce allegedly preempted laws.

The United States tries to get around this problem by claiming that it can sue a state or anyone else for equitable relief whenever it does so to protect "federal interests" (whatever that means)—and that it can bring such lawsuits regardless of whether the underlying law establishes a cause of action. *See* Pl.'s Br., ECF No. 8 at 22 ("It is well established that the

United States may seek equitable relief to protect federal interests"). The United States begins by observing that the Supreme Court has occasionally allowed the United States to seek equitable relief to vindicate "various federal interests," even in the absence of a statutory cause of action. *See id*. at 23 (listing the "federal interests" at issue in those cases). It then infers from those cases that the federal government may sue and seek equitable relief whenever it purports to be vindicating *any* "federal interest." *See id*. at 22–24. But that is a non sequitur. That the Supreme Court has allowed the United States to sue to vindicate *some* federal interests does not mean that the United States can seek equitable relief whenever it asserts that *any* "federal interest" is at stake. More importantly, the United States' position would produce a radical expansion of implied rights of action, because it is always possible for the executive branch to assert a "federal interest" of some sort when it wants to sue a state (or an individual) for engaging in conduct that it dislikes. *See, e.g.*, Pl.'s Br., ECF No. 8 at 24 (asserting that SB 8 "implicates *numerous* federal interests" (emphasis added)). And there will always some "federal interest" at stake when the executive asserts a preemption claim against a state or its officials. So the United States' position will create an implied cause of action in *any* situation in which the executive alleges that a state law or policy is preempted by federal law—an outcome that turns *Armstrong* on its head and defies the Supreme Court's warnings against the creation of new implied rights of action.

## B.   The United States Has Failed To Make A "Clear Showing" That It Is Entitled To An Injunction That Prevents Texas From Enforcing Any Provision Of SB 8 In Any Situation

The United States is demanding a preliminary injunction that blocks the state of Texas from enforcing *any* provision of SB 8, including provisions of SB 8 that it does not even allege to be unconstitutional. *See* Proposed Order, ECF No. 8-1 at 1–2 (requesting an injunction that would prevent Texas "from enforcing S.B.8"). It is also seeking to enjoin the state judiciary from entertaining *any* civil-enforcement lawsuits filed under SB 8—even in situations in which the civil-enforcement lawsuit is undeniably constitutional and consistent

with federal law. *See id.* at 1–2. But this Court has no authority to enjoin Texas from enforc-
ing the indisputably constitutional applications of SB 8. *See Alabama State Federation of La-
bor, Local Union No. 103 v. McAdory*, 325 U.S. 450, 465 (1945) ("When a statute is assailed
as unconstitutional we are bound to assume the existence of any state of facts which would
sustain the statute in whole or in part."); *Planned Parenthood of Greater Texas Surgical Health
Services v. Abbott*, 748 F.3d 583, 589 (5th Cir. 2014) ("Even when considering facial invali-
dation of a state statute, the court must preserve the valid scope of the provision to the
greatest extent possible."). And that is especially true when SB 8 contains emphatic severa-
bility requirements that compel reviewing courts to sever and preserve every constitutional
provision (and every constitutional application) of the law. *See* Senate Bill 8, 87th Leg., §§ 3,
5, 10; *see also* Tex. Health & Safety Code § 171.212(a) ("Every provision, section, subsec-
tion, sentence, clause, phrase, or word in this chapter, and every application of the provisions
in this chapter, are severable from each other."); *Planned Parenthood of Greater Texas Surgical
Health Services v. Abbott*, 748 F.3d 583, 589 (5th Cir. 2014) ("Federal courts are bound to
apply state law severability provisions.").

Many of the civil-enforcement lawsuits authorized by Senate Bill 8 are undeniably con-
stitutional under existing Supreme Court precedent. These include:

> Lawsuits brought against those who perform (or assist) non-physician abor-
> tions;[4]

> Lawsuits brought against those who perform (or assist) post-viability abortions
> that are not necessary to save the life or health of the mother;[5]

> Lawsuits brought against those who use taxpayer money to pay for post-heart-
> beat abortions;[6]

---

4.  *See Roe v. Wade*, 410 U.S. 113, 165 (1973); *Connecticut v. Menillo*, 423 U.S. 9, 9–10
    (1975); *Mazurek v. Armstrong*, 520 U.S. 968, 973 (1997).
5.  *See Roe*, 410 U.S. at 164–65;
6.  *See Harris v. McRae*, 448 U.S. 297 (1980).

Lawsuits brought against those who covertly slip abortion drugs into a pregnant woman's food or drink.[7]

In addition, each of the intervenors has stated that they intend to bring civil-enforcement lawsuits only in response to violations of SB 8 that clearly fall outside the constitutional protections of *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 874 (1992). Mr. Graham, for example, intends to sue only employers and insurance companies that provide or arrange for coverage of abortions that violate Senate Bill 8. *See* Graham Decl., ECF No. 28-1 at ¶ 9. Mr. Graham also intends to sue the city of Austin if it uses taxpayer money to subsidize the provision of post-heartbeat abortions performed in Austin, as it was doing before the Heartbeat Act took effect. *See id.* at ¶ 9; *see also Zimmerman v. City of Austin*, 620 S.W.3d 473, 482 (Tex. App.—El Paso 2021, pet. filed). Mr. Tuley intends to sue only individuals or entities that perform or assist abortions that are clearly unprotected under existing Supreme Court doctrine, which include: (a) non-physician abortions; (b) self-administered abortions; and (c) post-viability abortions that are not necessary to preserve the life or health on the mother. *See* Tuley Decl., ECF No. 28-2 at ¶ 9. And Ms. Sharp intends to sue only abortion funds who pay for post-heartbeat abortions performed in Texas. *See* Sharp Decl., ECF No. 28-3 at ¶ 9. All of these lawsuits authorized by Senate Bill 8 are indisputably constitutional under *Roe* and *Casey*, and this Court has no authority to enjoin the defendants from filing these types of cases. Nor can it prevent the Texas judiciary from considering civil-enforcement lawsuits of this sort.

The United States somehow thinks that it can obtain an across-the-board injunction against the enforcement of SB 8 in *any* circumstance—even though Senate Bill 8 has many constitutional applications, and even though the statute contains emphatic severability requirements that compel reviewing courts to sever and preserve *every* constitutional application of the law. *See* Senate Bill 8, 87th Leg., §§ 3, 5, 10. But the United States has decided

---

7.  *See* Alexandra Hutzler, *Former Trump Aide Jason Miller Accused of Secretly Administering Abortion Pill*, Newsweek (Sept. 18, 2018), https://bit.ly/3stDRx2.

that it will simply ignore these severability requirements, as well as the fact that many of the civil-enforcement lawsuits authorized by Senate Bill 8 are indisputably constitutional, apparently in the hope that its ostrich-like pose will induce this Court to ignore the severability requirements as well and give the United States the patently unlawful remedy that it is seeking. But ignoring the severability requirements is not an option,[8] and a court is not permitted to categorically enjoin the enforcement of a statute that has indisputably constitutional applications. *See McAdory*, 325 U.S. at 465; *Connecticut v. Menillo*, 423 U.S. 9, 9–10 (1975); *Voting for America, Inc. v. Steen*, 732 F.3d 382, 398 (5th Cir. 2013).

Worse, the United States is attacking *only* the provisions in section 3 of SB 8, which prohibit abortions after fetal heartbeat and establish a private civil-enforcement mechanism. The United States does not even attempt to argue that any provision in sections 1 through 2 or sections 4 through 12 violates the Constitution or is preempted by federal law. Yet the United States is asking this Court to enjoin Texas from enforcing *any* provision of SB 8, including the provisions that the United States is not even challenging as unconstitutional or preempted. That is patently unlawful when the SB 8's severability clauses require this Court to sever and preserve every constitutional provision (and every constitutional application) of the statute. *See* Senate Bill 8, 87th Leg., §§ 3, 5, 10; Tex. Health & Safety Code § 171.212; *Califano* v. *Yamasaki*, 442 U. S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs"). And it doubly unlawful because the United States lacks Article III standing to seek injunctive relief that extends beyond the provisions or applications of SB 8 that are inflicting injury on

---

8.   *See Leavitt v. Jane L.*, 518 U.S. 137, 138 (1996) (per curiam) (rebuking the Tenth Circuit for refusing to treat as dispositive the statute's "explicit stat[ement]" of legislative intent regarding severability in a state-law abortion statute); *Planned Parenthood of Greater Texas Surgical Health Services v. Abbott*, 748 F.3d 583, 589 (5th Cir. 2014) ("Federal courts are bound to apply state law severability provisions."); *City of Houston v. Bates,* 406 S.W.3d 539, 549 (Tex. 2013) ("When an ordinance contains an express severability clause, the severability clause prevails when interpreting the ordinance.").

the United States. *See In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019) ("[P]laintiffs must establish standing for each and every provision they challenge." (citing authorities)).[9]

The United States is responsible for ensuring that its requested injunction is limited to the allegedly unconstitutional or preempted applications of Senate Bill 8. But the United States has decided to insist on an across-the-board injunction that prevents *any* enforcement of *any* provision in Senate Bill 8, despite the patent illegality of this remedy. The Court should deny the preliminary injunction because it cannot award an injunction of that scope in light of the clear and emphatic severability requirements in SB 8.

### C. The United States Has Failed To Make A "Clear Showing" That This Court Can Enjoin Private Individuals That Might Sue Under SB 8

The United States is asking this Court to enjoin not only the State of Texas, but every private individual who might initiate enforcement proceedings under SB 8. *See* Proposed Order, ECF No. 8-1 at 1–2. But the State of Texas is the only named defendant, and non-parties to a lawsuit cannot be enjoined absent notice and an opportunity to be heard. *See Hansberry v. Lee*, 311 U.S. 32, 40 (1940) ("[O]ne is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112 (1969) ("It was error to enter the injunction against Hazeltine . . . in a proceeding to which Hazeltine was [not] a party."); *Osborn v. Bank of United States*, 22 U.S. 738, 802 (1824) ("An injunction binds no person but the parties to the suit.").

The United States claims that these non-parties can be bound under Rule 65(d)(2)(C) as "persons . . . in active concert or participation" with the State. *See* Pl.'s Br., ECF No. 8, at 30. That is preposterous. SB 8 prohibits the State and its officials from enforcing the ban on post-heartbeat abortions,[10] so it is both unlawful and impossible for a would-be litigant to

---

9.  The United States does not even attempt to explain how it has standing to challenge any provision of Senate Bill 8 apart from section 3.

10. *See* Tex. Health & Safety Code § 171.207.

coordinate with the State when bringing private civil-enforcement lawsuits. In addition, a non-party cannot be deemed a person "in active concert or participation" with a litigant unless that non-party is given notice and an opportunity to contest that designation. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112 (1969) ("Although injunctions issued by federal courts bind not only the parties defendant in a suit, but also those persons 'in active concert or participation with them who receive actual notice of the order by personal service or otherwise,' Fed. Rule Civ. Proc. 65(d), a nonparty with notice cannot be held in contempt until shown to be in concert or participation. It was error to enter the injunction against Hazeltine, without having made this determination in a proceeding to which Hazeltine was a party."); *Lake Shore Asset Management Ltd. v. Commodity Futures Trading Commission*, 511 F.3d 762, 767 (7th Cir. 2007) (Easterbrook, J.) ("*[W]hether* a particular person or firm is among the 'parties' officers, agents, servants, employees, and attorneys; [or] other persons in active concert or participation with' them is a decision that may be made only after the person in question is given notice and an opportunity to be heard."). The government's interpretation of Rule 65, which would allow every person in the world to be bound by an injunction directed at the state of Texas, would violate the Due Process Clause and the Rules Enabling Act, by abridging a non-party's substantive right to notice and an opportunity to be heard before being bound by a court's injunction.

### D. The United States Has Failed To Make A "Clear Showing" That A Federal Court Can Enjoin A State's Judiciary From Considering Lawsuits That Have Yet To Be Filed

The United States is asking this Court to enjoin the Texas judiciary from even *considering* lawsuits that might be filed under SB 8. *See* Pl.'s Br., ECF No. 8 at 31–32; Proposed Order, ECF No. 8-1 at 1–2. There is no authority for a federal court to issue an injunction of that sort. An injunction may be used only to restrain unlawful activity, and a state court does not do anything unlawful or constitutional by presiding over a lawsuit between private parties— even when the lawsuit is based on a patently unconstitutional statute. A state court does not

violate federal law unless and until it enters an ruling that violates someone's federally protected rights.

Federal courts must presume that state courts will respect federal rights when deciding cases. *See Steffel v. Thompson*, 415 U.S. 452, 460–61 (1974) ("State courts have the solemn responsibility, equally with the federal courts 'to guard, enforce, and protect every right granted or secured by the constitution of the United States. . . .'" (citation omitted); *Middlesex County Ethics Commission v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) ("Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights."). The injunction proposed by the United States presumes that the state courts will flout federal law, and that they must therefore be enjoined from even considering lawsuits that might be filed under SB 8. That stance is incompatible with the presumption of good faith that federal courts must extend to the state judiciary.

The United States fails to cite any case in which a federal court has enjoined a state's judiciary from considering a lawsuit that has yet to be filed in its courts. And to our knowledge no such injunction has ever been issued in the 245-year history of the United States. The United States' proposed injunction flouts *Ex parte Young*, 209 U.S. 123 (1908), which declares that "an injunction against a state court would be a violation of the whole scheme of our Government," *id.* at 163, as well as the Fifth Circuit's binding pronouncement in *Whole Woman's Health v. Jackson*, --- F.4th ----, 2021 WL 4128951 (5th Cir. Sept. 10, 2021), which endorses this passage from *Young*, *id.* at *5. And there has certainly not been a "clear showing" that an injunction of this type is permissible given *Young* and the government's own concession that injunctions against judges should be "'reserved for really extraordinary causes.'" Pl.'s Br., ECF No. 8, at 32 (quoting *Pulliam v. Allen*, 466 U.S. 522, 538 (1984)).

**E.      The United States Has Failed To Make A "Clear Showing" That Any Federal Law Preempts SB 8**

The United States claims that SB 8 "purports to prohibit" federal personnel and contractors from carrying out their supposed "federal obligations" to assist others in obtaining abortions. *See* Pls.' Br., ECF No. 8, at 17. But SB 8 does no such thing. SB 8 merely limits the availability of post-heartbeat abortions in Texas. Any "federal obligations" to arrange for post-heartbeat abortions can be fulfilled by having those abortions performed in other states, as nothing in SB 8 prevents anyone from obtaining or assisting post-heartbeat abortions that occur outside Texas. It remains possible to comply with both SB 8 and these supposed federal laws, so there is no basis for finding preemption. *See Kansas v. Garcia*, 140 S. Ct. 791, 806 (2020). And there is certainly no "clear showing" of preemption based on these federal laws and regulations.

The United States falsely claims that 10 U.S.C. § 1093 requires military hospitals to provide post-heartbeat abortions in cases of rape or incest. *See* Pls.' Br., ECF No. 8, at 19. That statute is a *prohibition* on the performance or funding of abortions "except where" the pregnancy resulted from rape or incest or where the life of the mother is endangered.[11] Exempting a category of abortions from a statutory prohibition is a far cry from a statutory requirement to perform those abortions at military hospitals. There is no conflict whatsoever between SB 8 and 10 U.S.C. § 1093. The same is true of the statutes that prohibit federal employee health-benefit plans from covering abortions, except in cases of rape or incest or where the mother's life is in danger. *See* Consolidated Appropriations Act, 2021, Pub. L.

---

11. *See* 10 U.S.C. § 1093 ("**(a) RESTRICTION ON USE OF FUNDS.**—Funds available to the Department of Defense may not be used to perform abortions except where the life of the mother would be endangered if the fetus were carried to term or in a case in which the pregnancy is the result of an act of rape or incest. **(b) RESTRICTION ON USE OF FACILITIES.**— No medical treatment facility or other facility of the Department of Defense may be used to perform an abortion except where the life of the mother would be endangered if the fetus were carried to term or in a case in which the pregnancy is the result of an act of rape or incest.").

116-260, 134 Stat. 1182 §§ 613–14 (Dec. 27, 2020). Those statutes do not require coverage of abortions that are exempted from the statutory prohibition,[12] so there is no conceivable conflict between these statutes and SB 8—let alone a "clear showing" of such a conflict.

Finally, the United States' "preemption" and "intergovernmental immunity" claims can warrant only as-applied relief against the enforcement of SB 8. Any preliminary injunction based on these preemption or intergovernmental-immunity arguments must be limited to the circumstances in which the enforcement of SB 8 will allegedly conflict with federal law, especially given the emphatic severability requirements that appear throughout SB 8. *See* Senate Bill 8, 87th Leg., §§ 3, 5, 10; Tex. Health & Safety Code § 171.212(a). The United States does not even attempt to explain how its preemption or intergovernmental-immunity objections could support an injunction that bans Texas from enforcing SB 8 in any situation. The United States apparently subscribes to a reverse-*Salerno* principle that applies only to abortion statutes,[13] where "facial invalidation" is required if there is even a single unconstitutional or invalid application the law, and where severability clauses are to be disregarded whenever they appear in abortion statutes. That stance is nothing short of lawlessness. The United States must justify its request for an across-the-board injunction and explain how this Court can provide such a remedy; it cannot pretend that the statute is non-severable or act as though this Court can enjoin Texas from enforcing SB 8 in situations that do not conflict with any federal law.

---

12. *See* Consolidated Appropriations Act, 2021, Pub. L. 116-260, 134 Stat. 1182 §§ 613–14 (Dec. 27, 2020) ("Sec. 613. No funds appropriated by this Act shall be available to pay for an abortion, or the administrative expenses in connection with any health plan under the Federal employees health benefits program which provides any benefits or coverage for abortions. Sec. 614. The provision of section 613 shall not apply where the life of the mother would be endangered if the fetus were carried to term, or the pregnancy is the result of an act of rape or incest.").

13. *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").

F.      **The United States Has Failed To Make A "Clear Showing" That The Law Has The Sweeping Effects It Alleges.**

The entire premise of the United States' ill-founded lawsuit is that SB 8 is a "near-total" ban of abortion that justifies the extraordinary intervention they seek from this Court. *See* Pl.'s Br., ECF No. 8 at 2. The United States spends a dozen pages, or one-third of its entire brief, relying on hearsay declarations from abortion doctors and clinics to establish that fear of numerous frivolous lawsuits brought under SB 8 has chilled abortion providers from "offering virtually any abortions," which they claim "likely amounts to between 85% and 95% of all abortions previously provided." Pl.'s Br., ECF No. 8 at 5, 7. But despite the law having been in effect for nearly a month, the United States offers no concrete evidence to back up these dire claims. What evidence there is suggests the opposite, as Intervenor-Defendants intend to establish through testimony and evidence at the preliminary-injunction hearing.

As discussed below, the legal basis for the United States' case is weak at best and does not meet the "clear showing" standard necessary for a preliminary injunction. The United States' unsubstantiated claims that the sky is falling cannot compensate for that weakness.

## II.   THE UNITED STATES HAS FAILED TO MAKE A CLEAR SHOWING THAT A PRELIMINARY INJUNCTION WILL PREVENT IRREPARABLE HARM

The United States claims that it is suffering irreparable harm from Senate Bill 8. But that is not the showing required to obtain a preliminary injunction. The United States must show that a preliminary injunction from this Court will alleviate or eliminate those harms. *See Roho*, 902 F.2d at 358 (movant must demonstrate, "by a clear showing: . . . (2) a substantial threat of irreparable harm *if the injunction is not granted*" (emphasis added)). And the United States has not made any assertion or showing that a preliminary injunction will restore access to post-heartbeat abortions in Texas.

The problem for the United States is that a preliminary injunction from this Court will not revoke or in any way cancel the statute, which will remain in effect no matter what this Court does. An injunction from this Court will merely prevent Texas from *enforcing* SB 8 while the injunction remains in existence. *See Okpalobi v. Foster*, 244 F.3d 405, 426 n.34 (5th

Cir. 2001) (en banc) ("An injunction enjoins a defendant, not a statute."). The statute will remain in effect even if this Court issues the preliminary injunction and gives the United States everything that it asks for, and the *in terrorem* effects of SB 8 will continue to prevent abortion providers from performing post-heartbeat abortions in Texas.

First. A preliminary injunction against the state of Texas will *not* prevent abortion providers (and their enablers) from being sued in federal district court under the diversity jurisdiction. Senate Bill 8 allows "any person" to sue, regardless of whether they live in Texas, and any citizen of another state can sue a person who violates SB 8 in federal court if they can establish Article III standing. Any out-of-state couple that is waiting to adopt from a Texas-based adoption agency, for example, can assert "injury in fact" from the negative effects that abortion has on adoption markets,[14] and they will clear the $75,000 amount-in-controversy requirement if the defendant has performed (or assisted) more than seven post-heartbeat abortions. An injunction from this Court will have no effect on those federal-court proceedings. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."); Tex. Health & Safety Code § 171.208(e)(5) (non-mutual issue or claim preclusion no defense).

Second. A preliminary injunction will *not* protect abortion providers from being sued over post-heartbeat abortions that they perform if the injunction is vacated on appeal. *See* Tex. Health & Safety Code § 171.208(e)(3)–(4). An injunction from this Court does not operate as a permanent shield from civil liability, and it cannot protect abortion providers if it is vacated by the Fifth Circuit or the Supreme Court. *See, e.g.*, *Edgar v. MITE Corp.*, 457 U.S. 624, 648–49 (1982) (Stevens, J., concurring). No rational abortion provider would subject itself to the risk of civil liability to the tune of $10,000 per illegal abortion, especially

---

14. *See* Richard A. Posner, *The Regulation of the Market in Adoptions*, 67 B.U. L. Rev. 59, 63 (1987) ("The supply of babies for adoption has been dramatically affected by the increase in abortions since the Supreme Court's decision in *Roe v. Wade*.").

when the statute of limitations is four years,[15] and especially at a time when the Supreme Court is considering whether to overrule *Roe v. Wade. See Dobbs v. Jackson Women's Health Organization*, No. 19-1392.

The burden is on the United States to show that a preliminary injunction will cause abortion providers to resume post-heartbeat abortions in Texas—and the United States must make a "clear showing" that this will occur. *See Voting for America*, 732 F.3d at 386. Yet the United States has produced no evidence that *any* abortion provider will resume post-heartbeat abortions in response to a preliminary injunction from this Court. Amy Hagstrom Miller's declaration (ECF No. 8-5) never says that Whole Woman's Health will perform post-heartbeat abortions if this Court issues a preliminary injunction, and Melaney Linton's declaration (ECF No. 8-6) makes no such claim with respect to Planned Parenthood. So there is no evidence that even asserts (let alone proves) that a preliminary injunction from this Court will in any way alleviate the "harms" of which the United States complains.

## III. The United States Has Failed To Make A "Clear Showing" That The Balance Of Equities Weighs In Its Favor

The United States has failed to show that a preliminary injunction will restore access to post-heartbeat abortions in Texas, *see supra* Section II, so it has not made a "clear showing" that the balance of equities weighs in favor of a preliminary injunction.

## IV. The United States Has Failed To Make A "Clear Showing" That The Public Interest Favors A Preliminary Injunction That Prevents Texas From Enforcing SB 8 In Any Situation

It is undisputed that at least some provisions and applications of SB 8 are constitutional.[16] Yet the United States demands a total, across-the-board injunction that would prevent Texas from enforcing SB 8 in any situation. An injunction that prevents the enforcement of a statute's constitutional provisions and applications is by definition contrary to the public interest. *See Berman v. Parker*, 348 U.S. 26, 32 (1954) ("Subject to specific constitutional limitations,

---

15. *See* Tex. Health & Safety Code § 171.208(d).
16. *See supra* Section I.B.

when the legislature has spoken, the public interest has been declared in terms well-nigh conclusive. In such cases the legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation, whether it be Congress legislating concerning the District of Columbia . . . or the States legislating concerning local affairs.").

## CONCLUSION

The motion for preliminary injunction should be denied.

Respectfully submitted.

 /s/ Jonathan F. Mitchell

Heather Gebelin Hacker
Texas Bar No. 24103325
Andrew B. Stephens
Texas Bar No. 24079396
Hacker Stephens LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022 (phone)
heather@hackerstephens.com
andrew@hackerstephens.com

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

(additional counsel on following page)
Gene P. Hamilton*
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721 (phone)
gene.hamilton@aflegal.org

* admitted *pro hac vice*

*Counsel for Intervenors Erick Graham,
Jeff Tuley, and Mistie Sharp*

Dated: September 29, 2021

## CERTIFICATE OF SERVICE

I certify that on September 29, 2021, I served this document through CM/ECF upon all counsel of record in this case.

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
*Counsel for Intervenors Erick Graham,*
*Jeff Tuley, and Mistie Sharp*