**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:21-cv-00796-RP |
| | § | |
| THE STATE OF TEXAS, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Table of Contents ............................................................................................................ii

Index of Authorities .......................................................................................................iii

Introduction.....................................................................................................................1

Standard............................................................................................................................2

Argument ..........................................................................................................................2

    I.  There Is No Justiciable Controversy between the Federal Government and Texas ................2

    II.  The Federal Government Cannot Obtain Relief against State Courts, Much Less Private Individuals .........................................................................................................................4

        A.  This Court Cannot Enjoin Private Non-Parties ...........................................................5

        B.  This Court Cannot Enjoin Texas Courts.....................................................................8

    III. The Federal Government Is Not Injured ....................................................................15

        A.  The Federal Government Lacks *Parens Patriae* Standing.......................................15

        B.  The Federal Government Lacks a Sovereign Injury ...............................................17

    IV. The Federal Government Lacks a Cause of Action....................................................19

        A.  There Is No Constitutional or Statutory Cause of Action .....................................20

        B.  There Is No Common-Law or Equitable Cause of Action ..................................21

        C.  Congress Has Displaced Any Cause of Action........................................................27

Conclusion ......................................................................................................................30

INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Adams & Boyle, P.C. v. Slatery,*
  494 F. Supp. 3d 488 (M.D. Tenn. 2020) ............................................................................17

*Alemite Mfg. Corp. v. Staff,*
  42 F.2d 832 (2d Cir. 1930) (Hand, J.) ......................................................................... 6, 7, 8

*Alexander v. Sandoval,*
  532 U.S. 275 (2001) ................................................................................................... 27, 29

*Alexander v. Trump,*
  753 F. App'x 201 (5th Cir. 2018) (per curiam) .................................................................20

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,*
  458 U.S. 592 (1982) ............................................................................................. 15, 16, 17

*Ali v. Rumsfeld,*
  649 F.3d 762 (D.C. Cir. 2011) ..........................................................................................21

*Armstrong v. Exceptional Child Ctr., Inc.,*
  575 U.S. 320 (2015) ................................................................................................... 20, 24

*Arpin v. Santa Clara Valley Transp. Agency,*
  261 F.3d 912 (9th Cir. 2001) ............................................................................................20

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...........................................................................................................2

*Audler v. CBC Innovis Inc.,*
  519 F.3d 239 (5th Cir. 2008) ..............................................................................................6

*Bauer v. Texas,*
  341 F.3d 352 (5th Cir. 2003) ...........................................................................................8, 9

*Bethell v. Peace,*
  441 F.2d 495 (5th Cir. 1971) ..............................................................................................5

*Bond v. United States,*
  572 U.S. 884 (2014) .........................................................................................................16

*Bush v. Lucas,*
  462 U.S. 367 (1983) .........................................................................................................24

*Cavett v. Ellis,*
  578 F.2d 567 (5th Cir. 1978)......................................................................................12

*Cell Sci. Sys. Corp. v. Louisiana Health Serv.,*
  804 F. App'x 260 (5th Cir. 2020) (per curiam) ............................................................2

*Chase Nat. Bank v. City of Norwalk,*
  291 U.S. 431 (1934)....................................................................................................8

*City of Georgetown v. Alexandria Canal Co.,*
  37 U.S. 91 (1838)......................................................................................................25

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013)....................................................................................................9

*Clark v. State of Wash.,*
  366 F.2d 678 (9th Cir. 1966).....................................................................................13

*Clark v. Valeo,*
  559 F.2d 642 (D.C. Cir. 1977) (Tamm, J., concurring)................................................18

*Committee on the Judiciary of the U.S. House of Representatives v. McGahn,*
  973 F.3d 121 (D.C. Cir. Aug. 31, 2010), *vacated*, No. 19-5331 (D.C. Cir. July 13,
  2021)........................................................................................................................23

*Cooper Indus., Inc. v. Aviall Servs., Inc.,*
  543 U.S. 157 (2004)..................................................................................................27

*Cranor v. 5 Star Nutrition, L.L.C.,*
  998 F.3d 686 (5th Cir. 2021).....................................................................................26

*Davis v. Passman,*
  442 U.S. 228 (1979)..................................................................................................20

*In re Debs,*
  158 U.S. 564 (1895)..............................................................................................*passim*

*Denver & R.G.R. Co. v. United States,*
  241 F. 614 (8th Cir. 1917).........................................................................................20

*Detroit Edison Co. v. NLRB,*
  440 U.S. 301 (1979)....................................................................................................6

*Digital Recognition Network, Inc. v. Hutchinson,*
  803 F.3d 952 (8th Cir. 2015).....................................................................................23

*Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,*
  609 F.2d 1083 (4th Cir. 1979) ....................................................................................8

*Flagg Bros., Inc. v. Brooks,*
    436 U.S. 149 (1978) ..................................................................................................... 8

*Freedom From Religion Found., Inc. v. Mack,*
    No. 21-20279, 2021 WL 2887861 (5th Cir. July 9, 2021) ....................................... 24, 25

*In re Gee,*
    941 F.3d 153 (5th Cir. 2019) ...................................................................................... 13

*Gibbons v. Ogden,*
    22 U.S. (9 Wheat.) 1 (1824) ........................................................................................ 16

*Gras v. Stevens,*
    415 F. Supp. 1148 (S.D.N.Y. 1976) (Friendly, J.) ................................................... 8, 10

*Green v. Mansour,*
    474 U.S. 64 (1985) ..................................................................................................... 24

*Green Valley Special Util. Dist. v. City of Schertz,*
    969 F.3d 460 (5th Cir. 2020) (Oldham, J., concurring) ........................................... 21, 29

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.,*
    527 U.S. 308 (1999) ........................................................................................... 12, 13, 23

*Haggard v. State of Tenn.,*
    421 F.2d 1384 (6th Cir. 1970) .................................................................................... 13

*Hearth, Inc. v. Dep't of Pub. Welfare,*
    617 F.2d 381 (5th Cir. 1980) (per curiam) ................................................................ 20

*Henry v. First Nat'l Bank of Clarksdale,*
    444 F.2d 1300 (5th Cir. 1971) .............................................................................. 8, 9, 14

*Hernandez v. Mesa,*
    140 S. Ct. 735 (2020) .............................................................................................. 20, 29

*Hollingsworth v. Perry,*
    570 U.S. 693 (2013) ..................................................................................................... 6

*Hu v. Huey,*
    325 F. App'x 436 (7th Cir. 2009) (per curiam) ........................................................ 8

*Int'l Controls & Measurements Corp. v. Watsco, Inc.,*
    853 F. Supp. 585 (N.D.N.Y. 1994) ............................................................................ 7

*Jinks v. Richland County,*
    538 U.S. 456 (2003) ..................................................................................................... 19

*Jones v. Wells Fargo Bank, N.A.*,
   No. 5-14-cv-943, 2015 WL 12734177 (W.D. Tex. Jan. 21, 2015)....................................21

*Justice Network Inc. v. Craighead County*,
   931 F.3d 753 (8th Cir. 2019).........................................................................................10

*In re Justices of Supreme Court of Puerto Rico*,
   695 F.2d 17 (1st Cir. 1982) (Breyer, J.) ..........................................................................9

*Lake Shore Asset Mgmt. Ltd. v. Commodity Futures Trading Comm'n*,
   511 F.3d 762 (7th Cir. 2007) (Easterbrook, J.) ...............................................................6

*Lamar v. 118th Judicial Dist. Court*,
   440 F.2d 383 (5th Cir. 1971) (per curiam) .....................................................................13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)........................................................................................................27

*Londono-Rivera v. Virginia*,
   155 F. Supp. 2d 551 (E.D. Va. 2001) .............................................................................13

*Lugar v. Edmondson Oil Co., Inc.*,
   457 U.S. 922 (1982)..........................................................................................................8

*Machete Prods., L.L.C. v. Page*,
   809 F.3d 281 (5th Cir. 2015).............................................................................................2

*Mayor, Aldermen & Commonalty of City of New York v. Miln*,
   36 U.S. (11 Pet.) 102 (1837)...........................................................................................16

*Menchaca v. Chrysler Credit Corp.*,
   613 F.2d 507 (5th Cir. 1980).............................................................................................2

*Mendez v. Heller*,
   380 F. Supp. 985 (E.D.N.Y. 1974), *aff'd*, 530 F.2d 437 (2d Cir.1976) ...........................10

*Mi Familia Vota v. Abbott*,
   977 F.3d 461 (5th Cir. 2020).....................................................................................24, 25

*Middlebrooks v. Thirteenth Judicial Dist. Circuit Ct.*,
   323 F.2d 485 (8th Cir. 1963) (per curiam) .....................................................................13

*Milligan, Tr. for Westech Capital Corp. v. Salamone*,
   No. 1:18-cv-327-RP, 2019 WL 1208999 (W.D. Tex. Mar. 14, 2019) .................................6

*Moye v. Clerk, DeKalb County Superior Court*,
   474 F.2d 1275 (5th Cir. 1973) (per curiam) ...................................................................13

*Muskrat v. United States*,
219 U.S. 346 (1911) ..............................................................................................*passim*

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) ............................................................................................1

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................................4

*Novedea Sys., Inc. v. Colaberry, Inc.*,
No. 6:20-cv-180, 2020 WL 9211073 (E.D. Tex. Dec. 11, 2020) ........................21

*Okpalobi v. Foster*,
244 F.3d 405 (5th Cir. 2001) (en banc) ..........................................................4, 23

*Paisey v. Vitale In & For Broward County*,
807 F.2d 889 (11th Cir. 1986) ......................................................................9, 10, 14

*Pennsylvania v. New Jersey*,
426 U.S. 660 (1976) ..........................................................................................15

*Preiser v. Rodriguez*,
411 U.S. 475 (1973) ......................................................................................14, 30

*Pulliam v. Allen*,
466 U.S. 522 (1984) ................................................................................9, 10, 12, 13

*Raines v. Byrd*,
521 U.S. 811 (1997) ............................................................................................4

*Regal Knitwear Co. v. NLRB*,
324 U.S. 9 (1945) ..........................................................................................7, 11

*Schweiker v. Chilicky*,
487 U.S. 412 (1988) ..........................................................................................24

*Scott v. Donald*,
165 U.S. 107 (1897) ........................................................................................5, 6

*Seminole Tribe of Florida v. Florida*,
517 U.S. 44 (1996) ......................................................................................14, 30

*Shelley v. Kraemer*,
334 U.S. 1 (1948) ......................................................................................14, 15

*Siler v. Storey*,
587 F. Supp. 986 (N.D. Tex. 1984) ..................................................................13

*Slotnick v. Garfinkle,*
    632 F.2d 163 (1st Cir. 1980) ..................................................................8

*Spagnola v. Mathis,*
    859 F.2d 223 (D.C. Cir. 1988) (en banc).............................................24

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998)..................................................................................4

*Stevens v. Frick,*
    372 F.2d 378 (2d Cir. 1967) ..................................................................8

*Swearingen v. Keller,*
    No. 1:16-cv-1181-LY, ECF 18 (W.D. Tex. July 7, 2017).................13

*Texas v. Department of Labor,*
    929 F.3d 205 (5th Cir. 2019)..................................................................7

*Texas v. Florida,*
    306 U.S. 398 (1939)..............................................................................20

*Texas v. Ysleta del Sur Pueblo,*
    367 F. Supp.3d 596 (W.D. Tex. 2019) ................................................21

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ...........................................................................4

*United States v. California,*
    507 U.S. 746 (1993).........................................................................22, 23

*United States v. California,*
    655 F.2d 914 (9th Cir. 1980)................................................................19

*United States v. City of Jackson,*
    318 F.2d 1 (5th Cir. 1963) .............................................................14, 27

*United States v. City of Jackson,*
    320 F.2d 870 (5th Cir. 1963)................................................................27

*United States v. City of Philadelphia,*
    644 F.2d 187 (3d Cir. 1980).............................................20, 22, 27, 28

*United States v. County Sch. Bd. of Prince George County,*
    221 F. Supp. 93 (E.D. Va. 1963).........................................................22

*United States v. Hartford Acc. & Indem. Co.,*
    460 F.2d 17 (9th Cir. 1972)..................................................................22

*United States v. Madison County Board of Education,*
    326 F.2d 237 (5th Cir. 1964) ................................................................ 21, 22

*United States v. Mattson,*
    600 F.2d 1295 (9th Cir. 1979) .............................................................. 27, 28

*United States v. Morrison,*
    529 U.S. 598 (2000) ................................................................................... 19

*United States v. Raines,*
    362 U.S. 17 (1960) ..................................................................................... 30

*United States v. Solomon,*
    563 F.2d 1121 (4th Cir. 1977) .............................................................. 18, 26

*United Steelworkers of Am. v. United States,*
    80 S. Ct. 177 (1959) (Frankfurter, J., concurring) .................................. 26

*Webster v. Fall,*
    266 U.S. 507 (1925) ................................................................................... 27

*Whole Woman's Health v. Jackson,*
    No. 21-50792, 2021 WL 4128951 (5th Cir. Sept. 10, 2021) ............ *passim*

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989) ..................................................................................... 28

*Wyandotte Transportation Co. v. United States,*
    389 U.S. 191 (1967) ................................................................................... 26

*Ex parte Young,*
    209 U.S. 123 (1908) ............................................................................ *passim*

*Ex parte Young,*
    290 U.S. 123 (1908) ................................................................................... 24

*Zenith Radio Corp. v. Hazeltine Research, Inc,*
    395 U.S. 100 (1969) ................................................................................. 5, 6

*Ziglar v. Abbasi,*
    137 S. Ct. 1843 (2017) ....................................................................... *passim*

**Statutes**

5 U.S.C. § 702 ................................................................................................. 5

18 U.S.C.:

    §§ 241–42 ............................................................................................28

    § 248(c)(2)(A) ..................................................................................1, 29

    § 248(c)(3)(A) ......................................................................................16

    § 1531(a) ..............................................................................................19

42 U.S.C.:

    § 1983 ............................................................................................*passim*

    § 2000a-5(a) ........................................................................................29

    § 2000b(a) .......................................................................................1, 30

    § 2000c-6(a) ....................................................................................1, 30

    § 2000e-5(f)(1) .....................................................................................29

    § 2000h-2 ............................................................................................29

52 U.S.C.:

    § 10101(c) ...........................................................................................29

    § 10308(d) ...........................................................................................29

    § 10504 ................................................................................................29

    § 10701(a)(1) ...................................................................................1, 28

    § 20510 ................................................................................................29

Civil Rights Act of 1871 § 1 .......................................................................12

Tex. Civ. Prac. & Rem. Code:

    § 104.001 ...............................................................................................7

    § 104.004 ...............................................................................................7

Tex. Gov't Code § 402.045 ...........................................................................7

Tex. Health & Safety Code:

    § 171.205 ..............................................................................................16

    § 171.207(a) ..........................................................................................25

**Other Authorities**

Fed. R. Civ. P.:

    12(b)(1) .................................................................................................2

    12(b)(6) .................................................................................................2

    65 .........................................................................................................6

    65(d) .....................................................................................................7

    65(d)(1) .................................................................................................5

    65(d)(2) .......................................................................................5, 6, 11

1 John Norton Pomeroy, Jr., *A Treatise on Equitable Remedies* at 586 § 330 (1905),
    https://www.google.com/
    books/edition/A_Treatise_on_Equitable_Remedies/CZpDAQAAMAAJ?hl ............19

2 Joseph Story, Commentaries on Equity Jurisprudence at 166 § 575 (1836), available at https://www.google. com/books/edition/Commentaries_on_Equity_Jurisprudence_as/u7E-_kNzfCgC?hl ...................................................................................................12

John Harrison, *Ex Parte Young*, 60 Stan. L. Rev. 989, 999 (2008) ............................................25

Letter from Alexander J. Dallas, the first reporter of Supreme Court decisions, to Thomas Jefferson (Feb. 13, 1805), transcript available at https://founders.archives.gov/documents/Jefferson/99-01-02-1147 and scanned image available at https://www.loc.gov/resource/mtj1.032_0499_0502/ ....................................................14

Restatement (Second) of Agency § 14 (1958) ............................................................................6

U.S. Const. amend. XIV, § 5 ....................................................................................16, 20, 28

U.S. Const. amend. XXVI ..........................................................................................................29

U.S. Const. art. I, § 8 ..............................................................................................................20

U.S. Const. art. VII ..................................................................................................................17

## INTRODUCTION

The Court should dismiss this case. Article III does not permit courts to hear "a proceeding against the government in its sovereign capacity" when "the only judgment required is to settle the doubtful character of the legislation in question." *Muskrat v. United States*, 219 U.S. 346, 361–62 (1911).

Disregarding this jurisdictional defect, the federal government seeks extraordinary relief—an injunction against non-party private individuals and state judges—without even identifying a cause of action. Congress has created numerous specific causes of action for the Attorney General, but not one applies here. Congress has created causes of action for the Attorney General to enforce various constitutional rights, *see, e.g.*, 52 U.S.C. § 10701(a)(1), and statutory abortion rights under the Freedom of Access to Clinic Entrances Act, *see* 18 U.S.C. § 248(c)(2)(A). But Congress has never created a cause of action to enforce a constitutional right to abortion. Instead, it has repeatedly refused to create a broader cause of action for the Attorney General.

The federal government asks the Court to dispense with the normal cause-of-action requirement based on unfounded fears that the Texas Heartbeat Act will otherwise "evade judicial review." Nothing could be further from the truth. The constitutionality of the Texas Heartbeat Act can be reviewed in the same way that virtually all of state tort law is: State-court defendants raise constitutional defenses before neutral judges sworn to follow the U.S. Constitution and, if necessary, appeal to the U.S. Supreme Court. *See, e.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

True, some abortion providers might prefer to be federal-court plaintiffs rather than state-court defendants, but that preference is not a constitutional right. It is also an issue that Congress has already considered. The Attorney General has statutory causes of action to enforce certain Fourteenth Amendment rights if he concludes that the affected individuals "are unable . . . to initiate and maintain appropriate legal proceedings." 42 U.S.C. §§ 2000b(a), 2000c-6(a). But those causes of action are limited to equal protection rights. Congress's detailed cause-of-action scheme precludes the Attorney

General from bringing this suit to enforce a constitutional right to abortion.

STANDARD

Texas moves to dismiss for lack of subject matter jurisdiction and for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (6). As to jurisdiction, Texas mounts both factual and facial attacks. Because "[a] 'factual attack' . . . challenges the existence of subject matter jurisdiction in fact," "matters outside the pleadings, such as testimony and affidavits, are considered." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980); *accord Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 F. App'x 260, 263 (5th Cir. 2020) (per curiam). For a facial attack under Rule 12(b)(1) and a motion under Rule 12(b)(6), "the Court "must take all of the factual allegations in the complaint as true, but" it is "not 'bound to accept as true a legal conclusion couched as a factual allegation.'" *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

ARGUMENT

The Court should dismiss this case because it lacks subject-matter jurisdiction and because the federal government lacks a cause of action.

## I.    There Is No Justiciable Controversy between the Federal Government and Texas

This is not an Article III case or controversy. No federal court can hear a case to determine the constitutionality of a statute that the sovereign defendant is not enforcing. The fact that private parties may rely on the challenged statute in other litigation does not create a case or controversy against the sovereign. It simply shows that those other cases would be the proper cases for deciding the constitutionality of the challenged statute.

That is the holding of *Muskrat v. United States*, in which the Supreme Court considered a series of federal statutes affecting property rights of particular Indians. 219 U.S. 346 (1911). The first statute gave a defined group of Indians property rights in certain tribal assets, including lands. Subsequent federal statutes reduced those rights. Congress then created a new cause of action allowing Indians

injured by the subsequent statutes to sue the federal government "to determine the validity of [those subsequent] acts of Congress." *Id.* at 349–50.

The Indian plaintiffs filed suit, just as Congress invited. They sought "to restrain the enforcement of [the challenged statutes] upon the ground that [they were] unconstitutional and void." *Id.* at 349. There was no doubt that the challenged statutes injured the plaintiffs' property interests. Those statutes "attempt[ed] to increase or extend the restrictions upon alienation, encumbrance, or the right to lease the allotments of lands" and "increase[d] the number of persons entitled to share in the final distribution of lands and funds." *Id.* at 360.

Nevertheless, the Supreme Court held that the suit was not "a 'case' or 'controversy,' to which, under the Constitution of the United States, the judicial power alone extends." *Id.* at 361. The federal government, though "made a defendant," had "no interest adverse to the claimants." *Id.* at 361. The plaintiffs were not demanding that the government cease some enforcement action. They wanted "to determine the constitutional validity of this class of legislation." *Id.* But federal courts cannot entertain "a proceeding against the government in its sovereign capacity" when "the only judgment required is to settle the doubtful character of the legislation in question." *Id.* at 361–62. Such a judgment would not even have bound "private parties, when actual litigation brings to the court the question of the constitutionality of such legislation." *Id.* at 362. Thus, the suit was "not judicial in its nature within the meaning of the Constitution." *Id.*

Of course, the Court was willing to hear subsequent suits involving private parties. "The questions involved in this proceeding as to the validity of the legislation may arise in suits between individuals, and when they do and are properly brought before this court for consideration they, of course, must be determined in the exercise of its judicial functions." *Id.* But the interest in more quickly deciding "the constitutionality of important legislation" could not outweigh the Article III limitations on federal court jurisdiction.

*Muskrat* controls here. If the *Muskrat* plaintiffs could not sue a sovereign to challenge the constitutionality of laws enforced through private litigation, then neither can the federal government here sue Texas to challenge the Heartbeat Act. A sovereign's interest in the constitutionality of its laws, standing alone, does not make it a proper defendant. Nor does the fact that private parties will rely on those laws in other cases, even when those cases will be litigated in the sovereign defendant's courts. Indeed, that is especially so because, unlike the United States here, the Muskrat plaintiffs at least had cognizable injuries and an express cause of action. *Cf. infra* Part I.C–D.

There is no doubt that *Muskrat* remains good law. The Supreme Court cites it in major cases about federal jurisdiction. *See, e.g.*, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998); *Raines v. Byrd*, 521 U.S. 811, 819 (1997).

In fact, the Fifth Circuit expressly relied on *Muskrat* when it held that federal courts lacked jurisdiction to hear a challenge to Louisiana's statute providing "a private cause of action against medical doctors performing abortions." *Okpalobi v. Foster*, 244 F.3d 405, 409 (5th Cir. 2001) (en banc). The court described *Muskrat* as "holding that the United States as defendant had no interest adverse to the claimants." *Okpalobi*, 244 F.3d at 426 (citing *Muskrat*, 219 U.S. 346). The same is true of Texas here. Any injury is not traceable to or redressable by any future action by the State. Thus, this is not a case or controversy that can support the exercise of federal jurisdiction.

## II. The Federal Government Cannot Obtain Relief against State Courts, Much Less Private Individuals

Any injunction must explain *who* must act or refrain from acting. After all, "an injunction is a judicial process or mandate operating *in personam*." *Nken v. Holder*, 556 U.S. 418, 428 (2009). It therefore must "direct[] the conduct of a particular actor." *Id.*

The federal government is trying to avoid this inherent limitation on injunctive relief by asking for relief against "the State of Texas." ECF 6-2. Of course, when the shoe is on the other foot, the federal government insists that any injunction "entered against the United States . . . shall specify the

Federal officer or officers . . . personally responsible for compliance." 5 U.S.C. § 702. That makes sense. Without clarity about who is supposed to do what, a defendant cannot ensure compliance with an injunction. That is why "[e]very order granting an injunction . . . must . . . state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).

In this case, any injunction would have to specify which Texas officials are supposed to refrain from enforcing the Texas Heartbeat Act. The federal government offers only two possibilities: (1) private individuals who bring suit under the Heartbeat Act, or (2) the state courts that adjudicate those lawsuits. This Court cannot order relief against either group.

### A.    This Court Cannot Enjoin Private Non-Parties

The federal government would have this Court enjoin private third parties from filing heartbeat suits in state court, but they are not parties to this case. An "injunction is overbroad" if "it attempts to affect rights between [a party] and [others] who [are] not parties to the action." *Bethell v. Peace*, 441 F.2d 495, 498 (5th Cir. 1971); *see also Scott v. Donald*, 165 U.S. 107, 117 (1897).

In an effort to avoid the due process problems with enjoining non-parties, the federal government argues that private potential plaintiffs are either "agents" of the State or "in active concert" with the State and thus bound by a judgment against the State. Fed. R. Civ. P. 65(d)(2). That question is not properly before the Court, but in any event, private would-be plaintiffs are not connected to the State and therefore cannot be enjoined.

First, third parties have a right to be heard on whether they are "agents" or "in active concert," so the Court cannot decide that question without their participation. Even when a party and a non-party are obviously related, as with parent and subsidiary corporations, the non-party cannot be named in an injunction without first being heard. In *Zenith Radio Corp. v. Hazeltine Research, Inc.*, the parties "stipulated that 'for purposes of this litigation [HRI] and its parent Hazeltine Corporation will be considered to be one and the same company." 395 U.S. 100, 109 (1969). Relying on that stipulation,

the district court issued an injunction against HRI, which was a party to the litigation, as well as Hazeltine, which was not. *See id.* The Supreme Court "vacat[ed] the judgments against Hazeltine." *Id.* at 110. Although injunctions can bind "those persons 'in active concert or participation with'" the parties, "[i]t was error to enter the injunction against Hazeltine, without having made this determination in a proceeding to which Hazeltine was a party." *Id.* at 112.

"*[W]hether* a particular person or firm is among the 'parties' officers, agents, servants, employees, and attorneys; [or] other persons in active concert or participation with' them is a decision that may be made only after the person in question is given notice and an opportunity to be heard." *Lake Shore Asset Mgmt. Ltd. v. Commodity Futures Trading Comm'n*, 511 F.3d 762, 767 (7th Cir. 2007) (Easterbrook, J.) (quoting Fed. R. Civ. P. 65(d)(2)). Thus, an injunction purporting to bind non-parties would be ineffective. *See Detroit Edison Co. v. NLRB*, 440 U.S. 301, 315–16 (1979). A court "cannot lawfully enjoin the world at large, no matter how broadly it words its decree. If it assumes to do so, the decree is pro tanto brutum fulmen [to that extent ineffectual], and the persons enjoined are free to ignore it." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930) (Hand, J.).

Second, the federal government asserts, in a footnote and without any supporting citation, that "the individuals who file suits under S.B. 8 should be considered 'agents' of the State under Rule 65." ECF 6-1 at 31 n.13. The federal government has forfeited that argument because it "has not adequately briefed it." *Milligan, Tr. for Westech Capital Corp. v. Salamone*, No. 1:18-cv-327-RP, 2019 WL 1208999, at *6 n.7 (W.D. Tex. Mar. 14, 2019) (citing *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008)). Even if it were properly presented, it would be wrong. Private parties "are plainly not agents of the State" even when they have an interest in defending the constitutionality of state law. *Hollingsworth v. Perry*, 570 U.S. 693, 713 (2013). A private plaintiff bringing a heartbeat suit cannot be Texas's agent because Texas lacks "the right to control the conduct of" that plaintiff. Restatement (Second) of Agency § 14 (1958). This is a far cry from the type of agency relationship required by Rule

65. *See, e.g., Int'l Controls & Measurements Corp. v. Watsco, Inc.*, 853 F. Supp. 585, 589 (N.D.N.Y. 1994).

Third, private parties are not "in active concert" with the State. The Fifth Circuit rejected the federal government's theory in *Texas v. Department of Labor*, 929 F.3d 205 (5th Cir. 2019). In that case, the Department of Labor ("DOL") was enjoined from enforcing one of its rules regulating overtime. *See Texas*, 929 F.3d at 207. The rule itself, however, remained in effect, and a private plaintiff sought to enforce the rule against her employer. *See id.* The district court that had enjoined DOL held the employee in contempt, but the Fifth Circuit reversed. *See id.* at 214. DOL could not have "adequately represented [the employee's] interests" because there was no "legal relationship" making DOL "accountable to" the employee. *Id.* at 211. Further, DOL could not adequately represent private employees because the Fair Labor Standards Act ("FLSA") "explicitly establishes a private right of action" allowing employees to sue. *Id.* at 212. The Fifth Circuit expressly rejected the theory that "DOL represents every worker's legal interests through its enforcement of the FLSA so as to bind every worker in the United States to an injunction where the DOL is the only bound party." *Id.* at 213.

So too here. Texas has no legal relationship with absent third parties, and Texas does not represent the interests of those who would bring private causes of action. *See* ECF 28. Relatedly, the Texas Attorney General is generally not authorized to represent private individuals. *See* Tex. Civ. Prac. & Rem. Code §§ 104.001, 104.004; Tex. Gov't Code § 402.045.

"In essence," Rule 65(d) prevents defendants from "nullify[ing] a decree by carrying out prohibited acts through aiders and abettors," *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945), but even the federal government does not contend that private individuals are Texas's "aiders and abettors." If a private individual files a heartbeat lawsuit in state court, that individual has not "helped to bring about . . . an act of a party," which is the only thing the Court "has power to forbid." *Alemite Mfg. Corp.*, 42 F.2d at 833.

In the end, the federal government effectively asks this Court to enjoin "'all persons to whom

notice of the order of injunction should come," but such an overbroad injunction would be "clearly erroneous." *Chase Nat. Bank v. City of Norwalk*, 291 U.S. 431, 436 (1934). The Court cannot "make punishable as a contempt the conduct of persons who act independently and whose rights have not been adjudged according to law." *Id.* at 437 (citing *Alemite Mfg. Corp.*, 42 F.2d at 832).[1]

## B.  This Court Cannot Enjoin Texas Courts

The federal government invites the Court to "specify that [an injunction] runs to the state judiciary," ECF 6-1 at 31, but that "would be a violation of the whole scheme of our government." *Ex parte Young*, 209 U.S. 123, 163 (1908). Even as it recognized a federal court's power to enjoin state executive officials "from commencing suits" in state courts, the Supreme Court cautioned that such authority "does not include the power to restrain a court from acting in any case brought before it." *Id.* "The difference between the power to enjoin an individual from doing certain things, and the power to enjoin courts from proceeding in their own way to exercise jurisdiction, is plain, and no power to do the latter exists because of a power to do the former." *Id.*

The Fifth Circuit has long rejected lawsuits against state judges. "The case or controversy requirement of Article III of the Constitution requires a plaintiff to show that he and the defendants have adverse legal interests," but "[t]he requirement of a justiciable controversy is not satisfied where a judge acts in his adjudicatory capacity." *Bauer v. Texas*, 341 F.3d 352, 359 (5th Cir. 2003).

Confirming that this rule applies here, the Fifth Circuit recently held that plaintiffs challenging the Heartbeat Act were "not 'adverse' to the state judges." *Whole Woman's Health v. Jackson*, No. 21-

---

[1] The federal government contends that "individuals who file suits under S.B. 8 are properly considered state actors," ECF 6-1 at 31 n.19, but even when "the State [is] responsible for [a] statute," "[a]ction by a private party pursuant to [the] statute, without something more, [is] not sufficient to justify a characterization of that party as a 'state actor.'" *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 938–39 (1982) (describing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978)). "[T]here is no 'state action' to be found in the mere filing of a private civil tort action in state court." *Henry v. First Nat'l Bank of Clarksdale*, 444 F.2d 1300, 1312 (5th Cir. 1971); *see also Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980); *Stevens v. Frick*, 372 F.2d 378, 381 (2d Cir. 1967); *Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1086 (4th Cir. 1979); *Hu v. Huey*, 325 F. App'x 436, 440 (7th Cir. 2009) (per curiam); *Gras v. Stevens*, 415 F. Supp. 1148, 1152 (S.D.N.Y. 1976) (three-judge district court) (Friendly, J.). But even if private individuals qualified as state actors, that would not allow the Court to enjoin them as non-parties for the reasons explained above.

50792, 2021 WL 4128951, at *5 (5th Cir. Sept. 10, 2021) (quoting *Bauer*, 341 F.3d at 359). "When acting in their adjudicatory capacity, judges are disinterested neutrals who lack a personal interest in the outcome of the controversy." *Id.* "It is absurd to contend, as Plaintiffs do, that the way to challenge an unfavorable state law is to sue state court judges, who are bound to follow not only state law but the U.S. Constitution and federal law." *Id.*

In light of that obligation, neither the federal government nor any potential state-court defendant can show a "*certainly impending*" injury traceable to state courts. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Whether any given state court will find the defendant liable is a matter of pure speculation. If a state-court defendant presented a meritorious constitutional defense, then the state judge would be duty-bound to dismiss the case. The federal government presents no evidence suggesting that state judges will fail to do so. Moreover, in light of a state judge's obligation not to prejudge cases, each judge lacks the adverse interests necessary to support federal jurisdiction at this time, even if at some later time that judge might rule as the federal government fears.

The other federal courts to consider this question have reached the same conclusion. As now-Justice Breyer wrote for the First Circuit, "at least ordinarily, no 'case or controversy' exists between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute." *In re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17, 21 (1st Cir. 1982) (Breyer, J.). The Supreme Court and the Fifth Circuit have approved that ruling. *See Pulliam v. Allen*, 466 U.S. 522, 538 n.18 (1984) (citing *In re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17); *Bauer*, 341 F.3d at 361 (same).

Similarly, the Eleventh Circuit affirmed the denial of a preliminary injunction against a state judge in *Paisey v. Vitale In & For Broward County*, 807 F.2d 889 (11th Cir. 1986). Relying on the Fifth Circuit's decision in *Henry*, the court rejected as "without merit" the federal-court plaintiff's argument that "[a state judge's] action in hearing [the state-court plaintiff's] lawsuit . . . violates his federal rights." *Id.* at 893. There was "absolutely no basis for alleging action under color of state law merely

by virtue of the fact the Florida state courts [were] adjudicating [the] controversy." *Id.* at 894–95.

In *Mendez v. Heller*, the court held that a state judge did not "have an interest adverse to [the plaintiff's] in the determination of the" constitutionality of a state statute because he was "a judicial officer bound to decide the issue according to the law as he finds it." 380 F. Supp. 985, 990 (E.D.N.Y. 1974), *aff'd*, 530 F.2d 437, 459 (2d Cir.1976). "The critical difficulty" preventing federal jurisdiction was "that any action that [the state judges] could take . . . would necessarily be a judicial determination," meaning "the essential quality of adverseness is intrinsically absent." *Id.* at 993.

Judge Friendly similarly explained that a plaintiff challenging the constitutionality of a state statute could not sue state judges because any relevant actions they took would "be in their capacity as judges who, like [federal judges], have taken an oath or affirmation to support the Constitution of the United States." *Gras v. Stevens*, 415 F. Supp. 1148, 1151 (S.D.N.Y. 1976) (three-judge district court). "If [the plaintiff was] right in thinking that" the challenged law was unconstitutional, then the state judges would be "as bound to strike it down as [federal judges] are." *Id.*

Ignoring this on-point caselaw, the federal government cites *Pulliam* for the proposition that judicial immunity does not bar injunctive relief against a judge. That is irrelevant. Judicial immunity is not the only barrier to issuing injunctive relief against a judge. As *Pulliam* itself recognized, "Article III also imposes limitations on the availability of injunctive relief against a judge." *Pulliam*, 466 U.S. at 538 n.18. Those Article III limitations are what the cases cited above applied.[2]

Effectively conceding the impropriety of suing a judge *directly*, the federal government suggests it can sue a judge *indirectly*: "Even if a suit directly against a judge could not proceed, this is a suit against Texas, including its officers, employees, and agents." ECF 6-1 at 32 n.14. Under *Muskrat*,

---

[2] It is worth noting that Congress thought *Pulliam* was wrong about judicial immunity. "Congress responded to *Pulliam* in 1996 by amending § 1983 to abrogate its holding." *Justice Network Inc. v. Craighead County*, 931 F.3d 753, 763 (8th Cir. 2019). "The Senate report indicates that the amendment 'restores the doctrine of judicial immunity to the status it occupied prior to . . . *Pulliam*' because *Pulliam* had departed from '400 years of common-law tradition and weakened judicial immunity protections.'" *Id.* at 763 n.6 (quoting S. Rep. 104-366, at *36–37, 1996 U.S.C.C.A.N. 4202, 4216).

though, a judgment against a sovereign defendant does not bind that sovereign's courts in future litigation. The Supreme Court explained that "a proceeding against the government in its sovereign capacity" to determine the constitutionality of its legislation would not resolve the issue for "private parties, when actual litigation brings to the court the question of the constitutionality of such legislation." *Muskrat*, 219 U.S. at 361–62. That makes sense only if the federal courts hearing such claims would not have been bound by a judgment against the United States. By analogy, then, an injunction against Texas in this case would not bind state courts hearing heartbeat lawsuits.

In any event, the federal government gets things precisely backward. There are *more* hurdles, not fewer, to enjoining those who are not named as defendants. As explained above, this Court cannot pre-decide that judicial officials are within the scope of Rule 65(d)(2)—and would therefore be subject to any injunction issued against Texas—when they are not parties to this case. *See supra* Part I.B.1.

Moreover, judicial officials are not within the scope of Rule 65(d)(2) and would not be covered by an any injunction issued against Texas. Judicial officials are not "aiders and abettors" of Texas. *Regal Knitwear Co.*, 324 U.S. at 14. On the contrary, they are "acting in their adjudicatory capacity" as "disinterested neutrals who lack a personal interest in the outcome of the controversy." *Whole Woman's Health v. Jackson*, No. 21-50792, 2021 WL 4128951, at *5 (5th Cir. Sept. 10, 2021).

The federal government next proposes that, even if the Court cannot enjoin state judges, it could enjoin state court clerks, *see* ECF 6-1 at 32, but federal courts cannot enjoin any part of the state judiciary from adjudicating claims. The Supreme Court itself rejected the contention that a federal court would have "power to prevent any investigation or action by a grand jury" because a grand jury "is part of the machinery of a criminal court, and an injunction against a state court would be a violation of the whole scheme of our government." *Ex parte Young*, 209 U.S. at 163.

The Fifth Circuit also rejected the federal government's theory just a few weeks ago. A clerk's "duty within the court is to accept and file papers in lawsuits, not to classify 'acceptable' pleadings.

Accordingly, the clerks are improper defendants against whom injunctive relief would be meaningless." *Id.* The federal government's argument does nothing to dispel the "grave doubts that the clerks of various courts have a real interest in defending" actions taken by the courts because "their job [is] primarily ministerial." *Cavett v. Ellis*, 578 F.2d 567, 570 n.6 (5th Cir. 1978).

In addition, injunctive relief against state courts is barred because such an injunction was "unknown to equity jurisprudence" before 1789. *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 332 (1999). "[T]he equitable powers conferred by the Judiciary Act of 1789 did not include the power to create remedies previously unknown to equity jurisprudence." *Id.* Thus, this Court must ask "whether the relief [the federal government] requested here was traditionally accorded by courts of equity." *Id.* at 319. The Supreme Court has already supplied the answer: No.

"At the common law itself, there was no such thing as an injunction against a judge. Injunctive relief was an equitable remedy that could be awarded by the Chancellor only against the parties in proceedings before other courts." *Pulliam*, 466 U.S. at 529 (citing 2 J. Story, Equity Jurisprudence ¶ 875, p. 72 (11th ed. 1873)). The *Pulliam* majority and dissent were in agreement on this point: "[S]uits for injunctive relief against a judge could not be maintained either at English common law or in the English courts of equity." *Id.* at 549 (Powell, J., dissenting). The source on which both relied—Joseph Story's famous treatise on equity—could hardly be clearer or more authoritative:

> A writ of injunction is in no just sense a prohibition to those courts in the exercise of their jurisdiction. It is not addressed to those courts. It does not even affect to interfere with them. The process, when its object is to restrain proceedings at law, is directed only to the parties.[3]

That *Pulliam* itself contemplated injunctive relief against a judge "under § 1 of the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983," 466 U.S. at 524, does not undermine the *Grupo Mexicano*

---

[3] 2 Joseph Story, Commentaries on Equity Jurisprudence at 166 § 575 (1836), available at https://www.google.com/books/edition/Commentaries_on_Equity_Jurisprudence_as/u7E-_kNzfCgC?hl.

limitation on injunctive relief available under "[t]he Judiciary Act of 1789." 527 U.S. at 318. *Grupo Mexicano* itself distinguished between "the Court's general equitable powers under the Judiciary Act of 1789" and "its powers under [a] statute authorizing issuance of [specific] injunctions." *Id.* at 326.

Confirming these limits on injunctive relief are related limits on the writ of prohibition. Historically, the writ of prohibition has been used "to control inferior courts," *Pulliam*, 466 U.S. at 532 n.6, but federal courts cannot issue the writ to control state courts.

In "modern practice," courts usually "do not distinguish between mandamus and prohibition." *In re Gee*, 941 F.3d 153, 158 n.2 (5th Cir. 2019). Thus, the Fifth Circuit precedent forbidding writs of mandamus to a state court also forbids writs of prohibition. "[F]ederal courts have no general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought." *Lamar v. 118th Judicial Dist. Court*, 440 F.2d 383, 384 (5th Cir. 1971) (per curiam); *see also Moye v. Clerk, DeKalb County Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973) (per curiam). Other courts agree. "[F]ederal courts have no authority to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties." *Haggard v. State of Tenn.*, 421 F.2d 1384, 1386 (6th Cir. 1970). "The federal courts are without power to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties." *Clark v. State of Wash.*, 366 F.2d 678, 681 (9th Cir. 1966). This Court even dismissed "as frivolous" a complaint "equivalent [to] a petition for mandamus relief because it request[ed] this court to direct the state court." *Swearingen v. Keller*, No. 1:16-cv-1181-LY, ECF 18 at 7–8 (W.D. Tex. July 7, 2017).

When federal courts consider prohibition separately from mandamus, they still refuse to issue writs of prohibition to state courts. Prohibition "is not an appropriate remedy to control jurisdiction of other, nonsubordinate courts." *Siler v. Storey*, 587 F. Supp. 986, 987 (N.D. Tex. 1984). Thus, "a federal district court cannot issue a writ to a state court." *Londono-Rivera v. Virginia*, 155 F. Supp. 2d 551, 559 n.1 (E.D. Va. 2001); *see Middlebrooks v. Thirteenth Judicial Dist. Circuit Ct.*, 323 F.2d 485, 486

(8th Cir. 1963) (per curiam). This limit on federal judicial authority has been known since the beginning of our country.[4]

Finally, even if injunctive relief against state courts were otherwise proper—it is not—it would run afoul of congressionally placed limits on injunctive relief. When Congress created a cause of action for the redress of constitutional violations, it specifically forbade injunctive relief against state judges. "[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see Whole Woman's Health v. Jackson*, 21-50792, 2021 WL 4128951, at *5 (5th Cir. Sept. 10, 2021). To be sure, the federal government is not proceeding under Section 1983, albeit because it is not authorized to do so. *See United States v. City of Jackson*, 318 F.2d 1, 8 (5th Cir. 1963). But Section 1983 still evinces congressional policy. "[T]he fact that Congress chose to" forbid injunctive relief against state courts in Section 1983 "strongly indicates that Congress had no wish to create" the opportunity for such injunctive relief in a suit it has not authorized at all. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 75–76 (1996); *see infra* Part I.D. "It would wholly frustrate explicit congressional intent to hold that the" federal government "could evade this" limitation on injunctive relief "by the simple expedient of putting a different label on [its] pleadings." *Preiser v. Rodriguez*, 411 U.S. 475, 489–90 (1973).

Against all of this authority, the federal government relies on *Shelley v. Kraemer*, 334 U.S. 1 (1948), *see* 6-1 at 31–32, but *Shelley* found state action "only after a final judgment or otherwise dispositive order on the merits had been rendered by the state court," not in the mere adjudication of a case. *Henry*, 444 F.2d at 1309 (footnote omitted) (distinguishing *Shelley*); *Paisey*, 807 F.2d at 893

---

[4] *See* Letter from Alexander J. Dallas, the first reporter of Supreme Court decisions, to Thomas Jefferson (Feb. 13, 1805), transcript available at https://founders.archives.gov/documents/Jefferson/99-01-02-1147 and scanned image available at https://www.loc.gov/resource/mtj1.032_0499_0502/ (arguing that federal courts cannot issue writs of prohibition to start courts).

(same). *Shelley* therefore cannot support a claim for injunctive relief before any judgment has issued, especially because the substance of any future judgment is, at this point, a matter of speculation. Further, *Shelley*'s procedural posture illustrates how review of state-court action is supposed to work. The Supreme Court granted certiorari to review the judgments of two state supreme courts that adjudicated the rights of private litigants. *See Shelley*, 334 U.S. at 4–6. Even *Shelley* did not contemplate a federal-court injunction against a state-court judge.

## III.    The Federal Government Is Not Injured

The federal government had no apparent interest in challenging the Texas Heartbeat Act until the Supreme Court denied private plaintiffs' motion for an injunction pending appeal. *See Whole Woman's Health*, 2021 WL 3910722, at *1. It now forthrightly argues that "jurisdictional obstacles to the ability of women and providers to sue to protect their rights" justify its decision to sue Texas. ECF 6-1 at 1. That is fatal to its standing because "settled doctrine" holds that a sovereign plaintiff lacks standing where it is "merely litigating as volunteer the personal claims of its citizens." *Pennsylvania v. New Jersey*, 426 U.S. 660, 665 (1976) (collecting cases).

### A.  The Federal Government Lacks *Parens Patriae* Standing

The federal government claims *parens patriae* standing, but it misapplies the doctrine. Relying on precedent authorizing the States to sue as *parens patriae*, the federal government assumes that it has the same authority. It does not.

A suit purportedly "to protect the constitutional rights of women in Texas" cannot rest on *parens patriae* standing. ECF 6-1 at 1. A *parens patriae* cannot "step[] in to represent the interests of particular citizens who, for whatever reason, cannot represent themselves." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 600 (1982). "In fact, if nothing more than this is involved— *i.e.*, if the State is only a nominal party without a real interest of its own—then it will not have standing under the *parens patriae* doctrine." *Id.* at 600–01 (collecting cases).

The Supreme Court has said that *States* can support *parens patriae* standing based on their "quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general" and their "quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system." *Id.* at 607. The States "have broad authority to enact legislation for the public good," *id.*, and "health laws of every description" are within the States' "police" powers. *Mayor, Aldermen & Commonalty of City of New York v. Miln*, 36 U.S. (11 Pet.) 102, 133 (1837) (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 203 (1824)). That is why States have a quasi-sovereign interest in the general health and well-being of their citizens.

But the federal government does not have the same authority. Unlike the States, it does not possess the police power. *See, e.g.*, *Bond v. United States*, 572 U.S. 884, 854 (2014). True, "the Congress" has an interest in the enforcement of the Fourteenth Amendment, U.S. Const. amend. XIV, § 5, but it has not given the U.S. Attorney General any authority to bring a *parens patriae* suit about abortion rights. On the contrary, it has impliedly prohibited such suits by creating a much more limited *parens patriae* regime for abortion rights. The Freedom of Access to Clinic Entrances Act authorizes "the Attorney General of a *State*" to "commence a civil action in the name of such State, as parens patriae on behalf of natural persons residing in such State" regarding certain statutory abortion rights. 18 U.S.C. § 248(c)(3)(A) (emphasis added). The federal government has not pointed to any similar *parens patriae* statute authorizing it to sue here.

Even if the federal government could bring a *parens patriae* action based on the general health of Texas citizens, it has not clearly shown that the Texas Heartbeat Act is hazardous to women's health. Pregnancy is not an illness. And to the extent a woman's pregnancy places her health in danger, the law contains an exception for medical emergencies. *See* Tex. Health & Safety Code § 171.205. Indeed, in channeling abortions that might have been performed later in a woman's pregnancy to the earlier stages, the Texas Heartbeat Act makes abortion safer. "The earlier in pregnancy that an abortion

is done, the safer it is." *Adams & Boyle, P.C. v. Slatery*, 494 F. Supp. 3d 488, 514 (M.D. Tenn. 2020) (quoting the abortion provider's medical expert), *rev'd. sub nom. Bristol Regional Women's Center, P.C. v. Slatery*, 7 F.4th 478 (6th Cir. 2021) (Thapar, J.). Without evidence of a public-health injury, the federal government's *parens patriae* argument fails on its own terms.

Finally, the federal government's transparent effort to overcome the sovereign-immunity problems that plagued private challenges to the Heartbeat Act demonstrates the inapplicability of *parens patriae* standing. As Justice Brennan explained, "where one State brings a suit *parens patriae* against another State, a more circumspect inquiry may be required in order to ensure that the provisions of the Eleventh Amendment are not being too easily circumvented by the device of the State's bringing suit on behalf of some private party." *Alfred L. Snapp & Son*, 458 U.S. at 611 (Brennan, J., concurring). The same circumspection is required here.

### B.   The Federal Government Lacks a Sovereign Injury

The federal government also claims a "sovereign interest" in making sure States do not violate the Constitution, ECF 6-1 at 1, but that is not an interest that can support standing. True, the Supreme Court has recognized a sovereign interest in "the exercise of sovereign power over individuals and entities within the relevant jurisdiction" that "involves the power to create and enforce a legal code." *Alfred L. Snapp*, 458 U.S. at 601. But the Constitution is not a legal code created by the federal government. On the contrary, the federal government was created by the Constitution, and the States, not the federal government, created the Constitution. *See* U.S. Const. art. VII. Again, although the Constitution gives Congress the power to enforce the Fourteenth Amendment through appropriate legislation, Congress denied the executive branch any authority to enforce any right to abortion under the Fourteenth Amendment. *See infra* Part II.D. For these reasons, the federal government does not have a sovereign interest that could support standing.

The federal government cites *In re Debs*, 158 U.S. 564 (1895), but it misunderstands the case.

*See* ECF 6-1 at 32–33. That case explains that the federal government, like any other party, can bring any lawsuit in which it has a proprietary interest. The federal government has such an interest "in the mails," so it had standing on that basis. *Debs*, 158 U.S. at 583. The Supreme Court also pointed to a second basis for standing: the federal government's interest in protecting interstate commerce. The Supreme Court included the following *dicta*:

> Every government, intrusted by the very terms of its being with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other, and it is no sufficient answer to its appeal to one of those courts that it has no pecuniary interest in the matter. The obligations which it is under to promote the interest of all and to prevent the wrongdoing of one, resulting in injury to the general welfare, is often of itself sufficient to give it a standing in court.

*Debs*, 158 U.S. at 584.

*Debs*' interference-with-commerce theory of standing turned on the fact that "[t]he national government, given by the constitution power to regulate interstate commerce, has by express statute assumed jurisdiction over such commerce when carried upon railroads." *Id.* at 586. That meant the federal government was "charged, therefore, with the duty of keeping those highways of interstate commerce free from obstruction, for it has always been recognized as one of the powers and duties of a government to remove obstructions from the highways under its control." *Id.* That was the "dut[y]" "the discharge of" which gave the federal government "standing" to seek "proper assistance" from the courts. *Id.* at 584.

Standing under *Debs* requires the federal government to demonstrate "a well-defined statutory interest of the public at large." *United States v. Solomon*, 563 F.2d 1121, 1127 (4th Cir. 1977). "[A]n interest, in the generic sense," is not enough. *Id.* at 1125. "[T]he Debs Court specifically noted that the duty on which the standing of the United States rested arose not simply from the constitutional grant of power to regulate commerce but from congressional action expressly assuming and implementing that power." *Clark v. Valeo*, 559 F.2d 642, 654 (D.C. Cir. 1977) (Tamm, J., concurring).

18

In this case, however, the federal government has not "by express statute assumed jurisdiction over" post-heartbeat abortions. *Id.* at 586. The only federal abortion statute cited banned partial-birth abortions. *See* ECF 6-1 at 27 (citing 18 U.S.C. § 1531(a)). Indeed, under the Supreme Court's Commerce Clause jurisprudence, there is a serious question whether Congress even has the power to protect all post-heartbeat abortions without some further jurisdictional hook, *see United States v. Morrison*, 529 U.S. 598, 615–16 (2000), let alone whether the Executive Branch can unilaterally sue to protect those abortions based on the purported effect on interstate commerce. *Cf. Jinks v. Richland County*, 538 U.S. 456, 464 (2003) (noting the possibility that a law could be enacted "as a 'pretext' for 'the accomplishment of objects not entrusted to the [federal] government'"). Congress certainly has not created a statutory duty for the executive branch to remove a State's regulations of abortion.

Without a statutory duty to prevent private lawsuits under the Texas Heartbeat Act, the federal government cannot claim standing to seek "proper assistance in . . . the discharge of" such a duty. *Debs*, 158 U.S. at 584.

## IV.    The Federal Government Lacks a Cause of Action

Relatedly, the federal government also does not have a cause of action. "The federal government, of course may sue a state in federal court under any valid cause of action," but it "must first have a cause of action against the state," just "like any other plaintiff." *United States v. California*, 655 F.2d 914, 918 (9th Cir. 1980).

The federal government's sovereign status does not change the analysis. "When the state as plaintiff invokes the aid of a court of equity, it is not exempt from the rules applicable to ordinary suitors."[5] "[I]t must establish a case of equitable cognizance, and a right to the particular relief demanded." *Id.* Thus, a court cannot award relief unless it is convinced "that a cause of action

---

[5] 1 John Norton Pomeroy, Jr., *A Treatise on Equitable Remedies* at 586 § 330 (1905), https://www.google.com/books/edition/A_Treatise_on_Equitable_Remedies/CZpDAQAAMAAJ?hl.

cognizable in equity is alleged and proved," even when one sovereign sues another. *Texas v. Florida*, 306 U.S. 398, 411 (1939).

For this reason, the federal government must establish "a right of action given by some statute" or "a common-law right of action." *Denver & R.G.R. Co. v. United States*, 241 F. 614, 616 (8th Cir. 1917) (rejecting a claim by the federal government). This it cannot do.

### A.  There Is No Constitutional or Statutory Cause of Action

The federal government does not appear to rely on any constitutional or statutory cause of action—and rightfully so. The Constitution does not create causes of action at all.

Instead, it empowers Congress to pass legislation creating causes of action in certain circumstances. *See, e.g.*, U.S. Const. art. I, § 8; U.S. Const. amend. XIV, § 5. The two constitutional provisions at issue in this case, the Supremacy Clause and the Due Process Clause, are no exceptions. "[T]he Supremacy Clause . . . certainly does not create a cause of action" either expressly or impliedly. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015). It "is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Id.* The same goes for the Due Process Clause with regard to its restrictions on state law. *See, e.g.*, *Hearth, Inc. v. Dep't of Pub. Welfare*, 617 F.2d 381, 382–83 (5th Cir. 1980) (per curiam); *Alexander v. Trump*, 753 F. App'x 201, 206 (5th Cir. 2018) (per curiam); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). "[T]he fourteenth amendment does not implicitly authorize the United States to sue to enjoin violations of its substantive prohibitions." *United States v. City of Philadelphia*, 644 F.2d 187, 201 (3d Cir. 1980).[6]

---

[6] In *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court accepted "a former congressional staffer's Fifth Amendment claim of dismissal based on sex," but "it is doubtful that" the Supreme Court would "reach[] the same result" if it "decided [that case] today." *Hernandez v. Mesa*, 140 S. Ct. 735, 741–43 (2020). In any event, regardless of what *Davis* says about sex-discrimination claims under the Fifth Amendment's Due Process Clause, it did not consider abortion claims under the Fourteenth Amendment's Due Process Clause, which has a separate enforcement scheme, *see* U.S. Const. amend. XIV, § 5; 42 U.S.C. § 1983, nor did it consider creating a cause of action in favor of the federal government. "[T]he notable change in the [Supreme] Court's approach to recognizing implied causes of action" has turned "expanding the *Bivens* remedy" into "a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). Thus, as the federal government has repeatedly and successfully urged when it is a defendant rather than a plaintiff, this Court should not countenance

The federal government also disclaims any effort to identify a statutory cause of action. *See* ECF 6-1 at 23 ("even without an express statutory cause of action," "absence of express statutory authority"). Although Congress has authorized suits by other types of plaintiffs to enforce the Fourteenth Amendment against other types of defendants, and has authorized the federal government to enforce certain other constitutional rights and statutory abortion rights through civil suits, no statute confers a cause of action on the federal government to sue Texas for the claim here.[7]

## B.   There Is No Common-Law or Equitable Cause of Action

The federal government has not identified a specific common-law or equitable cause of action that could support this suit. It seeks an injunction, but "an injunction is not a cause of action." *Novedea Sys., Inc. v. Colaberry, Inc.*, No. 6:20-cv-180, 2020 WL 9211073, at *2 (E.D. Tex. Dec. 11, 2020); *see also Jones v. Wells Fargo Bank, N.A.*, No. 5-14-cv-943, 2015 WL 12734177, at *4 (W.D. Tex. Jan. 21, 2015).

No equitable cause of action applies here. Courts have consistently declined to recognize equitable causes of action that would allow the federal government to generally challenge alleged constitutional violations.

The Fifth Circuit rejected the federal government's efforts to litigate the Fourteenth Amendment rights of individuals in *United States v. Madison County Board of Education*, 326 F.2d 237 (5th Cir. 1964). There, the federal government "urge[d] that the violations of the Fourteenth Amendment rights of the children of members and employees of the Armed Forces burden[ed] the exercise of the war power" and gave the federal government the right to bring suit. *Id.* at 242. Describing the federal government's argument as "unprecedented and extremely dangerous," the Fifth Circuit held that the

---

"even a modest extension" of *Bivens*, much less the radical transformation that would be required to support a cause of action in this case. *Id.* at 1864.

[7] "The Declaratory Judgment Act provides no independent cause of action." *Texas v. Ysleta del Sur Pueblo*, 367 F. Supp.3d 596, 602 (W.D. Tex. 2019); *accord Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 500 (5th Cir. 2020) (Oldham, J., concurring). The federal government as repeatedly and successfully advanced that position as a defendant. *See, e.g., Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011). Regardless, the Declaratory Judgment Act could not support a request for a preliminary injunction.

Fourteenth Amendment and the war power combined could not support the suit. *Id.* at 242–43; *accord United States v. County Sch. Bd. of Prince George County*, 221 F. Supp. 93, 104 (E.D. Va. 1963).

Other courts agree. In *Philadelphia*, the Third Circuit considered "whether the United States has implied authority to sue a city and its officials for an injunction against violations of the fourteenth amendment rights of individuals." 644 F.2d at 189. "[A]lmost every court that has had the opportunity to pass on the question" has agreed "that the United States may not sue to enjoin violations of individuals' fourteenth amendment rights without specific statutory authority." *Id.* at 201. That precedent is consistent with the "three separate refusals of Congress to grant [the Attorney General] this authority and a widely-shared understanding that the authority does not exist." *Id.* at 203.

The federal government attempts to distinguish this case on the ground that it is exceptional. *See* ECF 6-1 at 26. But the federal government seems to believe its cases are often "exceptional," and the precedent cited above has already explained why that proposed limitation is unworkable. *Philadelphia*, 644 F.2d at 201. The federal government also cites the Take Care Clause, *see* ECF 6-1 at 25, but that does not change anything. *See id.* at 199 (rejecting that argument).

Nor is there an equitable cause of action for the federal government's Supremacy Clause claims. No precedent "hold[s] that considerations of federal supremacy can create a cause of action where none exists under state law or otherwise." *United States v. Hartford Acc. & Indem. Co.*, 460 F.2d 17, 19 (9th Cir. 1972) (affirming judgment against the federal government).

In fact, the Supreme Court has already rejected the federal government's theory: The financial obligation to reimburse a federal contractor for expenses created by state law is not sufficient to create a federal cause of action. In *United States v. California*, a federal contractor managed oil drilling operations on behalf of the federal government. 507 U.S. 746, 748 (1993). California imposed taxes on the contractor, which the contractor paid under protest with funds provided by the federal government. *See id.* at 748–49. The federal government then filed suit against California, "argu[ing] it

was entitled to recovery based on the federal common-law cause of action for money had and received." *Id.* at 749. The Supreme Court unanimously rejected that claim. "[T]he Government cannot use the existence of an obligation to indemnify [a federal contractor] to create a federal cause of action for money had and received to recover state taxes paid by [that contractor]." *Id.* at 754.

The federal government acknowledges the "past cases where courts have held that the mere fact that federal constitutional rights are being violated does not necessarily authorize the United States to sue." ECF 6-1 at 25. It attempts to distinguish those cases on the ground that the Heartbeat Act "thwart[s] ordinary mechanisms of federal judicial review through a congressionally conferred cause of action," *id.*, but the statute does not thwart judicial review at all. It not only allows but *requires* pre-enforcement judicial review in state court, and a losing litigant can seek review by the U.S. Supreme Court. There is nothing "unique" about the "circumstances presented here." ECF 6-1 at 25. State tort law is often "enforced" by private parties in state court with appeals to the U.S. Supreme Court. Indeed, the Texas Heartbeat Act is not even the only state law to create a private cause of action that the Fifth Circuit has considered in the last twenty years. *See Okpalobi*, 244 F.3d at 429 (reversing an injunction regarding Louisiana's similar law); *see also Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015) (noting "enforcement [occurs] only through private actions").

In any event, even if these were "unique circumstances," it would not justify the creation of a new equitable cause of action. As the Department of Justice has successfully urged when it is opposing novel equitable relief based on putatively unique circumstances, the Supreme Court's "traditionally cautious approach to equitable powers . . . leaves any substantial expansion of past practice to Congress," not lower federal courts. *Grupo Mexicano*, 527 U.S. at 329; *see Committee on the Judiciary of the U.S. House of Representatives v. McGahn*, 973 F.3d 121, 123–24 (D.C. Cir. Aug. 31, 2010), *vacated*, No. 19-5331 (D.C. Cir. July 13, 2021). The federal government's proposal to create a new equitable cause of action would violate not only *Grupo Mexicano* but also the Supreme Court's post-*Bivens* precedent.

When a plaintiff argues that "traditional equitable powers [do not] suffice to give necessary constitutional protection" and that "a damages remedy is necessary," the Supreme Court considers "a number of economic and governmental concerns." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017). Considering these concerns, the Supreme Court has not recognized a *Bivens* cause of action in more than forty years. *See id.* at 1854–55 (describing "the only instances in which the Court has approved of an implied damages remedy under the Constitution itself"). Those same considerations counsel against creation of new equitable causes of action beyond the "traditional equitable powers" federal courts have enjoyed since 1789. *Id.* at 1856. *See supra* n.6.

The federal government further suggests it must have a cause of action because "equity suffers not a right to be without a remedy," ECF 6-1 at 24 (cleaned up), but it ignores the available remedies, including raising constitutional defenses in state court and removal of any suits against federal officers. Moreover, the federal government is in no position to make this argument in light of its success persuading the Supreme Court rights often do not have remedies. For example, the Supreme Court has declined to create a *Bivens* cause of action even when there would be "no remedy whatsoever for" particular claims. *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988) (describing *Bush v. Lucas*, 462 U.S. 367, 386 (1983)); *see Spagnola v. Mathis*, 859 F.2d 223, 228 (D.C. Cir. 1988) (en banc) (on *Bush* and *Lucas*).

Notably, the federal government does *not* rely on the equitable cause of action that allows federal courts to "grant injunctive relief against state *officers* who are violating, or planning to violate, federal law." *Armstrong*, 575 U.S. at 326–27 (emphasis added); *see Ex parte Young*, 290 U.S. 123 (1908). Even when "no one . . . is arguing about sovereign immunity," "the second of *Ex parte Young*'s holdings" is relevant to "whether [the plaintiff] has an equitable cause of action." *Freedom From Religion Found., Inc. v. Mack*, No. 21-20279, 2021 WL 2887861, at *4 n.3 (5th Cir. July 9, 2021). But an *Ex parte Young* action cannot be brought against Texas. *See Green v. Mansour*, 474 U.S. 64, 68 (1985). It must be brought against a state officer enforcing the challenged law, not the State itself. *See Mi Familia Vota v.*

*Abbott*, 977 F.3d 461, 467 (5th Cir. 2020). Here, the federal government has not sued a state official at all, much less an "official [with] a sufficient 'connection' with the enforcement of an allegedly unconstitutional law." *Id.* at 467; *see also Mack*, 2021 WL 2887861, at *4. Moreover, there is no equitable tradition of the federal government invoking *Ex parte Young* to vindicate the constitutional rights of individuals. *See supra* Part I.C.1.

Likewise, although equity sometimes provides a cause of action that "enable[s] potential legal defendants to assert their defenses preemptively," John Harrison, *Ex Parte Young*, 60 Stan. L. Rev. 989, 999 (2008), the federal government does not and cannot invoke that proposition here. The federal government is not a potential defendant to a heartbeat suit in state court. Nor has the federal government asserted a defense by suing a would-be state-court plaintiff. Instead, it has sued Texas itself. Sovereign immunity aside, an equitable cause of action for an anti-suit injunction against Texas does not make any sense because Texas could not institute a heartbeat suit against anyone, much less the federal government. *See* Tex. Health & Safety Code § 171.207(a); *Whole Woman's Health*, 2021 WL 4128951, at *4 ("No enforcement power means no enforcement power.").

None of the cases that the federal government cites supports a cause of action here. The federal government relies on *Debs*, *see* ECF 6-1 at 22–23, but as explained above, the cited portions of that case were about whether the federal government had standing, not whether it had a cause of action. *See supra* Part I.C.2. *Debs* did not extensively analyze the federal government's cause of action because the Supreme Court was considering a petition for habeas corpus, not an appeal from the underlying injunction, but it was the well-known equitable cause of action to abate a public nuisance. "[T]he obstruction of a highway is a public nuisance, and a public nuisance has always been held subject to abatement at the instance of the government." *Debs*, 158 U.S. at 587 (citation omitted).

Since long before *Debs*, it had been "settled, that a court of equity may take jurisdiction in cases of public nuisance, by an information filed by the attorney general." *City of Georgetown v. Alexandria*

*Canal Co.*, 37 U.S. 91, 98 (1838). "The crux of the Debs decision" was "that the Government may invoke judicial power to abate what is in effect a nuisance detrimental to the public interest." *United Steelworkers of Am. v. United States*, 80 S. Ct. 177, 186 (1959) (Frankfurter, J., concurring).

The cause of action to abate a public nuisance, however, is no help to the federal government in this case. The Texas Heartbeat Act simply creates a private cause of action. That is not a public nuisance, and the federal government does not argue otherwise. *See Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 691–92 (5th Cir. 2021) (listing examples of public nuisances, including "loud and disturbing noises," "bad odors, smoke, dust and vibration").

Moreover, even if *Debs* had created a cause of action, it would not apply where "there is . . . no factor of interstate commerce." *Solomon*, 563 F.2d at 1129. "Where . . . there was no basis on which to claim that interstate commerce was obstructed by a denial of civil rights in violation of some congressional enactment, four courts have held that the government lacks nonstatutory authority to sue." *Id.* at 1128.

In this case, the federal government does not bring a commerce claim, nor does it cite any actual *evidence* that the Texas Heartbeat Act burdens interstate commerce. *Cf.* ECF 6-1 at 27 (citing unverified allegations from the complaint, which cannot support a preliminary injunction). What evidence that does exist in the record suggests that, if anything, the Act is stimulating rather than obstructing interstate travel. *See* ECF 6-8 ¶¶ 10–11 (noting increase in Texas women traveling to Oklahoma); *id.* ¶¶ 19–20 (same for Kansas). In any event, an intrastate regulation of medicine is not sufficiently connected to interstate commerce to trigger *Debs*. *See supra* Part I.C.2.

The federal government also cites *Wyandotte Transportation Co. v. United States*, 389 U.S. 191 (1967), *see* ECF 6-1 at 23, but that case was about implied causes of action found in statutes. Because the federal government does not claim a statutory cause of action here, *see supra* Part I.D.1, *Wyandotte* is irrelevant. In any event, "the unrefined analysis employed in *Wyandotte* is no longer an accurate

statement of the law." *Philadelphia*, 644 F.2d at 192. "In the mid–20th century, the Court followed a different approach to recognizing implied causes of action than it follows now." *Abbasi*, 137 S. Ct. at 1855; *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001).

Next, the federal government relies on *United States v. City of Jackson*, 318 F.2d 1 (5th Cir. 1963), but it fails to cite the opinions on rehearing, in which two members of the original three-judge panel partially withdrew their concurrences. *See* 320 F.2d 870 (5th Cir. 1963). Depriving the original opinion of a majority, those two judges specified that the federal government had "ample statutory authorization for the maintenance of th[e] suit" and therefore did "not reach the question whether the United States would have standing to sue under the Commerce Clause of the Constitution absent all of these enactments of the Congress." *Id.* at 872–73 (Bootle, J., specially concurring); *accord. id.* at 873 (Ainsworth, J., specially concurring).

*Jackson*, then, depended on "statutory authorization" to sue, *id.* at 872 (Bootle, J., specially concurring), not an extra-statutory authority that the federal government now claims. *See* ECF 6-1 at 23. In any event, the reasoning in the original majority opinion is not persuasive and has been "much criticized." *Mattson*, 600 F.2d at 1298.[8]

## C.    Congress Has Displaced Any Cause of Action

Finally, even if a cause of action could be inferred from some source, Congress displaced it by enacting a detailed remedial scheme for enforcement of Fourteenth Amendment rights that does not include this kind of suit by the federal government against States. "[A] court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied." *Lexmark Int'l,*

---

[8] The federal government also cites a series of cases in which the parties did not argue about whether a cause of action existed. *See* ECF 6-1 at 22–23. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)). That said, those cases generally involved proprietary or sovereign harms to the United States that at least arguably fell within established causes of action, unlike the federal government's attempt here to vindicate the individual constitutional rights of women in Texas.

*Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014).

There have been "three express refusals of modern Congresses to grant the Executive general injunctive powers in this field, which not only demonstrates explicit congressional intent not to create the power claimed here by the Attorney General but also reveals an understanding, unanimously shared by members of Congress and Attorneys General, that no such power existed." *Philadelphia*, 644 F.2d at 195. This Court should not attempt to override "congressional policy denying the federal government broad authority to initiate an action whenever a civil rights violation is alleged." *United States v. Mattson*, 600 F.2d 1295, 1299–300 (9th Cir. 1979).

The Constitution gives Congress, not the other branches, "power to enforce, by appropriate legislation," the Fourteenth Amendment. *See* U.S. Const. amend. XIV, § 5. Congress has long exercised that power. "Congress has created numerous mechanisms for the redress of denials of due process." *Philadelphia*, 644 F.2d at 192. In addition to providing for other forms of enforcement, Congress has created causes of action for both private citizens and the Attorney General. But none of those causes of action applies here.

Section 1983, for example, creates a private cause of action for private individuals to sue local governments as well as local and state officials to vindicate almost all federal-law rights. *See* 42 U.S.C. § 1983; *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Congress provided an analogous criminal statute empowering the federal government to bring criminal prosecutions. 18 U.S.C. §§ 241–42. But Congress has not provided a similarly broad *civil* cause of action *for* the federal government or *against* a State.

Instead, Congress has authorized the Attorney General to engage in civil litigation regarding constitutional rights in only limited circumstances. For example, the Attorney General is empowered to "institute . . . actions for injunctive relief . . . to implement the twenty-sixth article of amendment to the Constitution of the United States," which lowered the voting age. 52 U.S.C. § 10701(a)(1); *see*

U.S. Const. amend. XXVI. Congress has also authorized the Attorney General to bring lawsuits to protect certain other voting rights. *See* 52 U.S.C. §§ 10101(c), 10308(d), 10504, 20510. Further, the Attorney General is empowered to "intervene in" federal lawsuits "seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, religion, sex or national origin." 42 U.S.C. § 2000h-2.

Congress has also given the Attorney General express causes of action to enforce various statutory rights, including statutory rights related to abortion. "If the Attorney General of the United States has reasonable cause to believe that any person or group of persons is being, has been, or may be injured by conduct constituting a violation of [the Freedom of Access to Clinic Entrances Act], the Attorney General may commence a civil action in any appropriate United States District Court." 18 U.S.C. § 248(c)(2)(A); *see also* 42 U.S.C. §§ 2000a-5(a), 2000e-5(f)(1).

The one thing Congress has not done is give the Attorney General a cause of action to enforce constitutional abortion rights, let alone against a State. That omission, viewed in light of the detailed remedial scheme Congress has enacted for the vindication of related rights, prevents the federal government from suing here.

The unifying theme of the Supreme Court's cause-of-action precedent is that judicially recognized causes of action may not undermine the more limited remedial schemes that Congress has established. *See Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 499–501 (5th Cir. 2020) (Oldham, J., concurring); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 747 (2020). When identifying implied statutory causes of action, for example, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290. Similarly, "when alternative methods of relief are available, a *Bivens* remedy usually is not," especially if the absence of an express cause of action "might be more than 'inadvertent.'" *Abbasi*, 137 S. Ct. at 1849, 1863. And "where Congress has prescribed a detailed remedial scheme for the enforcement

against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young*." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 74 (1996). Even when interpreting an express cause of action like Section 1983, the Supreme Court is careful to ensure that the cause of action is not so broad that it would allow a plaintiff to "evade" a "requirement" of a more limited habeas remedy. *Preiser*, 411 U.S. at 489–90.

So too here. The more limited options that Congress has provided for enforcing constitutional rights generally and abortion rights in particular demonstrate that the federal government cannot have a cause of action here.

The federal government's response is that it must be allowed to bring suit because private individuals face hurdles to bringing pre-enforcement suits in lower federal courts. *See* ECF 6-1 at 25–26. But Congress anticipated this issue. In other cases, Congress has authorized the Attorney General "to institute for or in the name of the United States a civil action" when private individuals "are unable, in [the Attorney General's] judgment, to initiate and maintain appropriate legal proceedings." 42 U.S.C. § 2000b(a) (public facilities); *id.* § 2000c-6(a) (public schools). It did not do so here.

*     *     *

For decades, the Supreme Court has recognized that Congress is "perfectly competent . . . to authorize the United States to be the guardian of that public interest in a suit for injunctive relief." *United States v. Raines*, 362 U.S. 17, 27 (1960). But Congress has not authorized the federal government to sue in this case. If the Department of Justice wants to expand its authority, it should direct its requests to Congress, not this Court.

## CONCLUSION

Texas respectfully requests that the Court grant its motion to dismiss and dismiss the federal government's claims and this case with prejudice.

Date: September 29, 2021

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

*/s/ William T. Thompson*
WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

BETH E. KLUSMANN
Assistant Solicitor General
Tex. State Bar No. 24036918

NATALIE D. THOMPSON
Assistant Solicitor General
Tex. State Bar No. 24088529

ERIC A. HUDSON
Senior Special Counsel
Tex. State Bar No. 24059977

LEIF A. OLSON
Special Counsel
Tex. State Bar No. 24032801

BENJAMIN S. WALTON
Assistant Attorney General
Tex. State Bar No. 24075241

AMY S. HILTON
Assistant Attorney General
Tex. State Bar No. 24097834

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
will.thompson@oag.texas.gov
beth.klusmann@oag.texas.gov
natalie.thompson@oag.texas.gov
eric.hudson@oag.texas.gov
leif.olson@oag.texas.gov
benjamin.walton@oag.texas.gov
amy.hilton@oag.texas.gov

**COUNSEL FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on September 29, 2021, and that all counsel of record were served by CM/ECF.

*/s/ William T. Thompson*
WILLIAM T. THOMPSON