## UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

THE STATE OF TEXAS,

        Defendant.

Case No. 1:21-cv-796-RP

## UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

ARGUMENT .............................................................................................................................2

I.     THIS CASE IS A PROPER VEHICLE BY WHICH TO RESOLVE THE
       CONSTITUTIONALITY OF S.B. 8. ...............................................................................2

       A.     The United States has Authority to Bring this Suit and the Court has
              Jurisdiction to Hear It. ..........................................................................................2

              1.     It is Well Established that the United States has the Authority to Sue
                     in Equity to Protect the Public Interest. ..................................................3

              2.     The United States May Bring this Suit Because S.B. 8 Offends the
                     Sovereign Interests of the Federal Government. .....................................6

              3.     Texas's Remaining Arguments Against an Equitable Cause of Action
                     Under *Debs* are Unpersuasive. ...............................................................8

              4.     The United States has Standing to Bring this Suit. ...............................11

       B.     This Court Can Enter Injunctive Relief against the State of Texas, Which
              Will Redress the United States' Harms. ..............................................................12

              1.     The Court Should Stay All State Court Proceedings Brought Under
                     S.B. 8. ......................................................................................................15

              2.     An Injunction Against the State of Texas May Properly Extend to
                     Private Parties Filing S.B. 8 Enforcement Suits. ..................................15

              3.     An Injunction Against the State of Texas May Also Extend to Judges
                     and Clerks. ...............................................................................................20

              4.     Texas Does Not Dispute that this Court Can Enjoin Personnel
                     Involved in the Execution and Enforcement of State Judgments and
                     Other Administrative Roles. ....................................................................24

II.    THE UNITED STATES HAS SHOWN A LIKELIHOOD OF SUCCESS ON
       THE MERITS .................................................................................................................25

       A.     S.B. 8 Violates the Fourteenth Amendment and the Supremacy Clause. ...........25

       B.     S.B. 8 Is Preempted as Applied to the Federal Government and its
              Contractors. ........................................................................................................28

1.      S.B. 8 Purports to Restrict the Operations of the Federal
                Government.................................................................................28

        2.      S.B. 8 Interferes With Federal Contracts.............................................30

        3.      S.B. 8 Violates Medicaid Regulations....................................................31

III.    THE UNITED STATES WILL SUFFER IRREPARABLE HARM ABSENT AN
        INJUNCTION..............................................................................................................31

        A.      A Preliminary Injunction Would Prevent Further Irreparable Harm.........................31

        B.      There Is No Adequate Remedy at Law.....................................................35

IV.     THE PUBLIC INTEREST AND BALANCE OF EQUITIES FAVOR AN
        INJUNCTION..............................................................................................................37

V.      THE SCOPE OF THE REQUESTED INJUNCTION IS APPROPRIATE.....................38

VI.     THE COURT SHOULD DENY TEXAS'S REQUESTED STAY ......................................41

CONCLUSION.......................................................................................................................41

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adickes v. S. H. Kress & Co.,*
  398 U.S. 144 (1970) ......................................................................................................19

*Allstate Ins. Co. v. Abbott,*
  495 F.3d 151 (5th Cir. 2007) ...................................................................................2, 12, 13

*Am. Airlines, Inc. v. Herman,*
  176 F.3d 283 (5th Cir. 1999) ..........................................................................................9

*American Postal Workers Union, AFL-CIO v. United States Postal Services,*
  766 F.2d 715 (2d Cir. 1985) ...........................................................................................34

*Arizona v. United States,*
  567 U.S. 387 (2012) ...................................................................................................3, 16

*Bauer v. Texas,*
  341 F.3d 352 (5th Cir. 2003) ..........................................................................................21

*Bowen v. Doyle,*
  880 F. Supp. 99 (W.D.N.Y. 1995)...................................................................................22

*Boyle v. United Techs. Corp.,*
  487 U.S. 500 (1988) .......................................................................................................31

*Brown v. Plata,*
  563 U.S. 493 (2011) .......................................................................................................39

*Cal. Pharmacists Ass'n v. Maxwell-Jolly,*
  563 F.3d 847 (9th Cir. 2009), *vacated on other grounds by*
  *Douglas v. Indep. Living Ctr. of S. Cal., Inc.,* 565 U.S. 606 (2012) .........................32, 38

*Caliste v. Cantrell,*
  937 F.3d 525 (5th Cir. 2019) ..........................................................................................23

*Campaign for S. Equal. v. Bryant,*
  64 F. Supp. 3d 906 (S.D. Miss. 2014), *aff'd,* 791 F.3d 625 (5th Cir. 2015) .........................34

*Campaign for S. Equal. v. Miss. Dep't of Health and Human Services,*
  175 F.Supp.3d 691 (S.D. Miss. 2016) .............................................................................34

*Chiafalo v. Inslee,*
  224 F. Supp. 3d 1140 (W.D. Wash. 2016) ......................................................................34

*City of El Cenizo v. Texas,*
  264 F. Supp. 3d 744 (W.D. Tex. 2017), *aff'd in part and vacated in part,*
  *City of El Cenizo v. Texas,* 890 F.3d 164 (5th Cir. 2018) ...............................................33

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ...................................................................................................19

*Cooper v. Aaron*,
   358 U.S. 1 (1958) .....................................................................................................14

*Corr. Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001) .....................................................................................................8

*D.C. Ass'n of Chartered Pub. Sch. v. Dist. of Columbia*,
   930 F.3d 487 (D.C. Cir. 2019) ..................................................................................9

*David v. Passman*,
   442 U.S. 228 (1979) ..................................................................................................9

*Deerfield Med. Ctr. v. Deerfield Beach*,
   661 F.2d 328 (5th Cir. Unit B Nov. 1981) ...............................................................32

*Doe v. Ceci*,
   517 F.2d 1203 (7th Cir. 1975) ..................................................................................22

*Ex parte Lennon*,
   166 U.S. 548 (1897) ..................................................................................................17

*Ex parte Young*,
   209 U.S. 123 (1908) .............................................................................................6, 23

*FDIC v. Faulkner*,
   991 F.2d 262 (5th Cir. 1993) ....................................................................................14

*Fed. Home Loan Bank Bd. v. Empie*,
   778 F.2d 1447 (10th Cir. 1985) ...........................................................................30, 33

*Fla. E. Coast Ry. v. United States*,
   348 F.2d 682 (5th Cir. 1965), *aff'd sub nom. Bhd. of Ry. & S.S. Clerks, Freight Handlers, Exp.
   & Station Emps. AFL-CIO v. Fla. E. Coast Ry.*, 384 U.S. 238 (1966).......................5

*Fletcher v. Peck*,
   10 U.S. (6 Cranch) 87 (1810) .....................................................................................7

*Free Enter. Fund v. PCAOB*,
   561 U.S. 477 (2010) ...................................................................................................9

*Gartrell Constr. Inc. v. Aubry*,
   940 F.2d 437 (9th Cir. 1991) ....................................................................................29

*Geo Grp., Inc. v. Newsom*,
   493 F. Supp. 3d 905 (S.D. Cal. 2020) ..................................................................30, 33

*Gomez-Perez v. Potter,*
  553 U.S. 474 (2008) .................................................................................................. 10

*Gonzales v. Carhart,*
  550 U.S. 124 (2007) .................................................................................................. 26

*Green Valley Special Util. Dist. v. City of Schertz,*
  969 F.3d 460 (5th Cir. 2020) ...................................................................................... 9

*Greyhound Lines, Inc. v. City of New Orleans,*
  29 F. Supp. 2d 339 (E.D. La. 1998) ........................................................................ 32

*Hancock v. Train,*
  426 U.S. 167 (1976) .................................................................................................. 30

*Heckman v. United States,*
  224 U.S. 413 (1912) ............................................................................................... 4, 5

*Hernandez v. Mesa,*
  140 S. Ct. 735 (2020) ................................................................................................. 9

*In re Debs,*
  158 U.S. 564 (1895) ........................................................................................... 3, 4, 5, 6

*In re Grand Jury Subpoena,*
  267 F. Supp. 3d 741 (N.D. Tex. 2016), *aff'd,* 866 F.3d 231 (5th Cir. 2017) ........... 18

*In re Grand Jury Subpoena,*
  866 F.3d 231 (5th Cir. 2017) .................................................................................... 15

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945) .................................................................................................. 20

*ITT Cmty. Dev. Corp. v. Barton,*
  569 F.2d 1351 (5th Cir. 1978) .................................................................................. 20

*Jackson Women's Health Org. v. Dobbs,*
  945 F.3d 265 (5th Cir. 2019), *cert. granted,* No. 19-1392, 2021 WL 1951792
  (U.S. May 17, 2021) ...................................................................................... 25, 26, 39

*Jackson Women's Health Org. v. Dobbs,*
  951 F.3d 246 (5th Cir. 2020) .................................................................................... 26

*June Med. Servs. LLC v. Russo,*
  140 S. Ct. 2103 (2020) ......................................................................................... 26, 27

*K.P. v. LeBlanc,*
  627 F.3d 115 (5th Cir. 2010) .................................................................................... 17

*Kinney-Coastal Oil Co. v. Kieffer,*
    277 U.S. 488 (1928) ...................................................................................................... 39

*Larson v. Valente,*
    456 U.S. 228 (1982) ...................................................................................................... 17

*Lugar v. Edmondson Oil Co.,*
    457 U.S. 922 (1982) ...................................................................................................... 19

*Massachusetts v. Mellon,*
    262 U.S. 447 (1923) ........................................................................................................ 2

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) ...................................................................................... 37

*Mireles v. Waco,*
    502 U.S. 9 (1991) .......................................................................................................... 22

*Mitchell v. Pidcock,*
    299 F.2d 281 (5th Cir. 1962) ...................................................................................... 37

*Monroe v. Pape,*
    365 U.S. 167 (1961) ...................................................................................................... 10

*Morales v. Trans World Airlines, Inc.,*
    504 U.S. 374 (1992) ...................................................................................................... 37

*Muskrat v. United States,*
    219 U.S. 346 (1911) ...................................................................................................... 11

*Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.,*
    628 F.3d 837 (7th Cir. 2010) ...................................................................................... 16

*Ohio v. Yellen,*
    No. 1:21-cv-181, 2021 WL 1903908 (S.D. Ohio May 12, 2021) ................................. 34, 35

*Okpalobi v. Foster,*
    244 F.3d 405 (5th Cir. 2001) ................................................................................. 11, 12

*Pension Ben. Guar. Corp. v. LTV Corp.,*
    496 U.S. 633 (1990) ...................................................................................................... 10

*Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott,*
    734 F.3d 406 (5th Cir. 2013) ...................................................................................... 41

*Planned Parenthood of Se. Pa. v. Casey,*
    505 U.S. 833 (1992) ..........................................................................................26, 27, 28

*Porter v. Warner Holding Co.*,
    328 U.S. 395 (1946) ...................................................................................................39

*Powell's Books, Inc. v. Kroger*,
    622 F.3d 1202 (9th Cir. 2010) .................................................................................29

*Pulliam v. Allen*,
    466 U.S. 522 (1984) ....................................................................................22, 23, 24

*Regal Knitwear Co. v. NLRB*,
    324 U.S. 9 (1945) .....................................................................................................17

*Rowe v. N.H. Motor Transp. Ass'n*,
    552 U.S. 364 (2008) .................................................................................................32

*Sanitary Dist. of Chi. v. United States*,
    266 U.S. 405 (1925) ............................................................................................. 4, 5

*Silicon Hills Campus, LLC v. Tuebor REIT Sub, LLC*,
    No. 1:20-CV-1201-RP, 2021 WL 783554 (W.D. Tex. Mar. 1, 2021) ....................41

*Strickland v. Alexander*,
    772 F.3d 876 (11th Cir. 2014) .................................................................................22

*Student Loan Servicing All. v. District of Columbia*,
    351 F. Supp. 3d 26 (D.D.C. 2018) ..........................................................................31

*Tel. & Data Sys., Inc. v. FCC*,
    19 F.3d 42 (D.C. Cir. 1994) .....................................................................................13

*Tex. Midstream Gas Servs., LLC v. City of Grand Prairie*,
    608 F.3d 200 (5th Cir. 2010) ...................................................................................32

*Texas v. Department of Labor*,
    929 F.3d 205 (5th Cir. 2019) ...................................................................................18

*Trans World Airlines v. Mattox*,
    897 F.2d 773 (5th Cir. 1990) ............................................................................. 32, 37

*United States v. Alabama*,
    691 F.3d 1269 (11th Cir. 2012) .....................................................................32, 37, 38

*United States v. Am. Bell Tel. Co.*,
    128 U.S. 315 (1888) ........................................................................................ 4, 5, 10

*United States v. Bird*,
    124 F.3d 667 (5th Cir. 1997) ............................................................................... 7, 8

*United States v. California,*
    921 F.3d 865 (9th Cir. 2019) ..................................................................................................... 30, 31

*United States v. City of Arcata,*
    629 F.3d 986 (9th Cir. 2010) ..................................................................................................... 29

*United States v. City of Jackson,*
    318 F.2d 1 (5th Cir. 1963) ......................................................................................................... 5

*United States v. City of Jackson,*
    320 F.2d 870 (5th Cir. 1963) ..................................................................................................... 5

*United States v. City of Philadelphia,*
    644 F.2d 187 (3d Cir. 1980) ..................................................................................................... 7, 10

*United States v. Composite State Bd. of Med. Examiners,*
    656 F.2d 131 (5th Cir. Unit B Sept. 1981) ............................................................................... 29, 33

*United States v. Hall,*
    472 F.2d 261 (5th Cir. 1972) ..................................................................................................... 17, 18

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO,*
    907 F.2d 277 (2d Cir. 1990) ..................................................................................................... 20

*United States v. Lewis,*
    411 F.3d 838 (7th Cir. 2005) ..................................................................................................... 18

*United States v. Mattson,*
    600 F.2d 1295 (9th Cir. 1979) ................................................................................................... 7

*United States v. Morros,*
    268 F.3d 695 (9th Cir. 2001) ..................................................................................................... 29

*United States v. New York Tel. Co.,*
    434 U.S. 159 (1977) ................................................................................................................... 20

*United States v. Pa., Dep't of Env't Res.,*
    923 F.2d 1071 (3d Cir. 1991) ..................................................................................................... 29

*United States v. San Jacinto Tin Co.,*
    125 U.S. 273 (1888) ................................................................................................................... 4

*United States v. Solomon,*
    563 F.2d 1121 (4th Cir. 1977) ................................................................................................... 7

*United States v. Texas,*
    356 F. Supp. 469 (E.D. Tex. 1972) ........................................................................................... 15

*United States v. United Mine Workers of Am.*,
  330 U.S. 258 (1947) ............................................................................................................... 39

*United States v. Washington*,
  459 F. Supp. 1020 (W.D. Wash. 1978) ............................................................................... 15

*United States v. Washington*,
  971 F.3d 856 (9th Cir. 2020), *as amended*, 994 F.3d 994 (9th Cir. 2020) ...................... 3

*United States v. Wells*,
  519 U.S. 482 (1997) ............................................................................................................... 10

*Valle Del Sol Inc. v. Whiting*,
  732 F.3d 1006 (9th Cir. 2013) ............................................................................................. 38

*Vendo Co. v. Lektro-Vend Corp.*,
  433 U.S. 623 (1977) ............................................................................................................... 18

*Vermont Agency of Natural Resources v. U.S. ex rel Stevens*,
  529 U.S. 765 (2000) ................................................................................................................. 2

*Waffenschmidt v. MacKay*,
  763 F.2d 711 (5th Cir. 1985) ...................................................................................... 16, 20

*Whole Woman's Health v. Hellerstedt*,
  136 S. Ct. 2292 (2016), as revised (June 27, 2016) ........................................................... 39

*Whole Woman's Health v. Jackson*,
  ___F.4th___, 2021 WL 4128951 (5th Cir. Sept. 10, 2021) ............................................. 22

*Whole Women's Health v. Jackson*,
  1:21-cv-616, 2021 WL 3821062 (W.D. Tex. Aug. 25, 2021) .......................................... 25

*Wyandotte Transp. Co. v. United States*,
  389 U.S. 191 (1967) ................................................................................................................. 4

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
  395 U.S. 100 (1969) ............................................................................................................... 16

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017) ............................................................................................................. 9

**STATUTES**

5 U.S.C. § 702 ......................................................................................................................... 13

28 U.S.C. § 2283 ..................................................................................................................... 15

42 U.S.C. § 1983 ..................................................................................................................... 23

Tex. Gov't Code § 411.201.................................................................................................21

Tex. Health & Safety Code § 171.204...............................................................................25

Tex. Health & Safety Code § 171.208.........................................................................18, 19

Tex. Health & Safety Code § 171.209...............................................................................27

Tex. Health & Safety Code § 171.212...............................................................................39

Tex. Prop. Code Ann. § 52.004 .........................................................................................25

## UNITED STATES CONSTITUTION

U.S. Const. art. VI...............................................................................................................7

## RULES

Fed. R. Civ. P. 65 ...............................................................................................................21

Tex. R. Civ. P. 622 .............................................................................................................24

Tex. R. Civ. P. 629 .............................................................................................................24

## REGULATIONS

42 C.F.R. § 440.230............................................................................................................31

## OTHER AUTHORITIES

Alan Braid, Opinion: Why I Violated Texas's Extreme Abortion Ban (Sept. 18, 2021),
    https://www.washingtonpost.com/opinions/2021/09/18/texas-abortion-provider-
    alan-braid/ ....................................................................................................... 27, 28

Kurtis Lee & Jaweed Kaleem, "The new Texas abortion law is becoming a model for other
    states," Los Angeles Times (Sept. 18, 2021),
    https://www.latimes.com/world-nation/story/2021-09-18/texas-abortion-united-
    states-constitution .................................................................................................32

Wright & Miller, 13 Fed. Prac. & Proc. Juris. § 3529.1 (3d ed.)......................................12

# INTRODUCTION

It is every state's obligation to adhere to the United States Constitution, as authoritatively construed by the Supreme Court.  The individual rights guaranteed by the Constitution cannot be nullified—their exercise deterred, and their promises rendered empty—if only a state government is sufficiently brazen to enact a statute designed to evade judicial review.

Texas's response to the United States' motion for preliminary injunction demonstrates why an injunction is necessary and in the public interest.  On Texas's telling, a state is free to enact a law with both the purpose and effect of suppressing the exercise of federal constitutional rights.  If the state imposes penalties that are sufficiently punitive to deter constitutionally protected conduct and also outsources enforcement to private parties, then there is nothing federal courts can do to prevent wholesale violations of constitutional rights.  No individual plaintiff can invoke the Court's jurisdiction because of the Eleventh Amendment.  And according to Texas, the United States cannot sue in its own courts to ensure the supremacy of federal law, because (Texas contends) the federal government is unaffected by the State's systematic suppression of federal constitutional rights and in any event has no authority to challenge it.

Texas makes virtually no effort to justify its intentional defiance of the Constitution on the merits.  Nor could it: If Texas wanted in good faith to ask the Supreme Court to overrule *Roe* and *Casey*, none of the unusual features of S.B. 8 would have been necessary.  It could simply have banned all abortions after the detection of a fetal heartbeat, acquiesced in an injunction in the lower courts, and asked the Supreme Court to reconsider its precedents.  But that is not what Texas did, and the reason is plain.  S.B. 8's novel enforcement scheme is calculated to accomplish what no state should be able to do in our federal system:  deter, suppress, and render moot rights guaranteed by the Constitution of the United States.  The State does not dispute that S.B. 8 has virtually eliminated pre-viability abortions after six weeks of pregnancy in the State.  Moreover, the approach Texas has taken need not be confined to the abortion context.  If this mechanism works here, it would serve as a blueprint for the suppression of nearly any other constitutional right recognized by the Supreme Court but resented by a state government.

1

Texas enacted S.B. 8.  And the State—through its agencies, officers, and agents—is accountable for it.  Texas may have succeeded in suppressing federal constitutional rights in a way that no individual person can easily challenge.  But Texas enjoys no immunity from suit by the United States.  For the reasons given in our motion and explained in greater detail below, this Court can and should enjoin enforcement of S.B. 8.

## ARGUMENT

## I.   THIS CASE IS A PROPER VEHICLE BY WHICH TO RESOLVE THE CONSTITUTIONALITY OF S.B. 8.

### A.  The United States Has Authority To Bring This Suit and the Court Has Jurisdiction to Hear It.

As our opening brief explains, the United States brought this suit because S.B. 8 causes it two forms of concrete harm.  First, S.B. 8 undermines the supremacy of the Federal Constitution by insulating a plainly unconstitutional law within an enforcement scheme designed to preclude judicial review.  Second, S.B. 8 interferes with federal government operations in violation of the preemption and intergovernmental immunity doctrines.  These concrete injuries—plainly caused by S.B. 8, and redressable by an injunction against its enforcement—support Article III jurisdiction.  *See Vermont Agency of Natural Resources v. U.S. ex rel Stevens*, 529 U.S. 765, 771 (2000) (it is "beyond doubt" that the United States suffers an "injury to its sovereignty arising from violation of its laws"); *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 159 (5th Cir. 2007) (holding, in a case in which the State had waived its Eleventh Amendment immunity, "[b]ecause the state itself [was] a party, causation and redressability [were] easily satisfied").[1]

---

[1]  Texas additionally argues that the United States lacks *parens patriae* standing and that only States may pursue that theory of standing.  Def.'s Mot. to Dismiss, Resp. to Pl.'s Mot. for a Prelim. Inj., & Mot. for Stay Pending Appeal, at 18-19, ECF No. 43 ("Dkt. 43").  That is wrong.  *Cf. Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923) ("[I]t is no part of [a state's] duty or power to enforce [citizens'] rights in respect of their relations with the federal government.  In that field it is the United States, and not the state, which represents them as *parens patriae*, when such representation becomes appropriate; and to the former, and not to the latter, they must look for such protective measures as flow from that status.").  In any case, the United States' authority for bringing this lawsuit is not principally founded in its role as *parens patriae* because it is suing to vindicate the government's own interests.

Texas appears not to question the government's authority to bring its preemption and intergovernmental immunity claims that are grounded in equity and the Supremacy Clause.[2]  And for good reason:  The federal government has well-established authority to sue states directly—not their officials—to challenge state laws that offend the doctrines of conflict preemption or intergovernmental immunity.  *See, e.g.*, *Arizona v. United States*, 567 U.S. 387 (2012) (challenge to state law as preempted); *United States v. Washington*, 971 F.3d 856 (9th Cir. 2020), *as amended*, 994 F.3d 994 (9th Cir. 2020) (challenge to state law as violating doctrine of intergovernmental immunity).  Texas instead focuses its fire on the United States' request for relief as to its first injury—the harm to the supremacy of federal law.  Texas's arguments, however, are inconsistent with the well-established right to seek equitable relief where federal interests are implicated.

1.  **It Is Well Established That the United States Has the Authority to Sue In Equity to Protect the Public Interest.**

Texas questions the government's authority to challenge S.B. 8 on the ground that it violates the Fourteenth Amendment in a manner designed to escape the supremacy of federal law.  But the United States' authority to challenge S.B. 8 flows from established Supreme Court precedent.

In *In re Debs*, 158 U.S. 564 (1895), the Supreme Court recognized the government's authority to sue in equity to seek an injunction against the Pullman rail strike.  The Court explained that "[e]very government, intrusted by the very terms of its being with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other, and it is no sufficient answer to its appeal to one of those courts that it has no pecuniary interest in the matter."  *Id.* at 584.  Although "it is not the province of the government to interfere in any mere matter of private controversy between individuals," the Court continued:

> [W]henever the wrongs complained of are such as affect the public at large, and are in respect of matters which by the constitution are intrusted to the care of the nation, and concerning which the nation owes the duty to all the citizens of securing to them

---

[2] The Intervenors' brief does not raise "any facts and arguments not raised by the parties," as required by the Court's order.  *See* Dkt. 40 at 2.  It simply repeats a subset of Texas's arguments. *Compare* Dkt. 43 at 45-49, *with* Dkt. 44 at 18-20.

their common rights, then the mere fact that the government has no pecuniary interest in the controversy is not sufficient to exclude it from the courts, or prevent it from taking measures therein to fully discharge those constitutional duties.

*Id.* at 586.

*Debs* reflects the "general rule that the United States may sue to protect its interests," *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967), and that right to sue is not limited to the protection of statutory (as opposed to constitutional) interests and does not depend on the existence of a statutory cause of action. The Supreme Court has routinely recognized the government's authority to seek equitable relief against threats to various federal interests without an express statutory cause of action. In addition to allowing federal challenges to state laws that conflict with federal law or hinder federal operations (as discussed above), the Court has allowed federal suits to protect the public from fraudulent patents, *United States v. Am. Bell Tel. Co.*, 128 U.S. 315 (1888); to protect tribes, *Heckman v. United States*, 224 U.S. 413 (1912); and to carry out the Nation's treaty obligations, *Sanitary Dist. of Chi. v. United States*, 266 U.S. 405, 426 (1925). *Debs* simply recognizes that the United States has an equally cognizable interest at stake in violations of federal law—including the rights protected by the Federal Constitution—that "affect the public at large, and are in respect of matters which by the constitution are intrusted to the care of the nation, and concerning which the nation owes the duty to all the citizens of securing to them their common rights." 158 U.S. at 586.

Texas does not meaningfully engage with the *Debs* line of precedent, and its argument as to why *Debs* is inapplicable disregards much of the language in that opinion. Texas focuses on *Debs*'s recognition that the United States could sue to protect its proprietary interest in the mails and its statutory authority over rail commerce. *See id.* at 583–84 (citing *United States v. San Jacinto Tin Co.*, 125 U.S. 273, 277 (1888), one of many cases recognizing an equitable cause of action for the United States to sue to protect proprietary interests). From this, Texas asserts that the ability of the United States is limited to bringing a suit only where it maintains a proprietary interest or where a statute affords the government particular powers. Dkt. 43 at 20-21, 28-29. But the *Debs* Court declined to "place [its] decision upon" the narrow proprietary-interest ground, 158 U.S. at 584, and its articulation of the broader holdings discussed above in no way depended on a statute. The Court's broad rationale was

not "dicta," as Texas suggests (Dkt. 43 at 20); it was the basis on which the Court ruled. Nor is it unique to *Debs*. As noted above, the Supreme Court has recognized the government's authority to seek equitable relief without express statutory authorization in other contexts. *See, e.g.*, *Am. Bell*, 128 U.S. at 367 (conceiving of "[t]he essence of the right of the United States" as one that would allow the United States to sue to vindicate "its obligation to protect the public," which in *American Bell* included protecting the public "from the monopoly of the patent which was procured by fraud").[3]

Texas also frames *Debs* as a case "about whether the federal government had standing, not whether it had a cause of action." Dkt. 43 at 28. But that understanding cannot be reconciled with the language of *Debs* itself, which speaks to the government's "*right to apply* to its own courts for any proper assistance in the exercise of" its powers and duties, 158 U.S. at 584 (emphasis added), rather than the courts' *power* to grant such assistance upon application. And it would be inconsistent with the Supreme Court's subsequent observation that the United States is "entitled to invoke the equity jurisdiction of its courts," "in order that it might properly discharge its duty, and that it might obtain adequate relief, suited to the nature of the case, in accordance with the principles of equity." *Heckman*, 224 U.S. at 439; *see also Sanitary Dist. of Chi.*, 266 U.S. at 426 ("The Attorney General by virtue of his office may bring this proceeding and no statute is necessary to authorize the suit.").

Texas recognizes that the United States' suit in *Debs* did, in fact, involve an equitable cause of action. *See* Dkt. 43 at 28-29. Contrary to Texas's understanding, though, the federal government's authority to bring suit in *Debs* did not turn on the existence of an "equitable cause of action to abate

---

[3] In our opening brief, we identified the Fifth Circuit's decision in *United States v. City of Jackson*, 318 F.2d 1 (5th Cir. 1963), as an example of an action properly brought by the United States, as sovereign, to challenge Fourteenth Amendment violations also affecting interstate commerce. Texas asserts that *Jackson*'s subsequent history casts doubt on its currency, citing concurring opinions accompanying the denial of rehearing *en banc* that acknowledged that a narrower, statutory cause of action was also available. *See United States v. City of Jackson*, 320 F.2d 870 (5th Cir. 1963) (per curiam). But that denial of rehearing *en banc* does not and cannot overrule the precedential value of *Jackson*. Even accepting Texas's position, the case remains instructive, as shown where a later panel of the Fifth Circuit relied on *Jackson* in similarly holding that the United States may sue to prevent harms to federal interests in interstate commerce. *See Fla. E. Coast Ry. v. United States*, 348 F.2d 682, 685 (5th Cir. 1965), *aff'd sub nom. Bhd. of Ry. & S.S. Clerks, Freight Handlers, Exp. & Station Emps. AFL-CIO v. Fla. E. Coast Ry.*, 384 U.S. 238 (1966).

a public nuisance." *Id.* at 28.  Instead, as discussed above, *Debs* recognized the federal government's more general authority to sue "whenever the wrongs complained of are such as affect the public at large, and are in respect of matters which by the constitution are intrusted to the care of the nation, and concerning which the nation owes the duty to all the citizens of securing to them their common rights."  158 U.S. at 586.

### 2.   The United States May Bring This Suit Because S.B. 8 Offends the Sovereign Interests of the Federal Government.

This is precisely the sort of suit that the United States can bring under the rationale of *Debs*. S.B. 8 offends the sovereign interests of the federal government in three ways.

*First*, as discussed above, S.B. 8's procedural provisions have the effect—and, indeed, the purpose, Dkt. 8 at 3—of frustrating federal judicial review of the constitutionality of S.B. 8's substantive provisions.  Through Section 1983 and the Declaratory Judgment Act, Congress has provided individuals with the right to vindicate their constitutional rights, and to do so *before* those rights are infringed.  Dkt. 8 at 14 (citing cases).

S.B. 8, however, is structured to limit, or entirely eliminate, the ability of pregnant persons to seek relief for the deprivation of their constitutional right to a pre-viability abortion.  It does so by foreclosing enforcement by executive officials of the State, thereby removing the traditional class of defendants that a woman may sue for equitable relief for violating her constitutional rights, *see Ex parte Young*, 209 U.S. 123 (1908);  precluding S.B. 8 claims against a pregnant woman herself, thereby limiting the ability of such an individual to assert her constitutional rights even defensively in an S.B. 8 lawsuit; and creating onerous financial and litigation burdens to discourage health care providers from violating the statute, thereby limiting the extent to which S.B. 8 ever faces meaningful judicial scrutiny at all.  *See* Dkt. 8 at 2-6.

Indeed, it is the very presence of Texas's collusive scheme to prevent individuals from vindicating their constitutional rights that crucially distinguishes this case from those cited by Texas. Dkt. 43 at 21, 29-31 (citing *United States v. Solomon*, 563 F.2d 1121, 1127 (4th Cir. 1977); *United States v. City of Philadelphia*, 644 F.2d 187, 195 (3d Cir. 1980); *United States v. Mattson*, 600 F.2d 1295, 1299–300 (9th

Cir. 1979)).  In none of those cases did a state deliberately legislate to prevent the rights-holders from seeking judicial review for the deprivation of their constitutional rights.

If states can insulate their unconstitutional enactments from federal judicial review through the mechanisms established by Congress, then States can effectively disregard the rights protected by the Federal Constitution, thus violating the Framers' dictate that "[t]his Constitution … shall be the supreme Law of the Land," U.S. Const. art. VI.  The proposition that no state may enact statutes in violation of the Federal Constitution is fundamental to our federal system.  *See, e.g.*, *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 136 (1810) ("Georgia cannot be viewed as a single, unconnected, sovereign power, on whose legislature no other restrictions are imposed than may be found in its own constitution.").  And the United States has a weighty interest in preserving that basic character of the Union and in ensuring the supremacy of federal law.

*Second*, S.B. 8 has significant effects on interstate commerce, hindering the flow of commerce in a manner that (as in *Debs*) implicates federal concerns.  As our opening brief explains, S.B. 8 burdens the interstate commercial activities of, for example, insurance companies that ordinarily reimburse plan holders for the provision of abortions, banks that process payments for abortions, and the manufacturers of drugs or devices used in the provision of abortions.  And S.B. 8 has driven persons seeking abortions to providers outside Texas, overburdening out-of-state clinics and creating backlogs for care.  The Fifth Circuit has already recognized that a State's regulation of abortion occurring within its borders may have a "substantial effect on interstate commerce," as it concluded in upholding the Freedom of Access to Clinic Entrances ("FACE") Act—which criminalizes various kinds of interference with abortion clinic access—as an appropriate exercise of Congress's authority under the Commerce Clause.  *United States v. Bird*, 124 F.3d 667, 677–78 (5th Cir. 1997).  The court explained that interference with clinic access could have a substantial effect "on the availability of abortion-related services in the national market" by causing "women to travel from the states where abortion services were interrupted to clinics, often out of state, that were able to provide unobstructed abortion services," thus potentially increasing "the cost of abortion services" and reducing "the availability of abortion services at the unobstructed clinics."  *Id.* at 678, 681.  Unrebutted evidence before this Court

demonstrates that S.B. 8 has the same sort of effect on interstate commerce.  Texas persons are flooding abortion clinics in neighboring states such as Oklahoma and New Mexico, disrupting the ability of persons in those other states to obtain abortion care.  Dkt. 8 at 10-11.  Thus, Texas's assertion that *Debs* is inapplicable to this suit because it does not involve interstate commerce is belied by the evidentiary record.

*Third*, S.B. 8 interferes with federal programs and operations, as discussed below.  *See infra* pp. 39-40.  These federal interests likewise support the United States' request for equitable relief under *Debs*.  For example, the Federal Bureau of Prisons ("BOP"), the U.S. Marshals Services ("USMS"), and the Office of Refugee Resettlement ("ORR") each have obligations under federal law to facilitate access to abortion for the individuals in their custody, but the agencies do not themselves administer abortion care.  *See id.*  So long as Texas maintains a legal regime that unconstitutionally eliminates most pre-viability abortion access, these agencies will be impeded in meeting their legal obligations.  At a minimum, Texas's decision may require frequent transfers of persons in these agencies' custody out of the State whenever necessary to permit them access to abortion care that is unconstitutionally outlawed in Texas.  *See id.*

### 3.   Texas's Remaining Arguments Against An Equitable Cause of Action Under *Debs* Are Unpersuasive.

*Debs* and its progeny fit within the broader body of precedent that recognizes the authority of federal courts, in appropriate circumstances like those presented here, to entertain suits for equitable relief even in the absence of an express or implied cause of action.  "[I]njunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally."  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001).  Thus, "a cause of action routinely exists for" claims "to enjoin official conduct that conflicts with the federal Constitution."  *D.C. Ass'n of Chartered Pub. Sch. v. Dist. of Columbia*, 930 F.3d 487, 493 (D.C. Cir. 2019) (citation omitted); *see also Free Enter. Fund v. PCAOB*, 561 U.S. 477, 491 n.2 (2010).  Similarly, in certain circumstances, federal courts permit suits to enjoin plain violations of unambiguous laws where no other cause of action will provide a "meaningful and adequate opportunity for judicial review."  *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 293 (5th Cir.

1999).  Federal courts also entertain suits by the United States to assert its interests as the supreme sovereign.  *See supra* Section I.A.1.

The same principles of equity that support those suits support the United States' suit against Texas.  Texas has interfered with the sovereign interests of the United States by deliberately acting to prevent Texans from exercising the rights secured to them by the Federal Constitution while obstructing their ability to seek meaningful judicial relief from that deprivation using the tools for doing so established by Congress.  Texas is wrong to insist that no equitable cause of action is available to the United States in this case.

Texas's invocation of cases where courts declined to imply causes of action under the Constitution does not undermine the point.  Dkt. 43 at 23 n.7.  Most critically, the Supreme Court cases cited involved alleged implied rights of action at law *for damages*, not suits for equitable relief.  *See David v. Passman*, 442 U.S. 228 (1979); *Hernandez v. Mesa*, 140 S. Ct. 735 (2020); *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).  The Supreme Court has explained that expanding the implied *Bivens* cause of action for damages is "disfavored."  *Ziglar*, 137 S. Ct. at 1857.  In contrast, an equitable suit under the Constitution is not lodged pursuant to a cause of action that is "'implied,'" but rather "exists in the body of equitable doctrine in the same way that a cause of action for breach of contract is not 'implied' from the contract but exists in the body of common law."  *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 493 n.2 (5th Cir. 2020) (Elrod, J., concurring).  None of the *Bivens* cases that Texas cites call into question the well-established body of equitable doctrine under which federal courts permit plaintiffs, including the United States, to sue to enjoin plainly unconstitutional action.  *Free Enter. Fund*, 561 U.S. at 491 n.2.

Texas further contends, Dkt. 43 at 30-33, that, by creating certain express statutory causes of action for the enforcement of constitutional and statutory rights, Congress impliedly precluded the type of equitable claim that the United States is bringing here.  Again, however, the equitable cause of action that the United States is bringing is distinct from implied causes of action for damages, which the Supreme Court and other courts have most often hesitated to recognize.

9

And even if this suit were properly thought of as being based on an implied cause of action, it would be improper to read Congress's choice not to codify an express governmental cause of action for the enforcement of constitutional rights as an expression of congressional intent that the *Executive* is forbidden from bringing such suits.  First, the Supreme Court has "frequently cautioned that [i]t is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law." *United States v. Wells*, 519 U.S. 482, 496 (1997) (quotation marks omitted).  That is because, as a general matter, various "'equally tenable inferences' may be drawn from [congressional] inaction." *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990).  Second, Congress did not consider the creation of an express governmental cause of action at the same time as it created Section 1983's individual cause of action for the vindication of constitutional rights.  Congress enacted Section 1983 in the Ku Klux Klan Act of 1871, 17 Stat. 13.  *See Monroe v. Pape*, 365 U.S. 167, 171 (1961).  Not until 1957 did Congress first consider creating an express cause of action for the Attorney General to seek equitable relief against violations of constitutional rights, and subsequent proposals to that effect came in 1959 and 1963.  *See United States v. City of Philadelphia*, 644 F.2d 187, 195 (3d Cir. 1980).  It is well established that "'[n]egative implications raised by disparate provisions are strongest' in those instances in which the relevant statutory provisions were 'considered simultaneously when the language raising the implication was inserted.'"  *Gomez-Perez v. Potter*, 553 U.S. 474, 486 (2008).  Congress's choice to enact Section 1983 in 1871—and not to enact a  governmental cause of action nearly a century later—thus cannot be understood, as Texas suggests, to reflect a "detailed remedial scheme" (Dkt. 43 at 31) in which individual but not governmental actions are permitted.[4]

---

[4] Indeed, in *American Bell*, the Court rejected an argument that the presence of a statutory cause of action available to individuals in receipt of a fraudulently procured patent "superseded" the ability of the United States to sue.  In so doing, the Court emphasized the limited utility of individual suits for fraud and the potential for mischief and the value to the public interest in allowing the government to sue.  128 U.S. at 372 ("[T]he patentee is not prevented by any such decision from suing a hundred other infringers, if so many there be, and putting each of them to an expensive defense, in which they all, or some of them, may be defeated and compelled to pay, because they are not in possession of the evidence on which the other infringer succeeded in establishing his defense. On the other hand, the suit of the government, if successful, declares the patent void, sets it aside as of no force, vacates it or recalls it, and puts an end to all suits which the patentee can bring against anybody.").

### 4.   The United States Has Standing To Bring This Suit.

Texas additionally argues that the United States lacks standing to pursue its interest in the supremacy of federal law, resting that argument exclusively on *Muskrat v. United States*, 219 U.S. 346 (1911).  But Texas's argument misunderstands both *Muskrat* and the nature of this lawsuit.

In *Muskrat*, the Supreme Court held that a statute that invited the federal courts to issue advisory opinions did not create a live controversy within the meaning of Article III.  In 1906, Congress enacted a statute broadening the class of Native Americans entitled to participate in an allotment of lands and funds initially authorized by a 1902 statute.  *Muskrat*, 219 U.S. at 348.  After disputes over the constitutionality of the 1906 statute arose, Congress enacted a statute in 1907 that specifically named four individuals as authorized to bring two suits against the United States "to determine the validity" of the 1906 law.  *Id.* at 350.  As the Court recognized, the "object and purpose" of the cause of action was "wholly comprised in the determination of the constitutional validity of certain acts of Congress," and the attorneys for the private litigants—if successful—were "to be paid out of funds in the Treasury of the United States belonging to the beneficiaries."  *Id.* at 360.  The Supreme Court held that these manufactured suits did not present a justiciable "case" or "controversy" within the meaning of Article III.  While the United States was "a defendant to this action," the Court explained, it had "no interest adverse to the claimants" because it was not itself a potential claimant to the property or funds in question.  *Id.* at 361.  Rather, the Court observed, "[t]he whole purpose of the law [was] to determine the constitutional validity of" the reapportionment statute "in a suit not arising between parties concerning a property right necessarily involved in the decision in question, but in a proceeding against the government in its sovereign capacity, and concerning which the only judgment required is to settle the doubtful character of the legislation."  *Id.* at 361-62; *see Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (*en banc*) (describing *Muskrat* as "holding that the United States as defendant had no interest adverse to the claimants") (citation omitted).

Unlike in *Muskrat*, there is plainly adversity between the United States and the State of Texas in this suit.  As an initial matter, this action bears none of the hallmarks of a collusive suit that were at issue in *Muskrat*.  The teaching of *Muskrat* is that "Congress must not be allowed to approach closely

a request for judicial advice, even as to completed legislation, by the simple device of conferring juris-diction over a specific suit to be brought by individually named plaintiffs seeking to challenge a par-ticular enactment."  Wright & Miller, 13 Fed. Prac. & Proc. Juris. § 3529.1 (3d ed.).  "[S]uch congres-sional tools might well be used to select ineffective adversaries of ambivalent loyalties," and *Muskrat* reflects the "Court's wish that constitutional adjudication be confined to cases arising more naturally between adversaries who have not selected each other."  *Id.*  Texas, of course, has not authorized the United States to sue here to determine the validity of S.B. 8; indeed, it has designed S.B. 8 in an effort to preclude any judicial review.

Moreover, unlike in *Muskrat*—where the United States had no concrete "interest" to defend, having merely allocated property rights among private parties—Texas has a concrete interest in this case.  S.B. 8 is not a law that permits private parties to seek redress for *private harms* through the courts; it is a law that articulates an alleged *public harm*—namely, the provision of a constitutionally protected abortion after cardiac activity is detected in an embryo.  In a bid to outflank federal judicial review, the State has deputized private individuals, rather than public officials, to bring suit by offering $10,000 bounties.  But that maneuver does not obscure the fundamental point—that the statute incentivizes private plaintiffs to prosecute the *State's* interest, not their own.[5]

**B.  This Court Can Enter Injunctive Relief against the State of Texas, Which Will Re-dress the United States' Harms.**

The United States seeks an injunction that would stay any state-court proceedings initiated under S.B. 8.  Texas contends that this Court is powerless to order that relief, and that it cannot require the State to cease implementing and enforcing its unconstitutional statutory scheme.  Dkt. 43 at 6-9. That proposition is remarkable.  The State of Texas enacted S.B. 8; the statute is concededly intended to effectuate State policy about whether abortions should occur after cardiac activity is detectable, *id.*

_____

[5] The Fifth Circuit's decision in *Okpalobi* is not to the contrary.  In that case, private plaintiffs sued Louisiana's governor and attorney general to challenge the constitutionality of a state law creating a private tort remedy.  244 F.3d at 409.  This suit, by contrast, is not brought by private plaintiffs and is not brought against individual state officials.  As discussed, the United States has sovereign and proprietary interests not shared by private plaintiffs.  And *Okpalobi* "does not control" the standing analysis in a case where the State itself is a proper defendant, as it is here.  *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 159 (5th Cir. 2007).

at 34-35; the statute is enforced by individuals cloaked in State authority; and the enforcement actions brought under S.B. 8 are prosecuted with the assistance of the State's judicial and administrative apparatus. And yet the State now contends that it has nothing to do with the ongoing injuries that S.B. 8 inflicts. That suggestion, if accepted, would fundamentally undermine the rule of law.

Doctrinally, Texas is wrong because the State is the appropriate defendant for this suit and can be subject to an injunction issued by this Court. S.B. 8 injures the United States, and that injury is fairly traceable to, and redressable by, Texas. *See supra* p. 10; *see also Allstate Ins. Co.*, 495 F.3d at 159; *Tel. & Data Sys., Inc. v. FCC*, 19 F.3d 42, 47 (D.C. Cir. 1994) ("injurious private conduct is fairly traceable to the administrative action contested in the suit if that action authorized the conduct or established its legality"). Indeed, Texas does not dispute that S.B. 8's enforcement requires *some* component of the State to act, and so an injunction against the State itself would suffice to redress the injury that S.B. 8 inflicts.

Texas argues, however, that the United States has not proposed sufficiently *specific* relief, and that any injunction must identify the particular State officials, employees, and agents who would be bound. *See* Dkt. 43 at 6. But Texas lacks authority for the specificity it demands. Unlike in the context of injunctions against the federal government under the Administrative Procedure Act, *see* 5 U.S.C. § 702, there is no need for this Court to cabin its injunction within the contours of a partial waiver of sovereign immunity. There is no bar to an injunction that runs against "the State" here. Indeed, the State surely knows who in its employ would be responsible for staying any proceedings brought under S.B. 8. If Texas believes that the costs of complying with an injunction directed against the State itself are too great, then it is free to propose a more tailored injunction to redress the injuries of the United States. Alternatively, the State is free at any time to end this litigation by rescinding S.B. 8. But when a party refuses to assist in tailoring an injunction, a broad injunction is warranted. *See FDIC v. Faulkner*, 991 F.2d 262, 267-68 (5th Cir. 1993).

Stepping back, Texas's contention that it is not properly subject to court-ordered relief is central to its efforts to evade the requirements of the Federal Constitution. Over fifty years ago, the

13

Supreme Court made clear in the school-desegregation context that constitutional rights cannot be nullified by hostile state actors:

> Whoever, by virtue of public position under a State government . . . denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State.  This must be so, or the constitutional prohibition has no meaning.  Thus the prohibitions of the Fourteenth Amendment extend to all action of the State denying equal protection of the laws; whatever the agency of the State taking the action; or whatever the guise in which it is taken.

*Cooper v. Aaron*, 358 U.S. 1, 17 (1958) (internal citations omitted).  The State of Texas has plainly acted here by enacting and maintaining S.B. 8 and by deputizing private parties to enforce it in state courts. The State should not be permitted to evade responsibility for its acts.

If Texas's arguments about the scope of relief are accepted, then all a state need do to nullify a constitutional right is to pair a sufficiently punitive statutory scheme with a provision delegating enforcement of that scheme to private individuals.  Using that approach, a state could enact laws imposing ruinous financial penalties on any person who performs an interracial marriage, sells a firearm, performs a Catholic mass, or criticizes elected officials.  Texas offers no principled basis for distinguishing such schemes from what the State has done here.  Accordingly, unless every one of the rights protected by the Constitution is subject to nullification by the states, judicial relief must—at a minimum—be available in this suit by the United States against Texas.

That relief should entail an injunction against the State staying all proceedings brought under S.B. 8.  An automatic stay of enforcement proceedings brought under S.B. 8 would upend the apparatus of deterrence at the center of Texas's unconstitutional design.  No greater specificity is required. But even if it were, the State of Texas is acting through three groups of individuals who can properly be enjoined: private individuals who elect to file S.B. 8 enforcement proceedings; state court judges and clerks; and other administrative personnel involved in enforcing and executing state judgments. Relief against any one of these groups would redress the United States' injuries.

### 1.   The Court should stay all state court proceedings brought under S.B. 8.

Texas disregards the most straightforward relief that the United States requested—an injunction staying all state court proceedings brought under S.B. 8.  *See* Dkt. 8 at 29–30.  Congress has expressly confirmed through the Anti-Injunction Act that a stay of state court proceedings can be an appropriate remedy, even in suits brought by private parties.  *See* 28 U.S.C. § 2283 (setting forth the conditions pursuant to which a federal court may "grant an injunction to stay proceedings in a State court").  Given that the Anti-Injunction Act's restrictions do not apply to suits brought by the United States, *see In re Grand Jury Subpoena*, 866 F.3d 231, 233 (5th Cir. 2017), by definition such relief is likewise available here.  *See, e.g.*, *United States v. Texas*, 356 F. Supp. 469, 473 (E.D. Tex. 1972) (enjoining "the District Court of Dallas County" from further proceedings in a case, and declaring "that the temporary restraining order issued by that court is void"); *United States v. Washington*, 459 F. Supp. 1020, 1034 (W.D. Wash. 1978) (enjoining "the Superior Court of the State of Washington, County of Thurston," from enforcing its temporary injunction and "from issuing any other order" interfering with the federal court's judgment).

Here, consistent with Congress's recognition that injunctions "to stay proceedings in a State court" are appropriate, this Court could provide that very same relief—*i.e.*, an order directed to the State, acting through its judiciary, staying proceedings in any civil suits seeking to enforce S.B. 8.  This relief would operate against the State itself, and thus would avoid the need for this Court to consider Texas's arguments about directly enjoining individual judges or clerks.  *See* section I.B.3, *infra*.

### 2.   An injunction against the State of Texas may properly extend to private parties filing S.B. 8 enforcement suits.

Under S.B. 8, Texas has deputized private parties to perform the state function of pursuing enforcement actions.  Because such individuals are in active concert and participation with the State, and also are properly considered state actors and agents of the State, this Court could expressly state that an injunction extends to them.  *See* Dkt. 8 at 29-31; *see also* Fed. R. Civ. P. 65(d)(2)(B), (C).

Texas first contends that the Court cannot extend its injunction to private individuals seeking to enforce S.B. 8 because the Court has not yet provided those individuals with an opportunity to be

heard on that question.  *See* Dkt. 43 at 7–8.  But there is no requirement that a court, before enjoining an entity—and expecting its injunction to be complied with by each of those entity's agents and other affiliates—must first provide every individual conceivably subject to the injunction with notice and an opportunity to be heard regarding the scope of the injunction.  If that were the rule, the Supreme Court could not have upheld an injunction against the State of Arizona governing the conduct of its state and local law enforcement officers, without first providing all of those individual law enforcement officers with notice and an opportunity to be heard regarding the injunction.  *See Arizona*, 567 U.S. at 410.

Texas is conflating whether an injunction can be issued with whether an individual can be held in contempt for violating the injunction.  *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 112 (1969) (holding that "a nonparty with notice *cannot be held in contempt* until shown to be in concert or participation" (emphasis added)); *see also Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 853 (7th Cir. 2010).  In any event, binding precedent confirms that notice requirements do not limit the appropriate scope of the injunction *ex ante*.[6]  If anything, they counsel in favor of requiring Texas to advertise the unavailability of relief under S.B. 8.

---

[6] In *Waffenschmidt v. MacKay*, 763 F.2d 711 (5th Cir. 1985), the Fifth Circuit upheld contempt sanctions against individuals who had acted in concert with an enjoined party, despite the fact that they did not participate in the initial proceedings regarding the injunction.  *Id.* at 718.  Instead, those individuals "were made parties to the show cause order and were given an opportunity to prove that they did not aid or abet" the enjoined party in connection with subsequent contempt proceedings, which the Fifth Circuit held was consistent with the rule announced in *Zenith*. *Id.*  Similarly, in *United States v. Hall*, 472 F.2d 261 (5th Cir. 1972), the Fifth Circuit upheld a contempt finding against a nonparty individual that took action contrary to a district court's school desegregation order, based solely on the fact that the individual "had notice of the court's order," even though he had no opportunity to participate in the initial proceeding leading to issuance of the order.  *Id.* at 26368.  But even if Texas were correct that notice concerns could affect the scope of the injunction, such a concern would still not foreclose relief against at least some individuals because the Court could enter an order extending to the four intervenors who have participated in this matter.  The prospect of such partial relief, by itself, would allow this suit to proceed.  *See Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982); *K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010).

Aside from its erroneous procedural objection, Texas offers little to support its claim that individuals filing enforcement actions under S.B. 8 are not properly subject to an injunction from this Court. Texas asserts that injunctions cannot bind non-parties. *See* Dkt. 43 at 7. As Texas acknowledges, however, that general rule does not apply to "agents" of an enjoined party or to non-parties "who are in active concert or participation with" the enjoined party. Fed. R. Civ. P. 65(d)(2)(B), (C); *see* Dkt. 43 at 7. Indeed, Texas later acknowledges that Rule 65(d)(2) was intended to prevent defendants from "nullify[ing] a decree by carrying out prohibited acts through aiders and abettors[.]" *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945); *see* Dkt. 43 at 9. Consistent with that principle, courts have long extended injunctions to the actions of non-parties. *See Ex parte Lennon*, 166 U.S. 548, 554 (1897) ("The facts that petitioner was not a party to such suit, nor served with process of subpoena, nor had notice of the application made by the complainant for the mandatory injunction, nor was served by the officers of the court with such injunction, are immaterial so long as it was made to appear that he had notice of the issuing of an injunction by the court."); *Hall*, 472 F.2d at 265-67 (because a court has "inherent power . . . to protect its ability to render a binding judgment," injunctions may extend to "third parties . . . in a position to upset the court's adjudication").

Here, individuals filing lawsuits under S.B. 8 necessarily further Texas's scheme to undermine federal rights guaranteed by the Constitution. These individuals had no power to file such suits, nor any basis for suing the persons who would become defendants, before Texas enacted S.B. 8. This Court may therefore enjoin the private individuals whom Texas has deputized to implement the State's scheme. The United States recognizes that "courts are [not] free to issue permanent injunctions against all the world." *Hall*, 472 F.2d at 267. But that is not what is being requested here. Filing a lawsuit under S.B. 8 is itself an affirmative act by an individual,[7] and Texas has expressly chosen that as the means of enforcement of the statute. Any individual filing such a suit necessarily intends to

---

[7] *Cf. Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623 (1977) (state court lawsuits could themselves be anticompetitive practices); *United States v. Lewis*, 411 F.3d 838 (7th Cir. 2005) (filing lawsuit could itself be a "course of conduct" of harassment); *In re Grand Jury Subpoena*, 267 F. Supp. 3d 741, 749 (N.D. Tex. 2016) (similar)), *aff'd*, 866 F.3d 231 (5th Cir. 2017).

penalize and prevent abortions occurring after six weeks, given that a successful suit automatically requires entry of a minimum damages award of $10,000 plus "injunctive relief sufficient to prevent the defendant from violating this subchapter" going forward. Tex. Health & Safety Code § 171.208(b); *cf.* Dkt. 48 at 5–6 (Intervenor Stilley sets forth plans to mirror suits against "insurance company, municipality, business corporation or *other juicy target with deep pockets*" and other "nice fat geese just waiting to be plucked"). Thus, any person who files a suit seeking to enforce S.B. 8 is in active concert and participation with Texas's goal of prohibiting almost all abortions after six weeks, which brings them within the scope of this Court's authority. As the Fifth Circuit observed in *Hall*, another case that "strongly excite[d] community passions," the scheme Texas has adopted here means that judicial relief is "particularly vulnerable to disruption by an undefinable class of persons who are neither parties nor acting at the instigation of parties." 472 F.2d at 266. In that sort of scenario, courts may "exercise broad and flexible remedial powers" to meet the "exigencies of the situation" and to "protect[] the court's judgment." *Id.*

Texas also contends that individuals filing suit under S.B. 8 cannot be acting in concert with the State based on *Texas v. Department of Labor*, 929 F.3d 205 (5th Cir. 2019). But the Fifth Circuit's decision in that case depended on the statutory scheme at issue (the Fair Labor Standards Act). *Id.* at 213. That statute created distinct roles for both the United States and private individuals, such that "litigation by a government agency would not preclude a private party from vindicating a wrong that arises from related facts but generate[d] a distinct, individual cause of action . . . for violation of distinct legal duties owed individual employees, rather than for violation of legal duties owed the public." *Id.* (internal quotation marks omitted). In contrast, S.B. 8 can only be understood as vindicating public interests. There is no separate government cause of action; individuals are authorized to pursue enforcement against *anyone*, regardless whether they have been personally affected or not; and success on the claim *requires* both statutory damages unconnected to personal injury *and* an injunction for the

benefit of the public, *i.e.*, "sufficient to prevent the defendant from violating this subchapter[.]"  Tex. Health & Safety Code § 171.208(b)(1).[8]

Texas also disputes a separate basis on which individuals enforcing S.B. 8 could be subject to an injunction:  They are state actors sufficient to render them "agents" of the State.  *See* Dkt. 43 at 8, 10 n.1.  The State of Texas enacted S.B. 8, vested private individuals with public enforcement authority under S.B. 8, and dictated the terms of that enforcement authority, and the State retains the legal right and ability to withdraw or otherwise modify S.B. 8 and the terms of its enforcement.  Regardless of the distance that Texas now seeks to place between itself and its appointed cadre of citizen enforcers, that does not change the nature of its principal-agent relationship.  *See* Restatement (Third) of Agency § 1.01 cmt. c (2006) ("[A] person may be an agent although the principal lacks the right to control the full range of the agent's activities, how the agent uses time, or the agent's exercise of professional judgment.  A principal's failure to exercise the right of control does not eliminate it[.]").

Moreover, the primary state-action case on which Texas relies supports the availability of relief here:  "[W]e have consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) (cited in Dkt. 43 at 10 n.1); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970) ("Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents."); Dkt. 8 at 31 n.13.  Whether viewed as state action, acting in concert with the State of Texas, or some combination of both, the bottom-line result is the same:  Rule 65 plainly extends to those individuals who affirmatively choose

---

[8] If S.B. 8 were intended to create a cause of action for the benefit of private individuals alone, S.B. 8 would only permit injunctive relief sufficient to prevent the defendant from harming *the particular plaintiff*.  *See generally City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (injunctive relief typically appropriate only when individual plaintiff is at recurring risk of harm).  Instead, S.B. 8 *requires* injunctive relief sufficient to prevent the defendant from harming *anyone*—thereby confirming that suits brought under S.B. 8 are public enforcement actions, not purely private invocations of an individualized cause of action.

to cloak themselves in state authority by filing S.B. 8 enforcement actions, thereby seeking to redress public harms and participate in Texas's scheme to evade the Constitution.

Finally, to the extent there were any doubt about whether Rule 65 itself provides authority for this Court's injunction to reach private parties suing under S.B. 8, this Court could independently issue its injunction pursuant to the All Writs Act. "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrong-doing, are in a position to frustrate the implementation of a court order or the proper administration of justice[.]" *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977); *see also United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 907 F.2d 277, 281 (2d Cir. 1990) ("Injunctions may be issued against non-parties under the All Writs Act. . . . We believe that the All Writs Act requires no more than that the persons enjoined have the 'minimum contacts' that are constitutionally required under due process.").

Here, there can be no dispute that the group of persons subject to an injunction—*i.e.*, those who file suits in Texas courts pursuant to S.B. 8—have sufficient minimum contacts (regardless of where they reside) because they have affirmatively availed themselves of Texas's court system, and thus specific personal jurisdiction exists as to those proceedings. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945) (party "conducting activities within a state" thereby "enjoys the benefits and protection of the laws of that state" and thus can be sued within that state based on those activities); *see also Waffenschmidt*, 763 F.2d at 718 (holding that individuals who "actively aid[ed] and abet[ed]" violations of an injunction "placed themselves within the personal jurisdiction of the district court"). Moreover, relief under the All Writs Act is appropriate because it would be "directed at conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to a natural conclusion." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978). Thus, the All Writs Act provides authority to act here, even if Rule 65 does not.

### 3.  An injunction against the State of Texas may also extend to judges and clerks.

An injunction against the State of Texas would properly run to state judicial officials, including judges and clerks. Such an injunction would be appropriate here given the role that state courts play

in S.B. 8's enforcement scheme; it is the threat of *suits* under the statute that deters providers from offering abortion services that the Constitution protects, and so an injunction that requires state judges and clerks to stay, decline to docket, or otherwise decline to maintain any such suits is an appropriate means of redress.  Texas offers two principal responses to this suggestion: that the United States lacks standing to sue individual state-court judges and clerks, and that this Court lacks the power to issue an injunction that would run to those judges and clerks.  Both arguments lack merit.

Texas's first argument that Article III does not permit suits against state-court judges or clerks is a non-sequitur.  No state-court judge or clerk is a defendant here; only Texas itself is.  And the United States plainly has standing to sue the State for the reasons detailed above.  *See supra* section I.  That renders irrelevant the State's arguments about the Court's jurisdiction to issue an injunction that would run to the State's judiciary.  And although Texas tries to create distance from its own judiciary by contending that "judicial officials are not within the scope of Rule 65(d)(2) and would not be covered by . . . any injunction issued against Texas," Dkt. 43 at 13, it fails to explain how "judicial officials" are anything other than "*officers*, agents, servants, [or] employees" of the State.  *See* Fed. R. Civ. P. 65(d)(2) (emphasis added); *see also, e.g.*, Tex. Gov't Code § 411.201 ("'Active judicial officer' means . . . a judge or justice of the supreme court, the court of criminal appeals, a court of appeals, a district court, a criminal district court, a constitutional county court, a statutory county court, a justice court, or a municipal court[.]").

Perhaps recognizing that Texas judicial officials are indeed part of the State of Texas, the State tries to reframe the standing inquiry by suggesting there is no adversity between the United States and individual judges and clerks.  *See* Dkt. 43 at 10–12, 14.  But the State cites no authority for the proposition that the standing inquiry should focus on anything other than the adversity between the two parties to this case.  Had Texas made S.B. 8 enforceable by the Texas Attorney General's Office, there would be no requirement that line lawyers be personally adverse to a party to be bound by an injunction against Texas.  To that end, Texas's reliance on the case-or-controversy analysis in the recent motions-panel decision in *Whole Woman's Health* misses the mark because that decision—together with the relevant portions of the cases cited therein, *see, e.g.*, *Bauer v. Texas*, 341 F.3d 352, 359 (5th Cir. 2003),

and Texas's attempted reframing here—are all focused narrowly on the adversity between private parties and individual judges and clerks, who were the defendants in that action. *See Whole Woman's Health v. Jackson*, ___F.4th___, 2021 WL 4128951, at *5 (5th Cir. Sept. 10, 2021). Because the adversity between the United States and Texas is clear, standing is no barrier to an injunction that runs to a component part of the State.

Nor is there any other barrier to the issuance of an injunction that would run to state judges and clerks. Texas contends that *Muskrat* is such an obstacle, and that the case stands for the proposition that an injunction that is binding on Texas cannot be binding on state courts. *See* Dkt. 43 at 12-13. But the case suggests nothing of the sort. *See supra* pp. 11–12. The *Muskrat* Court's concern about advisory opinions has no bearing on the issue here—namely, whether an injunction that prohibits the maintenance of state-court actions brought under S.B. 8 could bind the judges and clerks responsible for overseeing and administratively facilitating such actions. And with respect to *that* question, *Pulliam v. Allen*, 466 U.S. 522 (1984), makes clear that federal courts can issues injunctions that bind state judicial officials. *Id.* at 541-42 ("[J]udicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity."); *see, e.g., Mireles v. Waco*, 502 U.S. 9, 10 n.1 (1991) (explaining that a state "judge is not absolutely immune from . . . a suit for prospective injunctive relief"); *Doe v. Ceci*, 517 F.2d 1203, 1206 n.3 (7th Cir. 1975) ("Under all the circumstances, an injunction against Judge Ceci himself was justified."); *Bowen v. Doyle*, 880 F. Supp. 99, 138 (W.D.N.Y. 1995) (enjoining "Justices Doyle and Wolfgang and the courts of the State of New York" from "from proceeding in, and/or exercising any further jurisdiction over the parties and subject matter of," a case that was "pending in New York Supreme Court"); *see also Strickland v. Alexander*, 772 F.3d 876, 885–86 (11th Cir. 2014) (holding that a court clerk responsible for "docketing [a] garnishment affidavit, issuing the summons of garnishment, depositing the garnished property into the court registry, and holding the property" rendered the plaintiff's injury "'fairly traceable' to [the clerk's] actions").

If there were any doubt that this Court has the authority to issue an injunction that runs to state judges and clerks, the reasoning in *Pulliam* removes it. Texas acknowledges that *Pulliam* permits injunctions against state-court judges, *see* Dkt. 43 at 12, but the State claims the case has no relevance

here on the theory that *Pulliam*'s discussion of judicial immunity was limited to injunctions issued pursuant to § 1983, *see Pulliam*, 466 U.S. at 541-42. That characterization cannot be squared with the Court's reasoning. Indeed, the Court went to great lengths to detail "the *common law's* rejection of a rule of judicial immunity from prospective relief." *Id.* at 536 (emphasis added); *see also id.* at 529-36. And the Court concluded that its "own experience" and decisions from "[a]t least seven Circuits" supported a determination that there is no judicial-immunity bar to issuing prospective relief against state judges. *See id.* at 536-57. To be sure, the Court considered the effect that Congress's enactment of § 1983 had on the authority to enjoin state-court judges. But it explained that any restriction "on the availability of injunctive relief against a state judge" would have to come from either "the common law" or from "Congress'[s] own intent to limit the relief available under § 1983[.]" *Id.* at 539–40. Because the Court found that *neither* the common law nor Congress's enactment of § 1983 contained such a restriction, it held that prospective relief against state-court judges was available. *See id.* at 539-41.[9] At a minimum, the outcome in *Pulliam* is flatly inconsistent with Texas's argument that Article III always prohibits federal court relief against state judges acting in their Article III capacity.

The remaining authorities on which Texas relies do not alter the availability of injunctive relief. The State relies on dicta from the discussion of the Eleventh Amendment in *Ex parte Young*, but the suggestion that an injunction that runs to the state judiciary "would be a violation of the whole scheme of our government," Dkt. 43 at 10 (quoting *Ex parte Young*, 209 U.S. at 163), cannot be squared with the holding in *Pulliam* or the myriad cases in which courts have issued such an injunction. *See supra* 22–23. The State's discussion of writs of mandamus and prohibition runs into the same problem. *See* Dkt. 43 at 14-16. Indeed, the *Pulliam* Court extensively discussed the history of the issuance of "writs of prohibition and mandamus" by judges of the King's Bench, en route to holding that federal courts

---

[9] Contrary to Texas's suggestion, the current version of § 1983—which was adopted after *Pulliam*—does not "forb[id] injunctive relief against state judges[.]" *See* Dkt. 43 at 16. In fact, such relief expressly remains an option when "a declaratory decree [is] violated or declaratory relief [is] unavailable." 42 U.S.C. § 1983; *see also Caliste v. Cantrell*, 937 F.3d 525, 532 (5th Cir. 2019). And even if § 1983 contained a complete bar on injunctive relief against state-court judges, that bar would not apply here because, as Texas acknowledges, *see* Dkt. 43 at 16, the United States is not bringing suit under § 1983.

*do* have to authority enjoin state-court judges. *See Pulliam*, 466 U.S. at 533-36, 41-42.  Texas suggests that the exercise of such authority here would call into question the neutrality of state judges who are bound to follow the Federal Constitution.  *See* Dkt. 43 at 10-11.  But that suggestion ignores the reality of the scheme Texas has enacted:  It is the threat of suit that has chilled abortion providers throughout the State, *see* Dkt. 8 at 7, and so an injunction that prevents S.B. 8 suits from being maintained— irrespective of how the suits might eventually be resolved—is the appropriate remedy.

### 4. Texas Does Not Dispute that This Court Can Enjoin Personnel Involved in the Execution and Enforcement of State Judgments and Other Administrative Roles.

The last group of state employees against whom this Court's injunction could expressly extend would be administrative, law enforcement, and any other Texas government personnel who perform non-judicial tasks associated with processing and pursuing S.B. 8 enforcement actions, such as the enforcement of any state judgments obtained pursuant to S.B. 8.  The United States addressed this relief in its opening motion, *see* Dkt. 8 at 32, and Texas failed to respond, *see* Dkt. 43 at 6-17.  Thus, the Court may properly treat this issue as conceded.

In practical terms, this aspect of the injunction would extend to officials who have non-judicial roles in enforcing judgments obtained pursuant to S.B. 8.  For example, Texas law directs that upon obtaining a judgment, an "execution" shall be issued, and the execution "shall be addressed to any sheriff or any constable within the State of Texas."  Tex. R. Civ. P. 622; *see also* Tex. R. Civ. P. 629 ("The style of the execution shall be 'The State of Texas.' It shall be directed to any sheriff or any constable within the State of Texas.").  These individuals are undoubtedly state employees, acting pursuant to state authority, and Texas provides no plausible reason why they cannot be enjoined with respect to judgments or "executions" obtained pursuant to the unconstitutional enforcement of S.B. 8. Similarly, Texas law provides that parties may seek to enforce judgments by placing liens on real property, which requires *county* clerks—not court clerks performing judicial functions—to "record in the county real property records each properly authenticated abstract of judgment that is presented for recording."  Tex. Prop. Code Ann. § 52.004.  There is no reason why these county clerks cannot be enjoined from recording any judgments that were obtained pursuant to S.B. 8.

Enjoining these state officials in the performance of their duties would redress the United States' injuries at least in part—*i.e.*, by making any judgments obtained pursuant to S.B. 8 effectively unenforceable. There likely are other state employees and officials involved in the administrative handling of S.B. 8 claims and judgments who could also be enjoined, and whom Texas is undoubtedly capable of identifying. At a minimum, however, these classes of state employees could expressly be enjoined, which would provide sufficient redress for this case to proceed under Article III.

## II.   THE UNITED STATES HAS SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS.

### A.   S.B. 8 Violates the Fourteenth Amendment and the Supremacy Clause.

Texas asserts that the United States has not clearly shown that S.B. 8 violates the Fourteenth Amendment. *See* Dkt. 43 at Sec. II.A. But it conspicuously fails to offer any constitutional defense of S.B. 8 on the law's own terms. Instead, the State contends that its six-week abortion ban is not a ban and that the ban somehow causes no undue burden on persons' constitutional rights. Neither argument has merit.

To begin, S.B. 8 is an abortion ban of the sort that is facially unconstitutional under governing Supreme Court precedent. *Contra* Dkt. 43 at 34-35. The statute's plain text—which Texas notably refrains from discussing—bans physicians from "knowingly perform[ing] or induc[ing] an abortion on a pregnant woman if the physician detected a fetal heartbeat for the unborn child." Tex. Health & Safety Code § 171.204(a). As this Court previously explained, that language creates a "ban [that] covers all abortions performed approximately six weeks [after the patient's last menstrual period]." *Whole Women's Health*, 1:21-cv-616, 2021 WL 3821062, at *2 n.4 (W.D. Tex. Aug. 25, 2021); *see also Jackson Women's Health Org. v. Dobbs*, 945 F.3d 265, 269 (5th Cir. 2019), *cert. granted,* No. 19-1392, 2021 WL 1951792 (U.S. May 17, 2021) ("*Jackson I*") (finding that "[t]he law at issue is a ban" where it barred physicians from "perform[ing] or induc[ing] an abortion" where the probable gestational age was greater than fifteen weeks). "Such a ban is unconstitutional under Supreme Court precedent without resort to the undue burden balancing test." *Jackson Women's Health Org. v. Dobbs*, 951 F.3d 246, 248 (5th Cir. 2020) (per curiam) ("*Jackson II*"); *accord Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 879

(1992) ("[A] State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability.").

Texas next contends that the Supreme Court has applied the undue burden test in similar contexts, and thus should do so here. Dkt. 43 at 35 (citing *Gonzales v. Carhart*, 550 U.S. 124 (2007), and *June Med. Servs. LLC v. Russo*, 140 S. Ct. 2103 (2020)). But neither of these cases concerned an outright ban on a broad swath of previability abortions. It is settled that "laws that limit certain methods of abortion or impose certain requirements on those seeking abortions are distinct under *Casey* from those that prevent women from choosing to have abortions before viability." *Jackson I*, 945 F.3d at 274. *Gonzales*, which concerned a law prohibiting a specific method of abortion, "is distinguishable" from laws like S.B. 8 that "undisputedly prevent[] the abortions of some non-viable fetuses." *Id.* at 273 (explaining the Mississippi law "is a prohibition on pre-viability abortion"). *June Medical* concerned a Louisiana law requiring abortion providers to have certain hospital admitting privileges, and thus also concerned a *regulation* on the methods and requirements for obtaining abortions, rather than an outright ban of previability abortions. *See* 140 S. Ct. at 2112; *Jackson I*, 945 F.3d at 273-74. Both cases relied upon by Texas therefore only reinforce that no undue burden analysis is required—Texas's six-week abortion ban is unconstitutional on its face. *See Jackson I*, 945 F.3d at 269.

Regardless, Texas's insistence that its unconstitutional abortion ban not be termed a "ban" is academic because the law cannot survive even cursory review under the undue burden test. S.B. 8 bans most previability abortions and uses the threat of monetary penalties to chill providers from performing lawful abortion procedures. *See* Dkt. 8 at 15-16. The law therefore both in purpose and in effect "place[s] a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability." *Casey*, 505 U.S. at 878. Texas's primary argument to the contrary is that S.B. 8 does not place an undue burden on persons seeking previability abortions because the law "incorporates the Supreme Court's test" in *Casey*. Dkt. 43 at 35. That argument contorts the Supreme Court's undue burden test and reveals Texas's strategy of abdicating its own sovereign responsibility for the burden it has placed on persons seeking abortions.

The undue burden test announced in *Casey* establishes the standard that *States* must comply with when enacting abortion regulations: "Under *Casey*, *the State* may not impose an undue burden on the woman's ability to obtain an abortion." *June Medical*, 140 S. Ct. at 2135 (Roberts, C.J., concurring) (emphasis added). Disclaiming its own obligation to comply with the Federal Constitution, Texas argues that S.B. 8 meets the undue burden test because it permits a limited set of third parties to argue, *after having been sued*, that the law "will impose an undue burden on that woman or that group of women seeking an abortion." Tex. Health & Safety Code § 171.209(b); Dkt. 43 at 35–38.

Here, the undue burden is front-loaded; the "obstacle in the path of a woman seeking an abortion," *Casey*, 505 U.S. at 878, is the threat of liability that has led providers to stop offering abortion services and therefore prevented persons from accessing an abortion in the first place. The statutory undue burden defense—that is to say, the fact that courts considering claims under S.B. 8 might find the statute to be unconstitutional—provides no avenue for relief to persons who cannot find a provider willing to assume the risks and costs placed upon providers by S.B. 8. S.B. 8 denies those persons—the rights-holders—any option to assert their rights in court. And even when the undue burden defense can be raised by others, Texas restricts the defense in a manner inconsistent with *Casey*. *See* Tex. Health & Safety Code § 171.209(b), (c), (d); *see also* Dkt. 8. at 15–16 (describing impermissibly narrow focus of S.B. 8's undue burden defense). In other words, Texas contends that S.B. 8 meets *Casey's* undue burden standard because defendants may assert something *called* an undue burden defense; but S.B. 8 does not, in theory or in practice, preserve constitutional rights.

Texas argues that S.B. 8 does not impose an undue burden because a single abortion provider within the State of Texas has described providing a single first trimester abortion beyond six weeks of pregnancy. *See* Dkt. 43 at 35-36 (citing Alan Braid, Opinion: Why I Violated Texas's Extreme Abortion Ban (Sept. 18, 2021), https://www.washingtonpost.com/opinions/2021/09/18/texas-abortion-provider-alan-braid/ ("Braid Op-Ed")). Far from showing that S.B. 8 has permitted persons in Texas to continue obtaining previability abortions, Mr. Braid's op-ed explains how the law has "virtually banned any abortion beyond about the sixth week of pregnancy" and "shut down about 80 percent of the abortion services [his clinics] provide." Braid Op-Ed.

Texas also disputes that it acted with any purpose to deprive persons of constitutional rights by enacting S.B. 8—a ground that is independently sufficient to render the law unconstitutional under *Casey*, 505 U.S. at 877; *see also* Dkt. 43 at 36-37.  But evidence of Texas's unconstitutional intent abounds.  *See* Dkt. 8 at 3.  And the unconstitutional intent behind S.B. 8 is plain on the face of the statute.  Not content to enact a six-week abortion ban nearly identical to one just recently enjoined by the Fifth Circuit in *Jackson I*, Texas paired its unconstitutional law with a novel private-enforcement scheme the self-evident purpose of which is to shield S.B. 8 from federal judicial review.  There is no more powerful evidence of Texas's unconstitutional intent than its extensive effort to shirk its sovereign responsibility to defend the constitutionality of its own law in court.

Finally, S.B. 8's abortion ban is a particularly egregious constitutional violation because of the extraordinary procedural mechanisms intended to block persons from vindicating their Fourteenth Amendment rights and to evade the methods Congress established to ensure federal judicial review.  *See* Dkt. 8 at 14.  The concern here is not simply that the Act is "difficult to effectively enjoin," Dkt. 43 at 37, but that it was specifically designed in an attempt to circumvent the supremacy of federal law and defy the Constitution.

### B.  S.B. 8 Is Preempted as Applied to the Federal Government and its Contractors.

#### 1.  S.B. 8 Purports to Restrict the Operations of the Federal Government.

If Texas's position is that its law does not apply to the federal government, it should say so.  But it does not.  Instead, Texas states that, "Texas courts are unlikely to interpret the Act to apply to the federal government or those carrying out federal obligations."  Dkt. 43 at 39.  Of course, there is nothing unusual about a defendant in a Supremacy Clause lawsuit attempting to avoid liability by arguing that the challenged law might be interpreted narrowly.  But courts routinely enjoin enforcement of state laws on preemption grounds even though the state may not ultimately enforce those laws in a manner that conflicts with federal law and operations.[10]  Indeed, Texas recently tried, unsuccessfully, to make a similar argument in another Supremacy Clause challenge by the United States.

---

[10] *See, e.g., United States v. City of Arcata*, 629 F.3d 986, 992 (9th Cir. 2010) (noting in preemption

The State argued there that it "may decide to enforce the [challenged Executive] Order in a way that does not disrupt the United States' [operations,]" but the court disagreed because the challenged law did not contain an express exemption that would support Texas's interpretation. *United States v. Texas*, No. 3:21-cv-173-KC, Dkt. 52, at 17 (W.D. Tex. Aug. 26, 2021) ("[I]t is reasonable to assume that the Order means what it says and may be enforced against federal contractors and NGO-partners[.]").[11]

Next, Texas cannot sidestep the Supremacy Clause by raising the *Pullman* abstention doctrine, which is unavailable "in a case in which the United States seeks relief against a state or its agency." *United States v. Composite State Bd. of Med. Examiners*, 656 F.2d 131, 136 (5th Cir. Unit B Sept. 1981); *United States v. Morros*, 268 F.3d 695, 709 (9th Cir. 2001); *United States v. Pa., Dep't of Env't Res.*, 923 F.2d 1071, 1079 (3d Cir. 1991).

Texas next argues that, if S.B. 8 "reaches the federal government, it does not interfere with federal activities." Dkt. 43 at 40. That is incorrect. As to BOP, Texas concedes that "federal regulations require a warden to arrange for an abortion" should an inmate choose one. *Id.* But Texas claims that there is no conflict between that regulation and S.B. 8 because BOP policy is for staff to abide by applicable federal and state laws. *Id.* But an unconstitutional law like S.B. 8 is not "applicable" state law, as federal agencies plainly are not bound by unconstitutional state laws. *See Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 440 (9th Cir. 1991) (explaining that state laws "cannot be 'applicable' . . . where such laws are preempted by federal law"). Aside from S.B. 8's unconstitutionality, the reference to state law in BOP's policy document lacks the required "clear Congressional mandate" and "specific Congressional action" that unambiguously authorize state regulation of a federal activity. *See Hancock v. Train*, 426 U.S. 167, 178-79 (1976); *see also Geo Grp., Inc. v. Newsom*, 493 F. Supp. 3d 905, 939 (S.D.

_____

case that "the cities' promise of self-restraint does not affect our consideration of the ordinances' validity"); *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1215 (9th Cir. 2010) (permanently enjoining enforcement of state statutes under the First Amendment while explaining that "[w]e may not uphold the statutes merely because the state promises to treat them as properly limited").

[11] Even if S.B. 8 were deemed not to apply to the federal government directly, it would still unconstitutionally burden federal operations because it regulates the private clinics on which the federal government depends in order to provide access to abortion services to individuals in its custody and care.

Cal. 2020) (rejecting state's argument that state law was not preempted because federal law required compliance with "all applicable State and local laws and regulations").  Texas's arguments regarding the U.S. Marshals Service fail for the same reason.  Dkt. 43 at 41 (arguing that USMS operations pertaining to abortion must be consistent with state law).

Texas suggests that ORR lacks any affirmative obligations concerning abortion services for individuals in its care.  Dkt. 43 at 41.  Consistent with its obligations to provide care for the unaccompanied children in its custody and to allow them to exercise their constitutional rights, ORR "shall ensure [unaccompanied noncitizen children] have access to medical appointments related to pregnancy in the same way they would with respect to other medical conditions."  Def's Ex. C at DOJ-1004, Dkt. 45; Decl. of James S. De La Cruz ¶ 14, Dkt. 8-12.  And Texas's arguments that ORR must comply with state laws fails for the reasons discussed above.  Accordingly, the conflict between S.B. 8 and these federal laws violates the Supremacy Clause.  *See Fed. Home Loan Bank Bd. v. Empie*, 778 F.2d 1447, 1454 (10th Cir. 1985) (affirming injunction sought by federal agency against a state "statute . . . expressly forbidding something that the federal regulations expressly permit" and noting that the "injunction here is justified so that private parties threatened by the federal scheme will not have a colorable claim to bring vexatious lawsuits in state court").

### 2.  S.B. 8 Interferes With Federal Contracts.

S.B. 8 also interferes with contractual relationships between federal agencies and contractors.  For example, S.B. 8 threatens liability against contractors who provide abortion-related transportation services as part of DOL's Job Corps program, thereby discouraging them from performing under their contracts.  Dkt. 8 at 20.  Texas again resorts to the same argument that the government and its contractors must follow prevailing state law, Dkt. 43 at 42, but that argument fails for the reasons already explained.  Texas also seeks to create a *de minimis* exception to the Supremacy Clause that would allow states to interfere with federal operations in amounts the state considers minimal.  *Id.*; *see also id.* at 54.  Courts have rejected similar arguments.  *See, e.g., United States v. California*, 921 F.3d 865, 883 (9th Cir. 2019) ("We agree with the United States that Supreme Court case law compels the rejection of a *de minimis* exception to the doctrine of intergovernmental immunity.").

As for OPM, it negotiates with carriers to provide Federal Employees Health Benefits ("FEHB") plans that contain coverage for abortion under certain circumstances. Decl. of Laurie Bodenheimer ¶¶ 1-5, Dkt. 8-15. Unless S.B. 8 is enjoined, those "[c]arriers will be placed in the untenable position of either complying with their contract with OPM or violating S.B. 8, thereby raising the possibility that carriers will refuse to pay for or provide covered abortions as required under their FEHB contracts." *Id.* ¶ 8. This will "materially interfere with OPM's administrative authority to conduct the FEHB Program." *Id.* ¶ 9. The likely interference with OPM's contracts creates an impermissible obstacle to the accomplishment of federal objectives and improperly attempts to regulate the federal government in an area of "uniquely federal interests." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988); *see also Student Loan Servicing All. v. District of Columbia*, 351 F. Supp. 3d 26, 62 (D.D.C. 2018) ("Courts have consistently held that any state law that impedes the Federal Government's ability to contract . . . [is] preempted.").

### 3. S.B. 8 Violates Medicaid Regulations.

Texas makes similarly misguided attempts to defend S.B. 8's conflict with Medicaid. As articulated in the declaration submitted on behalf of CMS, abortions in cases of rape or incest fall within mandatory service categories under Medicaid that must be covered for beneficiaries under the statute and applicable regulations. Dkt. 8 at 21-22. S.B. 8, however, bans pre-viability abortions after fetal cardiac activity is detected, ensuring that this service will not be "sufficient in amount, duration, and scope to reasonably achieve its purpose." *See* 42 C.F.R. § 440.230. S.B. 8's exception for undefined "medical emergencies" does not prevent the statute from foreclosing these entire categories of abortions that must be covered under Medicaid.

## III. THE UNITED STATES WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION.

### A. A Preliminary Injunction Would Prevent Further Irreparable Harm.

Neither Texas nor the Intervenors offer *any* response to the United States' argument that S.B. 8's ongoing violation of the Supremacy Clause causes irreparable harm to the sovereignty of the United

States.  *See* Dkt. 8 at 33 (citing cases); Dkt. 43 at 45–49; Dkt. 44 at 18–20.[12]  A claim "based on the

Supremacy Clause . . . is one to enforce the proper constitutional structural relationship between the

state and federal governments" that is disrupted when a state seeks to undermine federal law.[13]  This

injury to the United States is irreparable because "it cannot be undone through monetary remedies."

*Deerfield Med. Ctr. v. Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B Nov. 1981).  And there is a

pressing need for immediate relief enjoining enforcement of S.B. 8 given that Texas's so-far successful

defiance of the Constitution has already encouraged other states to pursue similar efforts to circum-

vent the Supremacy Clause.[14]  *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008) (noting

that allowing a state to set a requirement that conflicts with federal law "would allow other States to

do the same").  This alone is sufficient to establish irreparable harm, and Texas has no argument to

the contrary.[15]

---

[12] To be sure, Texas disputes whether constitutional violations generally are sufficient to es-
tablish irreparable injury.  Dkt. 43 at 44.  But Texas cites no authority involving the type of constitu-
tional violation alleged here (a violation of the Supremacy Clause), which uniquely harms the United
States' sovereignty so long as it is allowed to continue.

[13] *See Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851 (9th Cir. 2009) *vacated on other
grounds by Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012); *United States v. Alabama*, 691
F.3d 1269, 1301 (11th Cir. 2012) ("The United States suffers injury when its valid laws in a domain of
federal authority are undermined by impermissible state regulations.").  For that reason, courts rou-
tinely find irreparable harm based on Supremacy Clause violations alone.  *See Tex. Midstream Gas Servs.,
LLC v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010) ("If a statute is expressly preempted, a
finding with regard to likelihood of success fulfills the remaining [preliminary injunction] require-
ments."); *Trans World Airlines v. Mattox*, 897 F.2d 773, 783 (5th Cir. 1990) (ruling in a preemption case
that a finding of likelihood of success on the merits "carries with it a determination that the other
three requirements [for a preliminary injunction] have been satisfied"); *Greyhound Lines, Inc. v. City of
New Orleans*, 29 F. Supp. 2d 339, 341 (E.D. La. 1998) (finding other requirements for preliminary
injunction satisfied based on a showing of likelihood of success on the merits "[b]ecause this case
involves preemption").

[14] Kurtis Lee & Jaweed Kaleem, "The New Texas Abortion Law Is Becoming A Model for
Other States," Los Angeles Times (Sept. 18, 2021), https://www.latimes.com/world-na-
tion/story/2021-09-18/texas-abortion-united-states-constitution.

[15] S.B. 8 also irreparably harms the United States by purporting to deny the federal government
the ability to enforce particular federal laws and interfering with federal policies requiring agencies to
provide access to abortion services.  Federal employees and contractors are therefore confronted with
the choice between complying with S.B. 8 or performing their federal duties and thereby risking law-
suits and civil penalties, a constitutional injury itself sufficient to establish irreparable harm.  *See Com-
posite State Bd. of Med. Exam'rs*, 656 F.2d at 138 (United States would suffer irreparable harm if federal

Faced with this roadblock, Texas takes a different tack, arguing that there can be no irreparable harm because *no* preliminary injunction issued by this Court could prevent the threat of liability to providers under S.B. 8.  *See* Dkt. 43 at 45-49.  In other words, Texas's argument is that S.B. 8 is so effective at chilling the exercise of constitutional rights that an injunction by an Article III court would be useless.  But Texas mischaracterizes the injury that is subject to redress and falters on both the facts and the law.[16]

The assumption underlying this argument is that the United States can obtain redress only if every S.B. 8 lawsuit is permanently prohibited.  But the United States is suffering an injury to its sovereignty right now.  And that injury manifests itself tangibly through the patients who cannot receive services from an abortion provider in Texas.  A preliminary injunction *would* remedy that injury to the United States because, as a matter of fact, apart from the sovereign injury, many providers would resume services upon issuance of a preliminary injunction.  *See* Decl. of Amy Hagstrom Miller ¶¶ 4–5 ("WWH and WWHA's clinics in Texas will resume providing pre-viability abortion to patients whose pregnancies have cardiac activity up to the pre-existing legal limit for our clinics if and when a preliminary injunction is entered in this case.").  That is because "neither [the clinics] nor our patients can wait the months or years for completion of all S.B. 8 litigation to resume services."  *Id.* ¶ 5.  And

_____

court abstained from deciding its Supremacy Clause claim because "[d]uring this time the United States will be forced to alter its policies in the State of Georgia or risk having its employees who are assigned within Georgia be subject to disciplinary action by the State"); *Fed. Home Loan Bank Bd. v. Empie*, 778 F.2d 1447, 1454 (10th Cir. 1985); *City of El Cenizo v. Texas*, 264 F. Supp. 3d 744, 810 (W.D. Tex. 2017), *aff'd in part and vacated in part*, *City of El Cenizo v. Texas*, 890 F.3d 164, 173 (5th Cir. 2018); *Geo Grp.*, 493 F. Supp. 3d at 962 (United States faced "irreparable injury in the form of disrupted operations" where state law would require, *inter alia*, costly transportation of individuals in its custody).

[16] The Intervenors' suggestion that a preliminary injunction would not prevent providers from being sued in federal court by out-of-state individuals using diversity jurisdiction is meritless.  Dkt. No. 44, at 19.  The Intervenors' hypothetical lawsuit would only come to pass if, upon issuance of the preliminary injunction, a provider performed more than seven abortions, and an out-of-state couple seeking to adopt in Texas could show that they were unable to adopt because of those abortions, all in the time period between a preliminary decision and a decision on the merits.  That type of pure speculation about one implausible lawsuit is insufficient to undermine a finding that the preliminary injunction would prevent irreparable harm.  *See infra* n.17.

Texas is wrong to suggest that it can escape a preliminary injunction if judicial relief would not cure every possible injury inflicted by S.B. 8.[17]

The cases Texas cites to the contrary are inapposite.  In *American Postal Workers Union, AFL-CIO v. United States Postal Services*, 766 F.2d 715 (2d Cir. 1985), the court held that a union employee seeking a preliminary injunction temporarily suspending his discharge for making allegedly false statements pending the outcome of the union's grievance and arbitration process failed to show irreparable harm, even assuming the discharge violated his First Amendment rights.  The court reasoned in part that "the theoretical chilling of protected speech and union activities stems not from the interim discharge, but from the threat of permanent discharge."  *Id.* at 722.  Even with a preliminary injunction in place, then, the plaintiff would not have been able to exercise his constitutional rights.  *See id.*  The decisions in *Chiafalo v. Inslee*, 224 F. Supp. 3d 1140, 1147 (W.D. Wash. 2016), and *Ohio v. Yellen*, No. 1:21-cv-181, 2021 WL 1903908, at *14 (S.D. Ohio May 12, 2021), are even farther afield.  In *Chiafalo*, the court held that "because the only potential harm to Plaintiffs is pecuniary, preliminary injunctive relief would have no impact on Plaintiffs' decision-making calculus."  224 F. Supp. 3d at 1148.  In *Yellen* the court declined to issue a preliminary injunction against the federal government where the state's requested injunction was "directed solely at the Secretary's exercise of her recoupment powers," and "there [was] no reason to believe that the Secretary [would] exercise those powers any time soon." 2021 WL 1903908, at *14.

---

[17] *See, e.g., Campaign for S. Equal. v. Miss. Dep't of Health and Human Services*, 175 F.Supp.3d 691, 710-11 (S.D. Miss. 2016) (rejecting state's argument that preliminary injunction against same-sex adoption ban would not remedy irreparable harm because "only an adoption decree will remedy [p]laintiffs' damages," reasoning that "[d]iscriminatory treatment at the hands of the government is an injury long recognized as judicially cognizable," and "while [p]laintiffs must undergo the adoption process to fully remedy their injuries, the current law imposes an unconstitutional impediment that has caused stigmatic and more practical injuries"); *Campaign for S. Equal. v. Bryant*, 64 F. Supp. 3d 906, 949 (S.D. Miss. 2014) (rejecting state's argument that preliminary injunction against same-sex marriage ban would not remedy irreparable harm because it "'would not alter' the public's negative perceptions of gay and lesbian couples," since "although the public may or may not change its views, the government can be enjoined from enforcing laws which perpetuate the idea that same-sex couples are second-class citizens"), *aff'd,* 791 F.3d 625 (5th Cir. 2015).

Nor does the fact that the preliminary injunction could be reversed on appeal (*see* Dkt. 43 at 46) change this calculus. Texas's argument on this front is once again based on a mischaracterization of the injury subject to redress—specifically, that the United States can obtain redress only if every S.B. 8 clinic lawsuit is permanently prohibited. But the United States is suffering an injury to its sovereignty right now, and a preliminary injunction would prevent the irreparable harm flowing from that injury.

**B.  There Is No Adequate Remedy at Law.**

Texas also argues that there is no "irreparable" harm since those who are subject to lawsuits under S.B. 8—and those who intervene in those lawsuits—may challenge the constitutionality of S.B. 8 in those proceedings. Dkt. 43 at 50-54. Once again, Texas's argument does not even attempt to address the injury to the sovereignty of the United States, for which there is no adequate remedy at law. As explained above, S.B. 8's fundamental injury to the United States is an injury to United States' sovereignty, and that injury will continue so long as the law remains enforceable. *See supra* pp. 32-33. Requiring the United States to repeatedly defend its sovereign interests by intervening in numerous State court proceedings is plainly not an adequate alternative remedy because it would maintain enforcement of the offending law.

Rather than contend with the sovereign injury at issue, Texas claims that a preliminary injunction would not prevent irreparable harm because individuals sued under S.B. 8 could raise constitutional defenses in those lawsuits. But S.B. 8 forces parties to take steps to *avoid* lawsuits under S.B. 8—and thus prevents the proceedings through which providers and other parties could challenge S.B. 8's constitutionality from occurring. As explained in the United States' opening brief, S.B. 8 effectively deters providers from performing abortions that would violate its terms and thereby deprives persons of their constitutional right to a pre-viability abortion. *See* Dkt. 8 at 11–12 (citing and quoting from declarations). S.B. 8's deterrent effect directly injures the United States, because it impedes federal operations, including by purporting to prohibit federal personnel from enforcing federal law requiring them to facilitate certain abortions, risking breaches of federal contracts by health insurance carriers

and forcing agencies to absorb additional costs to transport pregnant persons seeking abortions outside of Texas. *See supra* pp. 28–31. These injuries do not stem from any actual enforcement proceeding in which any party—including the federal government—can challenge the constitutionality of S.B. 8.

Texas argues that S.B. 8 is no different than other state tort laws that may potentially interfere with constitutional rights. Texas contends that defendants in tort actions often challenge the constitutionality of the underlying tort laws as a defense; *e.g.*, defendants in libel actions challenge the libel laws as unconstitutional under the First Amendment. But in that hypothetical, only the First Amendment rights of the actual or potential defendant in a libel lawsuit are at stake, and that party would likely have an opportunity to raise a First Amendment defense. Here, as explained above, by deterring providers from performing constitutionally protected abortions, S.B. 8 burdens the constitutional rights of those who would *not* be defendants in an S.B. 8 suit (and who thus could not raise constitutional challenges to S.B. 8 in that suit). The rights-holders themselves—pregnant persons seeking an abortion—have no avenue for seeking relief. In any event, none of Texas's cited cases involves Supremacy Clause violations against the United States.

Texas also argues that, in *Yellen*, 2021 WL 1903908, the government took the position that an injunction against "threatened legal action" is improper if "the party will have an adequate opportunity to fully present his defenses and objections in the legal action he seeks to enjoin." Dkt. 43 at 50. But, as explained above, in that case the court determined that there was no reason to believe the government would take the threatened action during the pendency of the litigation, so the injury was hypothetical. Here, by contrast, S.B. 8 imposes injuries even *without* any lawsuits brought under S.B. 8, and it does not afford parties any recourse for those injuries.[18] Accordingly, S.B. 8 is imposing, and will

---

[18] The ability to raise a constitutional defense in a lawsuit brought under S.B. 8 would not be an adequate remedy even for parties who would be defendants in those actions. The Supreme Court has noted that a party "lacks the realistic option of violating [a] law . . . and raising its federal defenses" when this decision would "expose [it] to potentially huge liability" and in this circumstance, "there is no adequate remedy at law." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992). Here, of course, defendants in suits brought under S.B. 8 face steep monetary penalties for *each* abortion in which they are involved, and the prospect of paying attorneys' fees, under S.B. 8. *See* Dkt. 8 at 4. Further, it is unclear whether prospective defendants in S.B. 8 lawsuits may bring pre-enforcement

continue to impose, irreparable harms that will be remedied by a preliminary injunction, and thus the Court should enter the requested relief.

## IV.   THE PUBLIC INTEREST AND BALANCE OF EQUITIES FAVOR AN INJUNC-TION.

Although Texas argues that it would be harmed by an injunction preventing the enforcement of its law, Dkt. 43 at 54, that principle has no application in situations where, as here, the State lacks a legitimate interest in the enforcement of a plainly unconstitutional law.   Where a state's law is preempted by federal law, "the state[ is] not injured by the injunction[.]"  *Trans World Airlines v. Mattox*, 897 F.2d 773, 784 (5th Cir. 1990); *Alabama*, 691 F.3d at 1301 ("[W]e discern no harm from the state's nonenforcement of invalid legislation.").   This is especially true where the clear purpose of the state law is to prohibit citizens from exercising their constitutional rights.   Enjoining enforcement of S.B. 8 would not subject Texas to any hardship or penalty because the injunction would require only com-pliance with federal law under the Supremacy Clause.  *See Mitchell v. Pidcock*, 299 F.2d 281, 287 (5th Cir. 1962) (noting that a permanent injunction requiring compliance with federal law does not consti-tute a hardship for it only "requires the defendants to do what the Act requires anyway—to comply with the law").

Moreover, it is always in the public's interest to prevent the violation of the Constitution and of individuals' constitutional rights.  *Melendres v. Arpaio*, 695 F3d 990, 1002 (9th Cir. 2012).   Likewise, the public interest is furthered by enjoining S.B. 8's interference with federal operations relating to providing access to abortion services.  *See Alabama*, 691 F.3d at 1301 ("Frustration of federal statutes and prerogatives are not in the public interest.").   Conversely, it is not in the public interest to allow a state to violate the requirements of federal law.  *See Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).   "[I]t is clear that it would not be equitable or in the public's interest to allow the state

---

lawsuits in Texas state courts and secure prompt relief.  In fact, the Texas Multidistrict Litigation Panel recently stayed cases brought by multiple parties, including abortion providers, seeking precisely this type of relief in state court.  *See* Transfer and Request for Stay, *In re Texas Heartbeat Act Litigation*, Texas Multidistrict Litigation Panel, No. 21-0782 (Sept. 13, 2021); Stay Order, *In re Texas Heartbeat Act Liti-gation*, Texas Multidistrict Litigation Panel, No. 21-0782 (Sept. 23, 2021).

to continue to violate the requirements of federal law[.]" *Cal. Pharmacists*, 563 F.3d at 852-53. "In such circumstances, the interest of preserving the Supremacy Clause is paramount." *Id.* at 853.

## V.      THE SCOPE OF THE REQUESTED INJUNCTION IS APPROPRIATE.

Texas disputes the scope of the United States' requested injunction, Dkt. 6-2, on several grounds.  First, Texas contends that a stay of state proceedings under S.B. 8 "would not run against any person at all," and therefore "is categorically improper." Dkt. 43 at 55.  But this argument recycles Texas's prior objections to the United States' requested remedy, and continues to overlook that federal court injunctions directed at a state itself are common, and that the availability of federal court stays of state proceedings is well-established, as Congress recognized in the Anti-Injunction Act.  *See* Section I.B.1, *supra*.  In any event, this argument would at most be a defect in form, not substance; to the extent Texas believes it is necessary, this Court can expressly confirm that the stay of proceedings operates *in personam* against state judges, clerks, and other court personnel.  *See* Section I.B. 3, *supra*.

Next, Texas contends that it is simply not possible for the State to provide notice of any injunction to all civil claimants filing suits under S.B. 8.  Dkt. 43 at 55.  But Texas submits no evidence proving any such impossibility—it offers only the unsworn assertions of counsel and fails to explain why the clerk for each court could not provide such notice upon filing.  And Texas should not be permitted to oppose this aspect of the injunction without proposing a reasonable alternative.  At worst, this Court should enter the United States' requested injunction and provide Texas a set time period to propose reasonable alternatives to the notice requirements, supported with proof as to why such modifications are necessary.

Finally, Texas contends that "a blanket injunction of the Act" is inappropriate for two reasons.  Dkt. 43 at 55.  As an initial matter, the United States has not sought an injunction against S.B. 8 itself—it has requested judicial relief from this Court that would prevent S.B. 8 enforcement proceedings from being maintained.  *See* Part I.B, *supra*.  In any event, Texas's arguments are unpersuasive on their own terms.

Texas first invokes S.B. 8's severability provision, *see* Tex. Health & Safety Code § 171.212, but as discussed above, S.B. 8 is facially unconstitutional.  *See* Section II.A, *supra*.  And when a statute

is facially unconstitutional, both the Supreme Court and the Fifth Circuit have made clear that the presence of severability provisions is irrelevant: "The provisions are unconstitutional on their face: Including a severability provision in the law does not change that conclusion. . . . [O]ur cases have never required us to proceed application by conceivable application when confronted with a facially unconstitutional statutory provision." *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2318-19 (2016), as revised (June 27, 2016); *see also, e.g., Jackson I*, 945 F.3d at 277 ("This law is facially unconstitutional because it directly conflicts with Casey. Accordingly, the district court did not abuse its discretion in declining to fashion relief narrowly[.]"). Because S.B. 8 is facially unconstitutional, this Court should disregard the severability clause, and enter an order staying all enforcement proceedings under S.B. 8.[19]

Texas also contends that "[t]he harm identified by the federal government concerns payment for abortions performed as a result of rape, incest, or life/health of the mother," and thus "any injunction should be limited to those specific circumstances[.]" Dkt. 43 at 56. But this argument is contrary to both the facts and the law. Legally, a court in equity should "accord full justice," *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946), and "administer complete relief between the parties[.]" *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928); *see also Brown v. Plata*, 563 U.S. 493, 538 (2011) ("Once invoked, the scope of a district court's equitable powers is broad, for breadth and flexibility are inherent in equitable remedies." (modifications omitted)). And factually, the United States' injuries are not limited only to abortions performed as a result of rape or incest, or for preserving the life or health of the mother. As discussed above, the United States brings this suit to vindicate its interest in ensuring that states cannot evade the supremacy of federal law, *see* Section I, *supra*, which itself justifies relief against all S.B. 8 enforcement proceedings.

---

[19] Even if Texas were correct about the severability clause—*i.e.*, that the Court cannot simply declare the statute facially unconstitutional but must instead proceed application-by-application—the Court would still be justified in entering a preliminary stay of S.B. 8 enforcement proceedings, in order to preserve the status quo while such constitutional adjudication unfolds. *Cf. United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[T]he District Court had the power to preserve existing conditions while it was determining its own authority to grant injunctive relief.").

But even setting aside that sovereign interest—and viewing the question of relief solely through the lens of harms to federal agencies—the harms to be redressed by an injunction are not limited to abortions involving rape, incest, or threats to the life or health of the mother. Several agencies facilitate abortions in other circumstances as well. *See* Dkt. 8 at 16–22. Moreover, and of particular significance in assessing the scope of relief, several federal agencies—such as BOP, USMS, and ORR—rely on abortion providers within the State of Texas to carry out their federal duties with respect to individuals within their care and custody. *See* Decl. of Alix McLearen Ph.D. ¶¶ 10, 17–19, Dkt. 8-10 (explaining that BOP's federal duties rely on abortion providers within the community, and S.B. 8 has significantly burdened BOP's ability to rely on such providers within Texas); Decl. of John Sheehan ¶¶ 9, 11, 14–16, Dkt. 8-11 (similar for USMS and its female detainees); De La Cruz Decl., ¶¶ 10–14, 20 (similar for ORR and unaccompanied children in its care). Thus, an injunction that fails to prevent lawsuits from being initiated against abortion providers would not provide complete relief to those agencies—the threat of liability for those providers would still lead to the dismantling of the abortion-provider network in the State, thereby preventing United States agencies from carrying out their functions. *See, e.g.*, Decl. of Amy Hagstrom Miller ¶ 42, Dkt. 8-4 ("If the law remains in effect for an extended period of time . . . we will have to shutter our doors and stop providing any healthcare to the communities we serve."). Texas cannot use an unconstitutional law to deprive the United States—and the persons in its care and custody—of access to the network of abortion providers who would otherwise operate in the State.

Ultimately, the question here is an equitable one—*i.e.*, how to provide complete relief that redresses the United States' injuries specifically caused by S.B. 8. The statute is patently unconstitutional, and neither federal agencies nor the public at large will be returned to the status quo unless the threat of liability for abortion providers is removed. Even if the Court considers only the federal agencies' injuries, therefore, it is still necessary to enjoin all S.B. 8 enforcement proceedings to remove the threat of liability for abortion providers.

## VI.    THE COURT SHOULD DENY TEXAS'S REQUESTED STAY.

The Court should deny Texas's request for a stay pending appeal of any injunctive relief this Court enters.  "This Court has discretion to grant or deny a motion for stay pending appeal," *Silicon Hills Campus, LLC v. Tuebor REIT Sub, LLC*, No. 1:20-CV-1201-RP, 2021 WL 783554, at *2 (W.D. Tex. Mar. 1, 2021), and it considers four factors in exercising that discretion: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies," *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013) (quotation marks omitted).  For the same reasons discussed above, consideration of these factors dictates that the Court should deny Texas's request.

## CONCLUSION

For these reasons, the Court should preliminarily enjoin enforcement of S.B. 8.


Date: October 1, 2021                                         Respectfully submitted,

                                                             BRIAN M. BOYNTON
                                                             Acting Assistant Attorney General

                                                             BRIAN D. NETTER
                                                             Deputy Assistant Attorney General

                                                             MICHAEL H. BAER
                                                             ADELE M. EL-KHOURI
                                                             Counsel to the Acting Assistant Attorney
                                                             General, Civil Division

                                                             ALEXANDER K. HAAS
                                                             Director, Federal Programs Branch

                                                             JACQUELINE COLEMAN SNEAD
                                                             Assistant Branch Director

                                                             DANIEL SCHWEI
                                                             Special Counsel

*/s/ Lisa Newman*
Lisa Newman (TX Bar No. 24107878)
James R. Powers
Joshua M. Kolsky
Kuntal Cholera
Cody T. Knapp
Christopher D. Dodge
Olivia Hussey Scott
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 514-5578
lisa.n.newman@usdoj.gov

*Attorneys for Plaintiff*