# SUPREME COURT OF THE UNITED STATES

No. 21A85 (21-588)

UNITED STATES *v.* TEXAS, ET AL.

ON APPLICATION TO VACATE STAY AND PETITION FOR WRIT OF CERTIORARI BEFORE JUDGMENT

[October 22, 2021]

Consideration of the application (21A85) to vacate stay presented to Justice Alito and by him referred to the Court is deferred pending oral argument.

In addition, the application is treated as a petition for a writ of certiorari before judgment, and the petition is granted limited to the following question: May the United States bring suit in federal court and obtain injunctive or declaratory relief against the State, state court judges, state court clerks, other state officials, or all private parties to prohibit S.B. 8 from being enforced.

The briefs of the parties in No. 21-588, limited to 13,000 words, are to be filed electronically on or before 5 p.m., Wednesday, October 27, 2021. Reply briefs, if any, limited to 6,000 words, are to be filed electronically on or before 5 p.m., Friday, October 29, 2021. Any *amicus curiae* briefs are to be filed electronically on or before 5 p.m., Wednesday, October 27, 2021. Booklet format briefs prepared in compliance with Rule 33.1 shall be submitted as soon as possible thereafter. The parties are not required to file a joint appendix.

The case is set for oral argument on Monday, November 1, 2021.

JUSTICE SOTOMAYOR, concurring in part and dissenting in part.

For the second time, the Court is presented with an application to enjoin a statute enacted in open disregard of the

constitutional rights of women seeking abortion care in Texas. For the second time, the Court declines to act immediately to protect these women from grave and irreparable harm.

The Court is right to calendar this application for argument and to grant certiorari before judgment in both this case and *Whole Woman's Health* v. *Jackson*, No. 21–463, in recognition of the public importance of the issues these cases raise. The promise of future adjudication offers cold comfort, however, for Texas women seeking abortion care, who are entitled to relief now. These women will suffer personal harm from delaying their medical care, and as their pregnancies progress, they may even be unable to obtain abortion care altogether. Because every day the Court fails to grant relief is devastating, both for individual women and for our constitutional system as a whole, I dissent from the Court's refusal to stay administratively the Fifth Circuit's order.

I

Texas Senate Bill 8 (S. B. 8 or the Act) imposes a near-categorical ban on abortions beginning six weeks after a woman's last menstrual period, before many women even realize they are pregnant. *Whole Woman's Health* v. *Jackson*, 594 U. S. \_\_\_, \_\_\_ (2021) (SOTOMAYOR, J., dissenting). This is patently unconstitutional. See, *e.g., June Medical Services L. L. C.* v. *Russo*, 591 U. S. \_\_\_, \_\_\_ (2020) (ROBERTS, C. J., concurring in judgment); *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U. S. 833 (1992); *Roe* v. *Wade*, 410 U. S. 113 (1973). Rather than authorizing state officials to enforce this illegal law, the Act deputizes ordinary citizens as bounty hunters, offering $10,000 in damages (plus attorney's fees and costs) to anyone who sues a person who provides an abortion in violation of S. B. 8, "aids or abets" such an abortion, or intends to engage in such conduct. Tex. Health & Safety Code Ann.

§§171.208(a), (b)(3) (West 2021). The legislature designed this scheme to make it more complicated to enjoin the Act. *Whole Woman's Health*, 594 U. S., at \_\_\_ (ROBERTS, C. J., dissenting). To that end, S. B. 8 also purports to restrict constitutional and procedural defenses, limit the preclusive effect of court rulings, and impose retroactive liability for services provided while the Act is enjoined if the injunction is later overturned. See Tex. Health & Safety Code Ann. §§171.208(e)(3)–(5), 171.209.

In July 2021, abortion providers and advocates filed suit to challenge S. B. 8. As relevant, they sought to prevent Texas judges and court clerks from accepting S. B. 8 suits. Three days before the District Court's scheduled hearing on preliminary injunctive relief, a panel of the Fifth Circuit stayed the proceedings. The plaintiffs applied to this Court for emergency relief. S. B. 8 took effect on September 1, and this Court denied relief that evening. See *Whole Woman's Health*, 594 U. S., at \_\_\_. The Fifth Circuit later opined that "[p]laintiffs' claims against a state judge and court clerk are specious" on the view that the *Ex parte Young* exception to state sovereign immunity "explicitly excludes judges from the scope of relief it authorizes." *Whole Woman's Health* v. *Jackson*, 13 F. 4th 434, 443 (2021) (citing *Ex parte Young*, 209 U. S. 123, 163 (1908)). As a result, in the Fifth Circuit's estimation, the abortion providers could not win relief from the law.

State sovereign immunity, however, poses no bar to a challenge by the United States. See *Alden* v. *Maine*, 527 U. S. 706, 755 (1999). Accordingly, after this Court issued its order in *Whole Woman's Health*, the United States filed the present suit. On October 6, the District Court issued a 113-page opinion in which it thoroughly considered and carefully addressed the procedural questions presented, held this case justiciable, and enjoined the Texas law. \_\_\_ F. Supp. 3d \_\_\_, 2021 WL 4593319 (WD Tex. 2021). But a divided Fifth Circuit panel granted the State's request for

a stay pending appeal. 2021 WL 4786458, *1 (2021) (*per curiam*). Despite the fact that the instant suit presents distinct issues from those raised in *Whole Woman's Health*, the Fifth Circuit majority relied entirely on rulings from that litigation. The totality of its reasoning was as follows: "The emergency motions to stay the preliminary injunction pending appeal are granted for the reasons stated in *Whole Woman's Health* v. *Jackson*, 13 F. 4th 434 (5th Cir. 2021), and *Whole Woman's Health* v. *Jackson,* [594 U. S. ___] (2021)." 2021 WL 4786458, *1.

II

Recognizing that Texas' scheme raises concerns of imperative public importance, the Court properly grants certiorari before judgment. See this Court's Rule 11. However, the Court's failure to issue an administrative stay of the Fifth Circuit's order pending its decision on this application will have profound and immediate consequences. By delaying any remedy, the Court enables continued and irreparable harm to women seeking abortion care and providers of such care in Texas—exactly as S. B. 8's architects intended, see *infra*, at 6–7. Whatever equities favor caution in staying a state law under normal circumstances cannot outweigh the total and intentional denial of a constitutional right to women while this Court considers the serious questions presented.

The District Court concluded that S. B. 8 "'has had an immediate and devastating effect on abortion care in Texas.'" 2021 WL 4593319, *36. That is because the Act's chilling effects "operate . . . as an effective deterrent to provision of pre-viability abortion services in Texas, precluding the vast majority of individuals from accessing this constitutional right" and causing a "dismantling of the provider network" across the State. *Id.,* at *38. Before the District Court, Texas identified only one abortion that had occurred in the State beyond S. B. 8's unlawful 6-week restriction

since the law took effect. *Id.,* at *41. The court explained that most abortion patients in Texas first seek care more than six weeks after their last menstrual periods. *Id.,* at *2. The court thus found that S. B. 8 has prohibited as many as 95% of abortions previously provided in the State. *Id.,* at *40; see *Whole Woman's Health*, 594 U. S., at \_\_\_ (SOTOMAYOR, J., dissenting) (slip op., at 2) (warning that S. B. 8 would "immediately prohibi[t] care for at least 85% of Texas abortion patients and . . . force many abortion clinics to close").

On a human level, the District Court relied on credible declarations that described the threat of liability under S. B. 8 as "nothing short of agonizing" for abortion care providers. 2021 WL 4593319, *38 (internal quotation marks omitted). Providers are "seriously concerned that even providing abortions in compliance with S. B. 8 will draw lawsuits from anti-abortion vigilantes or others seeking financial gain." *Ibid.* (internal quotation marks omitted). Patients are "devastated" to learn they cannot access care, and the "turmoil" caused by the Act leaves them "panicked, both for themselves and their loved ones." *Id.,* at *40 (internal quotation marks omitted).* Even among the few women who are able to receive abortion services in Texas, S. B. 8 pushes patients "to make a decision about their abortion before they are truly ready to do so." *Ibid.* (internal quotation marks omitted).

The District Court rejected the State's claim that Texas residents could travel to other States to access abortion

---

\*The harm to vulnerable populations is especially acute. For example, because Texas' judicial bypass process for minors seeking abortion care "cannot realistically happen" before six weeks after the last menstrual period, S. B. 8 forces pregnant minors who cannot confide in their families (and unaccompanied migrant teenagers who cannot reach their families) to choose between "carry[ing] to term" and "tak[ing] matters into their own hands." 2021 WL 4593319, *40, and n. 62 (internal quotation marks omitted).

care. *Id.,* at \*41. To be sure, the court agreed, "[p]regnant people from Texas are scared and are frantically trying to get appointments" in other States. *Id.,* at \*43 (internal quotation marks omitted). The court found, however, that many patients are unable to seek out-of-state care based on financial constraints, dangerous family situations, immigration status, or other reasons. *Id.,* at \*42. These individuals "are being forced to carry their pregnancy to term against their will or to seek ways to end their pregnancies on their own." *Id.,* at \*41 (internal quotation marks omitted).

The court also found that patients who are able to leave Texas have encountered restrictions and backlogs exacerbated by S. B. 8, citing evidence of the Act's "stunning" and "crushing" impacts on clinics in Oklahoma, Kansas, Colorado, New Mexico, and Nevada. *Id.,* at \*43–\*45. An Oklahoma provider, for example, reported a "staggering 646% increase of Texan patients per day," occupying between 50% and 75% of capacity. *Id.,* at \*43 (internal quotation marks omitted). A Kansas clinic similarly reported that about half of its patients now come from Texas. *Id.,* at \*44. The District Court found that this "constant stream of Texas patients has created backlogs that in some places prevent residents from accessing abortion services in their own communities." *Id.,* at \*45.

I cannot capture the totality of this harm in these pages. But as these excerpts illustrate, the State (empowered by this Court's inaction) has so thoroughly chilled the exercise of the right recognized in *Roe* as to nearly suspend it within its borders and strain access to it in other States. The State's gambit has worked. The impact is catastrophic.

These ruinous effects were foreseeable and intentional. Were there any doubt, proponents of S. B. 8 have boasted in this very litigation that "Texas has boxed out the judiciary" and crowed that "[a]bortion . . . is a court-invented

right that may not even have majority support on the current Supreme Court." Reply Brief for Intervenors in No. 21–50949 (CA5), pp. 3, 4; see also *id.,* at 4 ("The Supreme Court's *interpretations* of the Constitution are not the Constitution itself—they are, after all, called *opinions*").

There is no dispute that under this Court's precedents, women have a constitutional right to seek abortion care prior to viability. As noted, S. B. 8 was created to frustrate that right by raising seemingly novel procedural issues, and it has had precisely the intended effect. Under such unique circumstances, the equities plainly favor administrative relief while this Court sorts out these issues. Every day that S. B. 8 remains in effect is a day in which such tactics are rewarded. And every day the scheme succeeds increases the likelihood that it will be adapted to attack other federal constitutional rights.

\* \* \*

There are women in Texas who became pregnant on or around the day that S. B. 8 took effect. As I write these words, some of those women do not know they are pregnant. When they find out, should they wish to exercise their constitutional right to seek abortion care, they will be unable to do so anywhere in their home State. Those with sufficient resources may spend thousands of dollars and multiple days anxiously seeking care from out-of-state providers so overwhelmed with Texas patients that they cannot adequately serve their own communities. Those without the ability to make this journey, whether due to lack of money or childcare or employment flexibility or the myriad other constraints that shape people's day-to-day lives, may be forced to carry to term against their wishes or resort to dangerous methods of self-help. None of this is seriously in dispute.

These circumstances are exceptional. Women seeking abortion care in Texas are entitled to relief from this Court now. Because of the Court's failure to act today, that relief, if it comes, will be too late for many. Once again, I dissent.

# United States Court of Appeals
**FIFTH CIRCUIT
OFFICE OF THE CLERK**

**LYLE W. CAYCE
CLERK**

**TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130**

October 25, 2021

Ms. Jeannette Clack
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

    No. 21-50949    USA v. State of Texas
                     USDC No. 1:21-CV-796

Dear Ms. Clack,

Enclosed is a copy of the Supreme Court order granting certiorari.

                        Sincerely,

                        LYLE W. CAYCE, Clerk

                        By: _____
                        Stacy M. Carpenter, Deputy Clerk